## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION
## IN ADMIRALTY

| | | |
|---|---|---|
| **RAY CAPITAL INC., OPPENHEIM** | § | |
| **CAPITAL LTD, CHEYENNE** | § | |
| **HOLDINGS LTD. AND LABROY** | § | |
| **SHIPTRADE LIMITED** | § | |
| | § | |
| **PLAINTIFFS** | § | **C.A. NO. 16-CV-093** |
| **V.** | § | |
| | § | |
| **M/V NEWLEAD CASTELLANO,** | § | |
| **IMO NO. 9686338** | § | |
| **HER ENGINES, TACKLE,** | § | |
| **EQUIPMENT, FURNITURE,** | § | |
| **APPURTENANCES, ETC.,** *IN REM*, | § | |
| **AND** | § | |
| **NEWLEAD CASTELLANO LTD.** | § | |
| | § | |
| **DEFENDANTS** | § | |

## **FIRST AMENDED VERIFIED COMPLAINT**

EXHIBIT "1"

THIS NOTE AND THE SECURITIES ISSUABLE PURSUANT HERETO HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), AND ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AS SET FORTH HEREIN.  NEITHER THIS NOTE NOR THE SECURITIES ISSUABLE PURSUANT HERETO MAY BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS UNDER SUCH ACT.  THIS NOTE IS SUBJECT TO THE TERMS AND CONDITIONS OF THAT CERTAIN EXCHANGE AGREEMENT, DATED DECEMBER 27, 2013, BY AND BETWEEN THE COMPANY AND THE HOLDER.

NEWLEAD HOLDINGS LTD.
Unsecured Convertible Note

$6,000,000                                              December 27, 2013
                                                                      Piraeus, Greece

NEWLEAD HOLDINGS LTD., a company organized under the laws of Bermuda (the "Company"), for value received, hereby promises to pay to Ray Capital Inc. a company established under the laws of the Mashall Islands with a registered address of Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands, or registered assigns (the "Holder"), the principal amount of US$6,000,000 (United States Dollars six million) (the "Principal").

This Note has been issued pursuant to an Exchange Agreement Dated December 27th, 2013 between the Company and *Tiger Capital Partners Ltd.* of Vanterpool Plaza, 2nd floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands (the "Exchange Agreement"). Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to such terms in the Exchange Agreement.

1.     **Payments.**

    (a)     Sixty dates hereof, the Company shall:

    (i)     pay US$6,000,000 (United States Dollars six million) by issuance of its common shares, par value $0.01 (the "**Common Stock**"), at the Stock Price (as defined below).

Stock Price. The number of shares of Common Stock shall be determined by dividing (i) the amount payable by, (ii) the Closing Price, as adjusted for any stock splits or stock dividends (the "**Stock Price**"). "**Closing Price**" means the average of the closing prices for the ten (10) trading days immediately prior to (but not including) the date of issuance of the shares, provided the Common Stock is then listed or quoted on the NASDAQ, OTC Bulletin Board or any other national securities exchange, market or trading or quotation facility (a "**Trading Market**").

**True up Amounts**. Commencing from the first annual anniversary of the Agreement and each succeeding anniversary (the "Measurement Dates"), for a Period of five (5) years from the date of execution of the Agreement, the Holder shall be entitled to recover the shortfall incurred in additional shares or cash or any combination at the Company's option. The True up Amounts are equal to the Principal less the Market Value (as defined below) of the shares issued or the cash paid as part of any Payments prior to such calculation date. The Company shall pay the True up Amounts no later than fifteen (15) days after the Measurement Dates.

**Market Value**. Market Value with respect to the shares issued as part of the Principal, means the aggregate gross proceeds received by the Holder from one or more sales, as evidenced by brokerage statements for such sales; *provided, however,* that if the sale price is not reasonably related to the trading price on the sale date, such sale shall be deemed to have occurred at the highest price at which shares of Common Stock were traded on such date of sale.

        (ii)    For a period of 5 years after the execution date of this Note, at the date when either, (i) all Common Stock being issued to the Holder under 1(a)(i) above, or (ii) all Common Stock being issued to the Holder under any True up Amounts (As defined hereinabove), are sold in full and the Holder is entitled to additional True up Amounts. The Company may elect to pay the additional True up Amounts by either (i) wire transfer of immediately available funds to an account designated in writing by the Holder, or (ii) issuance by the Company of its Common Stock at the Stock Price determined as of such date, or (iii) any combination thereof, at the sole option of the Company. The Holder will be entitled for as many additional True up Amounts are required to collect in total the Principal in cash either by the sale of Common Stock or by cash receipts by the Company. Six (6) months prior the lapse of the five (5) year period the Holder is entitled to request for an extension of the true-up period for an additional three (3) years by providing a written notice to the Company.

        (b)    **Termination of Rights Under this Note**.  Immediately upon the payment of the Principal and/ or any applicable True up Amount due under this Note, this Note shall no longer be deemed outstanding and all rights with respect to this Note shall immediately cease and terminate, except only for the right of the Holder under clause 1(a)(ii) of this Note.

        (c)    **Taxes or other Issuance Charges**.   The issuance of any shares of Common Stock in payment of this Note, and the delivery of certificates or other instruments representing the same, shall be made without charge to the Holder for any tax or other charge in respect of such issuance.   The Company shall not, however, be required to pay any tax which may be payable in respect of any transfer involved in the issue and delivery of any certificate or instrument in a name other than that of the Holder, and the Company shall not be required to issue or deliver any such certificate or instrument unless and until the person or persons requesting the issue thereof shall have paid to the Company the amount of such tax or shall have established to the satisfaction of the Company that such tax has been paid.

(d)     Holder Not a Stockholder.  The Holder shall not have, solely on account of such status as a holder of this Note, any rights of a stockholder of the Company, either at law or in equity, or any right to any notice of meetings of stockholders or of any other proceedings of the Company until such time as this Note has been paid in shares of Common Stock pursuant to Section 1(a), at which time the Holder shall be deemed to be the holder of record of Common Stock that has been issued, as applicable, notwithstanding that the transfer books of the Company shall then be closed or certificates representing such shares of Common Stock shall not then have been actually delivered to the Holder.

(e)     Fractional Shares.  No fractional shares of Common Stock shall be issued when paying this Note.  In lieu thereof, the shares of Common Stock otherwise issuable shall be rounded up or down to the nearest whole share of Common Stock.

(f)     Payment in Common Stock or Cash.  Each Payment may be paid by the Company in cash or shares of its Common Stock, at its sole discretion; provided, however, that if the Common Stock is not then listed or quoted on a Trading Market (or a similar organization or agency succeeding to its functions of reporting prices), then the Company may not pay by issuing shares of its Common Stock.

2.     Trading Market Limitations.  Unless permitted by the applicable rules and regulations of the principal securities market on which the Common Stock is then listed or traded, in no event shall the Company issue upon conversion of or otherwise pursuant to this Note and the other Notes issued pursuant to the Exchange Agreement more than the maximum number of shares of Common Stock that the Company can issue pursuant to any rule of the principal United States securities market on which the Common Stock is then traded (the "Maximum Share Amount"), which shall be 4.99% of the total shares outstanding on the Closing Date, subject to equitable adjustment from time to time for stock splits, stock dividends, combinations, capital reorganizations and similar events relating to the Common Stock occurring after the date hereof.

3.     Ranking.  The Company, for itself, its successors and assigns, covenants and agrees, that the payment of the Principal of this Note is senior in right of payment to the payment of all existing and future Junior Debt (as defined below).  "Junior Debt" shall mean all existing and future Indebtedness (as defined below), (B) Indebtedness (as defined below) incurred after the date hereof, solely as it relates to the Collateral, and (C) as otherwise agreed to by the Holder in writing.  "Indebtedness" shall mean (x) any liability of the Company for borrowed money, (1) evidenced by a note, debenture, bond or other instrument of indebtedness (including, without limitation, a purchase money obligation), including any given in connection with the acquisition of property, assets or service, or (2) for the payment of rent or other amounts relating to capitalized lease obligations; (y) any liability of others of the nature described in clause (1) which the Company has guaranteed or which is otherwise its legal liability; and (z) any modification, renewal, extension, replacement or refunding of any such liability described in clause (x) or (y); provided, that Indebtedness does not include unsecured trade credit.

(a)     The Company covenants and agrees to cause any current holder of Junior Debt and to cause any future holder of Junior Debt permitted to be incurred pursuant to this Note

3

to execute such subordination agreements, instruments or waivers as may be necessary to reflect the terms set forth herein.

        (b)     Until the payment in full of all amounts of principal of this Note, and all other amounts owing under this Note, no payment may be made with respect to the principal of or other amounts owing with respect to any Junior Debt, or in respect of any redemption, retirement, purchase or other acquisition thereof, provided that the Company may pay scheduled interest thereon so long as no Event of Default shall have occurred and be continuing.

        (c)     Upon any payment or distribution of the assets of the Company to creditors upon dissolution, total or partial liquidation or reorganization of, or similar proceeding, the Holder of the Note will be entitled to receive payment in full before any holder of Junior Debt is entitled to receive any payment.

        4.     **Events of Default**.   The entire unpaid principal of this Note or any True up Amounts shall become and be immediately due and payable in cash or shares of Common Stock of the Company, in either case without any other notice or demand of any kind or any presentment or protest, if any one of the following events occurs and be continuing at the time of such demand (each such event, an "**Event of Default**"):

        (a)     The Company's failure to pay any portion of the principal as provided in Section 1 hereof; or

        (b)     (i) The commencement by the Company, or any subsidiary, of a voluntary case under 11 U.S.C. Section 101 *et. seq.* (the "Bankruptcy Code") or any foreign, federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or (ii) the consent by the Company, or any subsidiary, to the entry of an order for relief in an involuntary bankruptcy or similar case, or to the conversion of an involuntary case to a voluntary case, under any such law, or (iii) the consent by the Company, or any subsidiary, to the appointment of, or the taking of possession by, a receiver, trustee or other custodian for all or a substantial part of the Company's properties, or (iv) the making by the Company, or any subsidiary, of any assignment for the benefit of creditors, or (v) the admission by the Company, or any subsidiary, in writing of the Company's inability to pay the Company's debts as such debts become due, or (vi) the discontinuance of business, dissolution, winding up, liquidation or cessation of existence by or of the Company, or any subsidiary; or

        (d)     (i) The entry by a court of competent jurisdiction a decree or order for relief with respect to the Company, or any subsidiary, in an involuntary case under the Bankruptcy Code or any applicable foreign, federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, which decree or order is not stayed or dismissed within 60 days of the entry thereof, or (ii) the entry by a court of a decree or order for the appointment of a receiver, liquidator, sequestrator, trustee, custodian or other person having similar powers over the Company or over all or a substantial part of its properties;

        (f)     The Company materially breaches any covenant contained in the Exchange Agreement; or

The Company agrees that if it fails to timely make any payment due under this Note or upon the happening of any Event of Default, and fails to remedy the situation within a ten (10) day grace period, the outstanding principal, together with all other expenses, including, reasonable attorneys' fees, shall immediately become due and payable at the option of the Holder.   For purposes hereof, attorneys' fees shall include, without limitation, fees and disbursements for legal services incurred by the holder hereof in collecting or enforcing payment hereof whether or not suit is brought, and if suit is brought, then through all appellate actions. From and after any Event of Default, the interest rate of this Note shall be the highest rate permitted under applicable law.

5.   **Miscellaneous**.

(a)   The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the parties; *provided, however,* that neither party may assign any of its rights or obligations hereunder without the prior written consent of the other party.   Assignment of all or any portion of this Note in violation of this Section shall be null and void.   Nothing in this Note, expressed or implied, is intended to confer upon any party, other than the parties hereto or their respective successors and permitted assigns, any rights, remedies, obligations or liabilities under or by reason of this Note, except as expressly provided in this Note.

(b)   Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be delivered in accordance with Section 11.5 of the Exchange Agreement.

(c)   Upon receipt of evidence satisfactory to the Company, of the loss, theft, destruction or mutilation of this Note (and upon surrender of this Note if mutilated), including an affidavit of the Holder thereof that this Note has been lost, stolen, destroyed or mutilated, together with an indemnity against any claim that may be made against the Company on account of such lost, stolen, destroyed or mutilated Note, and upon reimbursement of the Company's reasonable incidental expenses, the Company shall execute and deliver to the Holder a new Note of like date, tenor and denomination.

(d)   No course of dealing and no delay or omission on the part of the Holder or the Company in exercising any right or remedy shall operate as a waiver thereof or otherwise prejudice the Holder's or the Company's rights, powers or remedies, as the case may be.   No right, power or remedy conferred by this Note upon the Holder or the Company shall be exclusive of any other right, power or remedy referred to herein or now or hereafter available at law, in equity, by statute or otherwise, and all such remedies may be exercised singly or concurrently.   Any waiver must be in writing.

(e)   If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the balance of this Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.   This Note may be amended only by a written instrument executed by the

Company and the Holder. Any amendment shall be endorsed upon this Note, and all future Holders shall be bound thereby.

(f)     If any date specified in this Note as a date for the making of any payment of principal or interest under this Note falls on a Saturday, Sunday or on a day that is a legal holiday in the State of New York, then the date for the making of that payment shall be the next subsequent day that is not a Saturday, Sunday or legal holiday.

(g)     This Note shall be governed by and construed in accordance with the laws of the New York City, without giving effect to principles governing conflicts of law.

(h)     The Company hereby irrevocably submits to the exclusive jurisdiction of any United States Federal court over any suit, action or proceeding arising out of or related to the Note. The Company irrevocably waives, to the fullest extent permitted by law, any objection which it may have to the venue of any such suit, action or proceeding brought in such a court and any claim that any such suit, action or proceeding brought in such a court has been brought in an inconvenient forum. The Company agrees that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding upon the Company and may be enforced in any court to the jurisdiction of which the Company is subject by a suit upon such judgment; *provided* that service of process is effected upon the Company in the manner permitted by law.

(i)     The parties hereto agree that all monetary amounts set forth herein are referenced in United States dollars, unless otherwise stated.

*(Remainder of page left intentionally blank. Signature page to follow.)*

IN WITNESS WHEREOF, the Company has caused this Senior Secured Note to be executed and dated the day and year first above written.

NEWLEAD HOLDINGS LTD.

By: _____
Name: MICHAEL ZOLOTAS
Title: CEO

This Addendum No.3 (hereinafter the "Addendum"), is made on March 3, 2015

BETWEEN:

(1) **NEWLEAD HOLDINGS LTD.**, a corporation incorporated under the laws of the Islands of Bermuda having its registered office at Canon's Court, 22 Victoria Street, Hamilton HM12, Bermuda (hereinafter called the "Company");

-and-

(2) **RAY CAPITAL INC.**, a corporation established in the Republic of the Marshall Islands having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands (hereinafter called the "Ray").

*(Jointly the Parties, singly the Party)*

*Terms used, but not otherwise defined, in this Addendum have the same meaning as those in the Note.*

## RECITALS

WHEREAS, pursuant to an Unsecured Convertible Note dated 27th December 2013 as amended by Addenda 1 and 2 on 28th December 2013, (the "Note") issued to Ray pursuant to an Exchange Agreement dated December 27th, 2013, between the Company and Tiger Capital Partners Ltd. of the BVI, (hereinafter called as, the same is hereby and as the same may from time to time be further amended, supplemented or varied, the "Agreement" and together with the Note, the "Security Documents"), the Company promises to pay to Ray the principal amount of USD 6,000,000 (United States Dollars six million) under the terms and conditions set forth therein,

WHEREAS, in consideration of the payment of the Note a First Preferred Liberian Mortgage m.v. "NEWLEAD CASTELLANO" has been issued between NEWLEAD CASTELLANO LTD and Ray dated 16 October 2014 (the "Mortgage"), pursuant to which "Events of Default" shall mean any events or circumstances set out in clause 4 of the Note.

WHEREAS, pursuant to Addendum No. 1 to the Note dated December 28th 2013 (the "Addendum No. 1") the Maturity Date of the Note was extended to December 27th 2014.

WHEREAS, under clause 1 (a)(i) the Company shall pay US$6,000,000 (United States Dollars six million) by issuance of its common shares, par value $0.01 (the "Common Stock") at the Stock Price as defined in the Note, as this was amended by Addendum No. 2 dated December 28th 2013 clause (1).

WHEREAS, under the Note the Company shall at all times reserve and keep available out of its

authorized but unissued shares of capital stock, solely for the purpose of effecting the conversion of the Note, fifty times the number of Common shares that its actually issuable upon such conversion.

NOW, THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration (receipt and sufficiency of which is hereby acknowledged) the Parties do hereby agree as follows:

    (a) To waive the Company's obligation to reserve and keep available fifty times the number of Common shares that are actually issuable upon conversion of the Note, such waiver being effective as from the date of execution of the Note.

    (b) That the Company as from the date hereof, shall at its discretion reserve, but always keep available out of its authorized but unissued shares of capital stock, such shares of Common Stock as shall from time to time be sufficient to effect the conversion of this Note.

    (c) The Maturity Date of the Note is extended from the Maturity Date provided for in the Addendum No. 1, it being December 27th, 2015 (hereinafter the "Maturity Date").

    (d) That the Company agrees that any amount of the Note, including the Principal and any accrued interest thereon and any True up Amount or any other amount thereof, remaining unpaid on the Maturity Date shall become due and payable in cash by the Company without any other notice or demand of any kind or any presentment or protest by the Holder. Failure to pay any amounts pursuant to this clause shall constitute an Event of Default under clause 4 of the Note as this has been amended by Addendum No. 1 and Addendum No. 2 and is further amended hereby or may be amended.

    (e) That, as of the date hereof, at an Event of Default pursuant to clause 4 of the Note the entire unpaid principal and accrued interest of the Note or any True-up Amounts shall become and be immediately due and payable in cash without any other notice or demand of any kind or any presentment or protest, if any of the events under this clause 4 occur and be continuing at the time of such demand.

    (f) That the Holder agrees and warrants that it shall sell up to twenty percent (20%) of the Monthly Dollar Volume (as defined herein below) of the Company's Common Stock per month to reduce the Company's outstanding obligations owing to the Holder pursuant to the Note. "Monthly Dollar Volume" means a dollar amount of the Company's Common Stock which is traded in the US public markets in the relevant month in which it is calculated (not including the amount of any shares of the Company's Common Stock traded by the Holder).

    (g) All other provisions of the Note shall remain in full force and effect.
    This Addendum shall be governed by and construed by and interpreted in accordance with the internal laws of the state of New York.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the Parties have hereunto set their hands and affixed their seals as of the day and year first above written.

NEWLEAD HOLDINGS LTD.

By: _____
Name: Michail S. Zolotas
Title: CEO/ Chairman

RAY CAPITAL INC.

By: _____
Name: DIMITRIOS STAVRIANOS
Title: ATTORNEY.

DATE 28 December 2013
-----------------------------------


NEWLEAD HOLDINGS LTD
Of Bermuda
-and-


RAY CAPITAL INC
Of The Republic of Marshall Islands


ADDENDUM NO. 2
to
the Unsecured Convertible Note dated 27th December 2013.

THIS ADDENDUM No. 2 is made on the 28th day of December 2013

BETWEEN

(1)     **NEWLEAD HOLDINGS LTD,** a corporation incorporated under the laws of the Islands of Bermuda having its registered office at Canon's Court, 22 Victoria Street Hamilton HM12, Bermuda (hereinafter called the "**Company**"); and

(2)     **RAY CAPITAL INC.,** a corporation established in the Republic of the Marshall Islands having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands (hereinafter called "RAY")

(each a Party and together with the **Parties**)

WHEREAS, Pursuant to an Unsecured Convertible Note dated 27th December 2013 entered into and between the Company and RAY as it is further amended by Addendum no. 1 of even date hereof (hereinafter called as the same is hereby and as the same may from time to time be further amended, supplemented or varied the "Note") the Company promises to pay to RAY the principal amount of USD6,000,000 (United States Dollars six million) (hereinafter the "Principal Amount") under the terms and conditions set forth therein.

NOW THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration (receipt and sufficiency of which is hereby acknowledged) the Parties do hereby agree to amend the Note as follows:

1.  The Company promises to pay RAY the Principal together with interest from the date of the Note on the unpaid principal balance and on the True-Up amount outstanding from time to time hereof, at a rate equal to ten percent (10%) per annum, computed daily and on the basis of the actual number of days elapsed and a year of 365 days (hereinafter the "Interest").

2.  Any accrued and unpaid interest on the Note shall be due and payable in quarterly instalments concluding with the final instalments on the Maturity Date and upon any partial or full conversion of the Note as well as any issuances of True-Up adjustments.

3.  The Company shall at all times reserve and keep available out of its authorised but unissued shares of capital stock, solely for the purpose of effecting the conversion of the Note, fifty times the number of Common shares that its actually issuable upon such conversion and if at any time the number of authorised but unissued Common shares shall not be sufficient to effect the conversion of the Note, the Company will take such corporate action as may, in the opinion of its counsel, be necessary to increase its authorised but unissued Common Shares to such number of shares as shall be sufficient for such purpose.

4.  The Note as amended by this Addendum represent the entire agreement among the parties hereto with respect to the subject matter hereof and supersede any prior expressions of intent or understanding with respect to this transaction and may be amended only by an instrument in writing executed by the party or parties to be bound or burdened thereby.

5.  This Addendum shall in all respects be governed by, and construed in accordance with the internal laws of the State of New York.


IN WITNESS WHEREOF the presents have been duly executed the day and year first before written.


SIGNED by:                                    )
M. ZOLOTAS                                    )
for and on behalf of:                         )
NEWLEAD HOLDINGS LTD                           )
in the presence of:                           )

2

ACKNOWLEDGED by:
D. TSOUVELEKAKIS
for and on behalf of:
RAY CAPITAL INC.
in the presence of:

)
)
)
)
)

DATE 28 December 2013
-------------------------------




NEWLEAD HOLDINGS LTD
Of Bermuda
-and-


RAY CAPITAL INC
Of The Republic of Marshall Islands


ADDENDUM NO. 1
to
the Unsecured Convertible Note dated 27th December 2013.

THIS ADDENDUM No. 1 is made on the 28th day of December 2013

BETWEEN

(1)   **NEWLEAD HOLDINGS LTD**, a corporation incorporated under the laws of the Islands of Bermuda having its registered office at Canon's Court, 22 Victoria Street, Hamilton HM12, Bermuda (hereinafter called the "**Company**"); and

(2)   **RAY CAPITAL INC.**, a corporation established in the Republic of the Marshall Islands having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands (hereinafter called "Ray")

(each a **Party** and together with the **Parties**)

**WHEREAS,** Pursuant to an Unsecured Convertible Note dated 27th December 2013 between the Company and Ray (hereinafter called as the same is hereby and as the same may from time to time be further amended, supplemented or varied the "Note"), the Company promises to pay to Ray the principal amount of USD6,000,000 (United States Dollars six million) (hereinafter the "Principal Amount") under the terms and conditions set forth therein.

NOW THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration (receipt and sufficiency of which is hereby acknowledged) the Parties do hereby agree to amend the Note as follows:

1.   The Maturity Date of the Note is set one year after the execution date of the Note, being December 27th, 2014 (hereinafter the "Maturity Date").

2.   Clause 1(a)(i) of the Note is amended to read that the Note is to be paid by the Company *upon the Maturity Date*.

3.   Ray shall have the right from time to time and at any time during the period commencing from the date of execution of the Note and ending on the later of

the Maturity Date, to convert all or any part of the outstanding and unpaid Principal Amount of the Note into fully paid and non-assessable shares of Common Stock of the Company at the Stock Price.

4. The Closing Price definition is amended to *"the closing price of the trading day immediately prior to the date of issuance of the shares (the "Closing Price")"*.

5. The definition of the **True up Amounts** is amended in its entirety to read as follows "*For a period of five (5) years from the date of execution of the Note, Ray shall be entitled to recover the shortfall incurred in additional shares or cash or any combination at the Company's option. The True up Amounts are equal to the Principal Amount less the Market (as defined below) of the shares issued or the cash paid as part of any Payment prior to such calculation date. The Company shall pay the True up Amounts no later than fifteen (15) days upon receipt of the request from Ray.*"

6. The Note as amended by this Addendum represent the entire agreement among the parties hereto with respect to the subject matter hereof and supersede any prior expressions of intent or understanding with respect to this transaction and may be amended only by an instrument in writing executed by the party or parties to be bound or burdened thereby.

7. This Addendum shall in all respects be governed by, and construed in accordance with the internal laws of the State of New York.

IN WITNESS WHEREOF the presents have been duly executed the day and year first before written.

**SIGNED** by:                     )
M. ZOLOTAS             )
for and on behalf of:       )
NEWLEAD HOLDINGS LTD  )
in the presence of:         )

**ACKNOWLEDGED** by:        )
D. TSOUVELEKAKIS       )
for and on behalf of:         )
RAY CAPITAL INC.          )
in the presence of:          )

DATE: 7 December 2015

---

# NEWLEAD HOLDINGS LTD.
of Bermuda

-and-

# RAY CAPITAL INC.
Of the Republic of Marshall Islands

---

# ADDENDUM NO. 5

to

the Unsecured Convertible Note dated 27th December, 2013
in the amount of USD 6,000,000 (United States Dollars six million)

---

This Addendum No.5 (hereinafter the "**Addendum**"), is made on 7 December 2015

**BETWEEN:**

(1)   **NEWLEAD HOLDINGS LTD.,** a corporation incorporated under the laws of the Islands of Bermuda having its registered office at Cumberland House, 9th Floor, 1 Victoria Street, Hamilton HM12, Bermuda (hereinafter called the "**Company**");

-and-

(2)   **RAY CAPITAL INC.,** a corporation established in the Republic of the Marshall Islands having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands (hereinafter called the "**Ray**").

*(Jointly the Parties, singly the Party)*

*Terms used, but not otherwise defined, in this Addendum have the same meaning as those in the Note.*

**RECITALS**

**WHEREAS,** pursuant to an Unsecured Convertible Note dated 27th December 2013 as amended by Addenda 1, 2, 3 and 4 on 28th December 2013 (the first two addenda), 3 March 2015 and 8 April 2015, respectively (the "**Note**") issued to Ray pursuant to an Exchange Agreement dated December 27th, 2013, between the Company and Tiger Capital Partners Ltd. of the BVI, (hereinafter called as the same is hereby and the same may from time to time be further amended, supplemented or varied, the "**Agreement**" and together with the Note, the "**Security Documents**"), the Company promises to pay to Ray the principal amount of USD 6,000,000 (United States Dollars six million) under the terms and conditions set forth therein.

**WHEREAS** the Maturity Date of the Note is 27 December 2015.

**NOW, THEREFORE,** in consideration of the mutual promises contained herein and other good and valuable consideration (receipt and sufficiency of which is hereby acknowledged) the Parties do hereby agree as follows:

(a)   The Maturity Date is deferred to 27 December 2018

(b)   All other provisions of the Note shall remain in full force and effect.

(c)   This Addendum shall be governed by and construed by and interpreted in accordance with the internal laws of the state of New York.

**(SIGNATURE PAGE FOLLOWS)**

**IN WITNESS WHEREOF,** the Parties have hereunto set their hands and affixed their seals as of the day and year first above written.


**SIGNED** by:                              )
M. ZOLOTAS                                  )
for and on behalf of:                       )
**NEWLEAD HOLDINGS LTD .**                  )
in the presence of:                         )



**SIGNED** by:                              )
                                            )
for and on behalf of:                       )
**RAY CAPITAL INC.**                        )
in the presence of:                         )

Date 8 April 2015

---

**NEWLEAD HOLDINGS LTD.**
of Bermuda

-and-

**RAY CAPITAL INC.**
of
the Republic of Marshall Islands

---

**ADDENDUM NO. 4**

to

the Unsecured Convertible Note dated 27th December, 2013
in the amount of USD 6,000,000 (United States Dollars six million)

---

This Addendum No.4 (hereinafter the "**Addendum**"), is made on April 8, 2015

**BETWEEN:**

(1) **NEWLEAD HOLDINGS LTD.**, a corporation incorporated under the laws of the Islands of Bermuda having its registered office at Canon's Court, 22 Victoria Street, Hamilton HM12, Bermuda (hereinafter called the "**Company**");

-and-

(2) **RAY CAPITAL INC.**, a corporation established in the Republic of the Marshall Islands having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands (hereinafter called the "**Ray**").

*(Jointly the Parties, singly the Party)*

*Terms used, but not otherwise defined, in this Addendum have the same meaning as those in the Note.*

**RECITALS**

**WHEREAS**, pursuant to an Unsecured Convertible Note dated 27th December 2013 as amended by Addenda 1, 2 and 3 on 28th December 2013 and 3 March 2015, respectively (the "**Note**") issued to Ray pursuant to an Exchange Agreement dated December 27th, 2013, between the Company and Tiger Capital Partners Ltd. of the BVI, (hereinafter called as the same is hereby and as the same may from time to time be further amended, supplemented or varied, the "**Agreement**" and together with the Note, the "**Security Documents**"), the Company promises to pay to Ray the principal amount of USD 6,000,000 (United States Dollars six million) under the terms and conditions set forth therein.

**WHEREAS**, under the Note the Company shall pay any accrued and unpaid interest on the Note shall be due and payable in quarterly installments concluding with the final installments on the Maturity Date.

**NOW, THEREFORE**, in consideration of the mutual promises contained herein and other good and valuable consideration (receipt and sufficiency of which is hereby acknowledged) the Parties do hereby agree as follows:

(a) To waive the payment of the accrued and unpaid interest on the Note in quarterly installments, such waiver being effective as from the date of execution of the Note.

(b) That the payment of the accrued and unpaid interest to be due and payable on the Maturity Date.

(c) All other provisions of the Note shall remain in full force and effect.

(d) This Addendum shall be governed by and construed by and interpreted in accordance with the internal laws of the state of New York.

**(SIGNATURE PAGE FOLLOWS)**

**IN WITNESS WHEREOF,** the Parties have hereunto set their hands and affixed their seals as of the day and year first above written.

**NEWLEAD HOLDINGS LTD.**

By:

Name: Michail S. Zolotas

Title: CEO/ Chairman

**RAY CAPITAL INC.**

By:

Name:

Title:

DATE: 14 September 2015

---

**NEWLEAD HOLDINGS LTD.**
of Bermuda


-and-


**RAY CAPITAL INC.**
Of the Republic of Marshall Islands

---

**ADDENDUM NO. 5**

to

the Unsecured Convertible Note dated 27th December, 2013
in the amount of USD 6,000,000 (United States Dollars six million)

---

This Addendum No.5 (hereinafter the "**Addendum**"), is made on 14 September 2015

**BETWEEN:**

(1) **NEWLEAD HOLDINGS LTD.,** a corporation incorporated under the laws of the Islands of Bermuda having its registered office at Canon's Court, 22 Victoria Street, Hamilton HM12, Bermuda (hereinafter called the "**Company**");

-and-

(2) **RAY CAPITAL INC.,** a corporation established in the Republic of the Marshall Islands having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands (hereinafter called the "**Ray**").

*(Jointly the Parties, singly the Party)*

*Terms used, but not otherwise defined, in this Addendum have the same meaning as those in the Note.*

## RECITALS

**WHEREAS,** pursuant to an Unsecured Convertible Note dated 27th December 2013 as amended by Addenda 1, 2, 3 and 4 on 28th December 2013 (the first two addenda), 3 March 2015 and 8 April 2015, respectively (the "**Note**") issued to Ray pursuant to an Exchange Agreement dated December 27th, 2013, between the Company and Tiger Capital Partners Ltd. of the BVI, (hereinafter called as the same is hereby and as the same may from time to time be further amended, supplemented or varied, the "**Agreement**" and together with the Note, the "**Security Documents**"), the Company promises to pay to Ray the principal amount of USD 6,000,000 (United States Dollars six million) under the terms and conditions set forth therein.

**WHEREAS** the Maturity Date of the Note is 27 December 2015.

**NOW, THEREFORE,** in consideration of the mutual promises contained herein and other good and valuable consideration (receipt and sufficiency of which is hereby acknowledged) the Parties do hereby agree as follows:

(a) The Maturity Date is deferred to 27 December 2018

(b) All other provisions of the Note shall remain in full force and effect.

(c) This Addendum shall be governed by and construed by and interpreted in accordance with the internal laws of the state of New York.

(SIGNATURE PAGE FOLLOWS)

**IN WITNESS WHEREOF,** the Parties have hereunto set their hands and affixed their seals as of the day and year first above written.

| | |
|---|---|
| **SIGNED** by: | ) |
| M. ZOLOTAS | ) |
| for and on behalf of: | ) |
| **NEWLEAD HOLDINGS LTD .** | ) |
| in the presence of: | ) |

| | |
|---|---|
| **SIGNED** by: | ) |
| | ) |
| for and on behalf of: | ) |
| **RAY CAPITAL INC.** | ) |
| in the presence of: | ) |