IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

RAY CAPITAL INC.; OPPENHEIM       *
CAPITAL LTD.; CHEYENNE HOLDINGS   *
LTD.; and LABROY SHIPTRADE        *
LIMITED,                          *
                                  *
        Plaintiffs,               *
                                  *
        v.                        *          CV 416-093
                                  *
M/V NEWLEAD CASTELLANO, IMO NO.   *
9686338, her engines, tackle,     *
equipment, furniture,             *
appurtenances, etc., *in rem*,    *
and NEWLEAD CASTELLANO LTD.,      *
                                  *
        Defendants.               *

---

**O R D E R**

---

Presently before the Court is Defendants' motion to vacate (Doc. 15).  For the reasons below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

On April 19, 2016, upon the filing of Plaintiffs' verified complaint (Doc. 1), the Court entered orders directing the issuance of a warrant for the maritime arrest of the M/V Newlead Castellano, IMO No. 9686338 ("Vessel"), and the issuance of process for maritime attachment and garnishment of the Vessel. (Docs. 1, 8, 10.)  Since that time, Defendants have filed a

motion to vacate the arrest and attachment pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. (Doc. 15.) The pertinent facts underlying this motion are as follows.[1]

For its outstanding debt obligations, NewLead Holdings Ltd. ("NewLead") issued a promissory note (1) to Plaintiff Ray Capital Inc. ("Ray") on December 27, 2013, in the amount of $6,000,000; (2) to Plaintiff Oppenheim Capital Ltd. ("Oppenheim") on August 6, 2014, in the amount of $2,499,955.98; (3) to Plaintiff Cheyenne Holdings Ltd. ("Cheyenne") on September 12, 2014, in the amount of $1,250,000; and (4) to Plaintiff Labroy Shiptrade Limited ("Labroy") in the amount of $1,215,000. (Am. Compl., Doc. 18, ¶¶ 1, 26.) Thereafter, in accordance with the parties' negotiations, NewLead's wholly-owned subsidiary, Defendant NewLead Castellano Ltd. ("NC"), (1) issued each Plaintiff a guarantee and indemnity and (2) secured each guarantee and indemnity with a mortgage on the Vessel for the given amount outstanding. (Id. ¶¶ 30-32, 39.) While it managed to reduce the amount owed to Plaintiff Ray, NewLead ultimately failed to fulfill its obligation to Plaintiff Ray as of the note's maturity date of December 27, 2015. (Id. ¶¶ 51-

---

[1] In determining whether the arrest and attachment were valid, the Court may consider facts that were not before it at the time of the original arrest and attachment. See James v. M/V Eagle Express, No. CA12-423, 2012 WL 3068791, at *4 (S.D. Ala. July 27, 2012). Accordingly, the Court will reference Plaintiffs' amended complaint when considering the allegations at hand.

52, 54.)  In light of this fact, Defendant NC's failure to cure, and Defendant NC's "numerous additional defaults entitling Ray, Cheyenne, Oppenheim, and Labroy to foreclose on the Vessel," Plaintiffs instituted this suit and obtained the aforementioned arrest and attachment.  (Id. ¶ 57.)

At Defendants' request, the Court scheduled a hearing on the instant motion for June 27, 2016.  (Doc. 36.)  Yet, after (1) receiving Defendants' notice of their counsel's intent to withdraw and (2) their accompanying motion to postpone (Doc. 39), the Court rescheduled the hearing for July 11, 2016 (Doc. 39).  However, since Defendants' counsel formally withdrew (Doc. 42), no counsel has filed a notice of appearance on Defendants' behalf.  As a result, the hearing on Defendants' motion to vacate took place as scheduled on July 11, 2016, without an appearance from Defendants.  (Doc. 46.)  Nevertheless, having held the hearing that Defendants requested, the Court now considers the merits of their motion.[2]

## II. DISCUSSION

### A. Arrest

After a vessel has been arrested, "the owner or other person claiming a right to the vessel may, pursuant to

---

[2]  At the hearing, along with Defendants' motion to vacate, the Court also entertained Plaintiffs' motions (1) to authorize certain in custodia legis expenses, (2) to sell the Vessel, and (3) to allow Plaintiff to inspect the Vessel (Doc. 28), all of which will be addressed in a subsequent order.

Supplemental Admiralty Rule E(4)(f), seek for the court to conduct a hearing and ultimately vacate the arrest." James, 2012 WL 3068791, at *3. "[N]ot intended to resolve definitively the dispute between the parties," a Rule E(4)(f) hearing is designed only to have the Court "make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant." Id. (internal quotation marks and citation omitted). Still, the nonmoving party, the plaintiff, "must shoulder the burden of showing why the arrest should not be vacated." Id. Yet, this burden is "not onerous." Id. The plaintiff need only show "by a preponderance of the evidence that it is entitled to a valid maritime lien." Id. (emphasis removed).

In the Eleventh Circuit, "[t]he test for determining who is entitled to a maritime lien . . . come[s] from a plain reading of [46 U.S.C. § 31342]." Galehead, Inc. v. M/V Angila, 183 F.3d 1242, 1244 (11th Cir. 1999). Under that provision, "to obtain a maritime lien, a person must: (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent." Id. (interpreting 46 U.S.C. § 31342). In this context, "necessaries" include "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4).

Despite the plain language of 46 U.S.C. § 31342, Plaintiffs maintain that they have a maritime lien against the Vessel because they provided the Vessel's crew with their wages for

March 2016.  While case law indicates that "[i]t is well settled that one who advances money to pay crew's wages is entitled to a maritime lien," Plaintiffs did not make the above-referenced payments until after the Vessel had come within the Court's custody.  (Am. Compl. ¶¶ 70-75.)  See Bank of New Orleans & Trust Co. v. Oil Screw Tracy Marie, 455 F. Supp. 78, 80 (W.D. La. 1978), aff'd on other grounds, 580 F.2d 808 (5th Cir. 1978). This timing, as the Southern District of Florida points out, is problematic:

> Claims for wages by seamen occupy a preferential place in the echelon of maritime liens. . . . On the other hand, "the long established rule in admiralty law is that 'no lien can attach to a vessel while she is in judicial custody.'" . . . This general rule trumps a seaman's claim for wages.

Admiral Cruise Servs., Inc. v. M/V ST. TROPEZ, 524 F. Supp. 2d 1378, 1380 (S.D. Fla. 2007)(quoting Dresdner Bank AG v. M/V Olympia Voyager, 465 F.3d 1267, 1272 (11th Cir. 2006)).  Hence, Plaintiffs' payments do not give rise to a maritime lien.

Meanwhile, in addition to their wage-based argument, Plaintiffs assert that they have a maritime lien by virtue of their preferred mortgage lien.  See 46 U.S.C. § 31325 ("A preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel.").[3]  However, a preferred mortgage lien does not fall

---

[3]  Preferred mortgage liens will be discussed in further detail in section II.B, infra.

5

within the meaning of "maritime lien" as stated in 46 U.S.C. §
31342 and as followed by the Eleventh Circuit Court of Appeals.
Consequently, without any other arguments from Plaintiffs
indicating that they have a maritime lien on the Vessel,
Defendants' motion to vacate, as it relates to the arrest of
Vessel, is **GRANTED**.[4]

## B.  Attachment

Similarly, when a defendant moves to vacate an attachment
pursuant to Supplemental Admiralty Rule E(4)(f), the plaintiff
bears the burden of showing that the Court's earlier actions
were proper.  <u>James</u>, 2012 WL 3068791, at *5.  Specifically, a
plaintiff must show that the following Rule B attachment
requirements are met: (1) "[the plaintiff] has a valid *prima
facie* admiralty claim against the defendant"; (2) "the defendant
cannot be found within the district"; (3) "the defendant's
property may be found within the district"; and (4) "there is no
statutory or maritime law bar to the attachment." <u>Id.</u> (citation
omitted).  Of these requirements, only the first – the existence
of a prima facie admiralty claim – is contested by Defendants.

As noted above, a "preferred mortgage" gives rise to "a
lien on the mortgaged vessel in the amount of the outstanding
mortgage indebtedness secured by the vessel." 46 U.S.C. §

---

[4]  At the hearing held on July 11, 2016, the Court indicated that it was
inclined to deny Defendants' motion to vacate as it related to the Vessel's
arrest.  However, after further review of the cases referenced above, the
Court is prohibited from reaching this outcome.

31325(a).   As used in this section, a "preferred mortgage" includes "a mortgage . . . that is established as a security on a foreign vessel if the mortgage . . . was executed under the laws of the foreign country under whose laws the ownership of the vessel is documented and has been registered under those laws in a public register at the port of registry of the vessel or at a central public office." Id. § 31301(5).   Accordingly, because Plaintiffs have pled (1) that the ownership of the Vessel has been documented in Liberia and (2) that Plaintiffs' mortgages in the Vessel were registered in Liberia and governed by Liberian law, Plaintiffs have adequately alleged that their mortgage on the Vessel entitles them to a preferred mortgage lien. (Am. Compl. ¶¶ 40, 49.)   Moreover, in light of these allegations and Plaintiffs' contention that Defendant NC has defaulted on the mortgages, Plaintiffs have established a prima facie admiralty claim. (Id. ¶¶ 52, 57.)   For that reason, Defendants' motion to vacate, as it pertains to the attachment of the Vessel, is **DENIED**.

## C.  Wrongful Arrest

Finally, as part of their motion to vacate, Defendants also seek "damages for [Plaintiffs'] wrongful arrest including, but not limited to: costs, attorney's fees, actual damages, and consequential damages." (Defs.' Br., Doc. 15, at 18.)   Yet, in order to recover, Defendants must show that Plaintiffs acted "in

7

bad faith, with malice, or through a wanton disregard of the legal rights of [their] adversar[ies]." Frontera Fruit Co. v. Dowling, 91 F.2d 293, 297 (5th Cir. 1937). While Defendants have demonstrated that the prior arrest was improper, they will not be awarded costs, attorney's fees, or damages for two reasons. First, Plaintiffs relied on the advice of counsel in seeking the arrest. See id. ("It has been held by this court that the advice of competent counsel, honestly sought and acted upon in good faith[,] is alone a complete defense to an action for malicious prosecution."). Second, Defendants have not shown that Plaintiffs acted in bad faith, with malice, or with wanton disregard for Defendants' rights. Given these reasons, the Court **DENIES** Defendants' motion to vacate as it relates to their claim of wrongful arrest.

### III. CONCLUSION

For the reasons above, the Court **GRANTS** Defendants' motion to vacate (Doc. 15) as it relates to the arrest of the Vessel and **DENIES** Defendants' motion as it relates to the attachment of the Vessel and Defendants' claim for wrongful arrest.

**ORDER ENTERED** at Augusta, Georgia, this 14th day of July, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA