## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION
## IN ADMIRALTY

| | | |
|---|---|---|
| **RAY CAPITAL INC., OPPENHEIM CAPITAL LTD, CHEYENNE HOLDINGS LTD. AND LABROY SHIPTRADE LIMITED** | § § § § § | |
| **PLAINTIFFS** | § | **C.A. NO. 16-CV-093** |
| **V.** | § § | |
| **M/V NEWLEAD CASTELLANO, IMO NO. 9686338 HER ENGINES, TACKLE, EQUIPMENT, FURNITURE, APPURTENANCES, ETC.,** *IN REM*, **AND NEWLEAD CASTELLANO LTD.** | § § § § § § § § | |
| **DEFENDANTS** | § § | |

### PLAINTIFFS' EMERGENCY MOTION FOR RECONSIDERATION

Plaintiffs Ray Capital Inc. ("Ray"), Oppenheim Capital Ltd., Cheyenne Holdings Ltd. and Labroy

Shiptrade Limited, through undersigned counsel, respectfully move the Court for emergency

reconsideration of the Court's July 14, 2016 Order (the "Order") as follows:[1]

The Order is unique in recent American jurisprudence in that it finds that a ship mortgage is not

an enforceable maritime lien and that the payment of pre-arrest crew wages assigned to Ray does

not support an *in rem* arrest under F.R.Civ.P Rule C.  The Order notes that "that without any other

arguments from Plaintiffs indicating that they have a maritime lien on the Vessel, Defendants

---

[1]  In the interests of brevity and given the emergency nature of this motion, Plaintiffs respectfully use the same defined terms as in their Response to Defendants' Motion to Vacate.  Mindful of the Court's usual location in August, Plaintiffs' counsel respectfully notes that it can be available for a hearing on the important issues raised herein at any time convenient to the Court in any location in the State of Georgia, or for that matter the United States.  Alternatively, Plaintiffs' counsel can be available for a telephonic hearing at any time.

motion to vacate, as it related to the arrest of the Vessel, is granted" (Order, p. 6).  Plaintiffs respectfully offer such support below.

### 1.   Plaintiffs Have A Preferred Mortgage Lien Pursuant to 46 U.S.C. 31325(a)

Admittedly, the analysis of a maritime lien is a complicated task: "Th[e] decentralized development of the lien laws resulted in a 'confusing collection of individual statutes enacted over ... centuries-each enacted to solve some particular problem of the day.'" *See* H.R. Rep. No. 100-918, at 11 (1988). The statutes were "poorly organized, duplicative, often obsolete, and difficult to understand and apply." Id.   However, there is no doubt that a ship mortgage gives rise to a maritime lien – specifically, a preferred mortgage lien.

The Court cites Galehead, Inc. v. M/V Angila, 183 F.3d 1242, 1244 (11th Cir. 1999) for the proposition that the only maritime lien recognized in the Eleventh Circuit is a lien arising under 46 U.S.C. 31342.   However, Galehead and 46 U.S.C. 31342 is limited to the provision of necessaries, which is only one of several categories of maritime lien recognized in the Eleventh Circuit.   To the extent Plaintiffs failed to articulate this to the Court, they apologize and now provide a clearer explanation of the statutory and case law authority that Plaintiffs respectfully aver support their arrest of the Vessel under F.R.Civ.P Rule C.

The definition of a preferred mortgage lien is found in 46 U.S. Code § 31301(6):

> "preferred mortgage"—
>
> (A) means a mortgage that is a preferred mortgage under section 31322 of this title; and
>
> (B) also means in sections 31325 and 31326 of this title, a mortgage, hypothecation, or similar charge that is established as a security on a foreign vessel if the mortgage, hypothecation, or similar charge was executed under the laws of the foreign country under whose laws the ownership of the vessel is documented and has been registered under those

> laws in a public register at the port of registry of the vessel or at a central office . . . . (emphasis added)

As the Court noted in the Order, pursuant to 46 U.S.C. 31325(a):

> (a) A preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel.
>
> (b) On default of any term of the preferred mortgage, the mortgagee may--
>
>> (1) enforce the preferred mortgage lien <u>in a civil action in rem</u> for a documented vessel, a vessel to be documented under chapter 121 of this title, a vessel titled in a State, <u>or a foreign vessel</u> . . . . (emphasis added)

Plaintiffs' "civil action in rem" remedy against a "foreign vessel" is provided for in F.R.Civ.P. Rule E (1):

> Applicability. Except as otherwise provided, this rule applies to . . . actions in rem . . ."

Plaintiffs' right to bring an *in rem* action under Rule C to enforce the Mortgages is valid in the Eleventh Circuit.  <u>Dietrich v. Key Bank, N.A.</u>, 72 F.3d 1509, 1513 (11th Cir. 1996) involved the question of whether "provisions for enforcement of preferred mortgage liens" preempted state statutes.  In order to reach its conclusion, the Court undertook a detailed description of the background and application of the Ship Mortgage Act of 1920 (which was re-codified into the Commercial Instruments and Maritime Liens Act ("<u>CIMLA</u>")).  The <u>Dietrich</u> Court stated that:

> The Ship Mortgage Act provided a means through which vessel mortgages could be given a preferred status and could be enforced in admiralty. . . . The Act itself did at least three important things - it set forth the requirements for recording preferred mortgages, established that only maritime liens would have priority over ship mortgages, and provided for a means of enforcing preferred mortgage liens in admiralty.

*Id.* at 1513.

To support its conclusion that the Act allows the holder of a preferred ship mortgage to enforce their lien in admiralty, the <u>Dietrich</u> Court cited 46 U.S.C § 31325(b).  *Id.*; *See also*, The

THOMAS BARLUM, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176, 1934 A.M.C. 1417 (1934), (finding grant of exclusive jurisdiction to District Courts to enforce the lien created by a 'preferred mortgage' pursuant to the Ship Mortgage Act); M & T Credit Servs. LLC v. M/V Wine N Crime, 2015 WL 4069690, at *4 (M.D. Fla. July 2, 2015) ("Ship Mortgage Act . . . provides that a prior in time preferred mortgage is entitled to priority over all subsequently arising liens against the subject vessel, excepting only certain "preferred" maritime liens as set out in the statute. . ."); Old Florida Nat. Bank v. M/V ROMANCE, 2012 WL 933029, at *1 (M.D. Fla. 2012) ("The Ship Mortgage Act provided a means through which vessel mortgages could be given a preferred status and could be enforced in admiralty.") (citation omitted); Bogle v. M/Y Cajun Princess, 2010 WL 1949550, at *5 (S.D. Fla. 2010) ("Plaintiff's Preferred Ship Mortgage Constitutes a Valid Maritime Lien . . . Pursuant to Section 31325 of Title 46 of the United States Code, the plaintiff is entitled to enforce his valid maritime lien resulting from the preferred ship mortgage."); Merchants Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie, 663 F.2d 1338, 1344-48 (5th Cir. 1981) (upholding sale of seized vessels where mortgagee banks arrested vessels pursuant to Rule C); *See further* BENEDICT ON ADMIRALTY, Vol. 8 § 7.01(C)(1)(v) ("A preferred mortgage constitutes a lien on the mortgaged vessel in the amount of the indebtedness secured by the mortgage. In order to enforce the lien of a preferred mortgage by action in rem, the mortgagee must prove that the mortgage substantially meets the requirements of the Liens Act, or was duly registered under the laws of a foreign country."); ADMIRALTY AND MARITIME LAW, Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 9-5 (5th ed. 2015) ("[I]n order to improve the lienholders' security and to encourage the establishment of a strong U.S. merchant marine, the Congress enacted the Ship Mortgage Act, which proves for a 'preferred ship mortgage' that creates a maritime lien against the mortgaged vessel. . .   In the event of a default, a ship mortgage

4

may be enforced by an action *in rem* in admiralty. In addition, the mortgagee may bring an *in personam* action in admiralty to recover any deficiency against the mortgagor."); <u>A Sea Change in Creditor Priorities</u>, Kristen van de Biezenbos, 48 U. Mich. J.L. Reform 595, 610 (2015) (Under U.S. maritime law, several classes of involuntary creditors have highest priority under the maritime lien. There are two broad categories of these liens: first is the preferred maritime lien, which tort victims, wage claimants, contract-based claims receive for services to the vessel ("necessaries") pre-dating preferred ship mortgages, claims for general average, and salvage providers. <u>Second are preferred ship mortgages that post-date the preferred maritime liens</u>." (emphasis added).

Further support for Plaintiffs' assertion that it has a maritime lien over the Vessel is found in 46 U.S.C. § 31326:

> (a)    <u>When a vessel is sold by order of a district court in a civil action in rem brought to enforce a preferred mortgage lien</u> or a maritime lien, any claim in the vessel existing on the date of sale is terminated, including a possessory common law lien of which a person is deprived under section 31325(e)(2) of this title, and the vessel is sold free of all those claims.
>
> (b)    Each of the claims terminated under subsection (a) of this section attaches, in the same amount and in accordance with their priorities to the proceeds of the sale, except that—
>
> > (1)    the preferred mortgage lien, including a preferred mortgage lien on a foreign vessel whose mortgage has been guaranteed under chapter 537 of this title, has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens); and
> >
> > (2)    for a foreign vessel whose mortgage has not been guaranteed under chapter 537 of this title, the preferred mortgage lien is subordinate to a maritime lien for necessaries provided in the United States.

Thus, while the Court is certainly correct that a lien for necessaries may prime the Mortgages in this case, CIMLA provides that foreign mortgages, like those held by Plaintiffs, are a preferred mortgage lien.  Plaintiffs respectfully urge the Court to reconsider the Order to the extent it finds that the Eleventh Circuit does not recognize a preferred mortgage lien for a foreign mortgage.[2]

## 2.   Plaintiff Ray has a Valid Maritime Lien for the Assignment of Pre-Arrest Crew Wages

Plaintiffs also respectfully ask the Court to re-consider the Order to the extent it finds that the assignment of crew wages to Plaintiff Ray does not create an enforceable maritime lien.  Plaintiff Ray may not have fully articulated the precise nature of this lien, and so a brief recital of the operative facts may be of assistance.

When the Vessel arrived in Savannah, the crew was owed wages for the pre-arrest months of February, March and the pre-arrest portion of April.  (See Declaration of Alan Swimmer, dated May 25, 2016, ¶9 [Dkt. 28-1]).  The arrest occurred on April 19, 2016. [Dkt. 12].  The wages paid by and assigned to Ray were for the month of March, 2016, a period that was pre-arrest.  Accordingly, the lien for unpaid wages had attached to the Vessel before the arrest.  Thus, while the Court is correct that Plaintiff Ray cannot obtain a lien for crew wages paid post-arrest pursuant to Admiral Cruise Servs., Inc. v. M/V ST. TROPEZ, 524 F. Supp. 2d 1378, 1380 (S.D. Fla. 2007) (citation omitted), that case involved the post-arrest payment of post-arrest wages.  The payment and assignment of pre-arrest wages is an entirely different matter.

---

[2]   Plaintiffs respectfully note that the Order may inadvertently overturn the well-established maritime law that a ship mortgage is enforceable by an action in rem that, by definition, has priority over other claims.  A decision that does so will throw the multi-billion dollar ship finance industry into disarray and confusion, threatening the validity of mortgages long held to be preferred maritime liens.

80445583v2

Plaintiff Ray respectfully argues that <u>Bank of New Orleans and Trust Co. v. Oil Screw Tracy Marie</u>, 455 F.Supp. 78, 80 (W.D. La) aff'd, 580 F.2d 808 (5th Cir. 1978) controls.[3]  In this ship mortgage foreclosure case, the Court found that the pre-arrest advance and assignment of crew wages constituted a valid maritime lien.  The Court found that "one who advances money to pay crew's wages is entitled to a maritime lien of the same rank." *Id.* at 80.  Here, the Order appears to change this rank by disallowing the claim.  Notably, the <u>Bank of New Orleans</u> Court was not alone, and cited <u>The Englewood</u>, 57 F.2d 319 (E.D.N.Y. 1932.) (holding the pre-arrest advancement of crew wages gave rise to a priority lien in favor of assignee), <u>P. T. Perusahaan Pelayaran Samudera Trikora Lloyd v. Salzachtal</u>, 373 F.Supp. 267, 1974 A.M.C. 1231 (E.D.N.Y. 1974) (holding pre-arrest assignment of crew wages gave rise to valid maritime lien), and <u>R F C v. The William D Mangold</u>, 99 F.Supp. 651, 1951 A.M.C. 1589 (E.D.N.Y 1951) (finding that a lien for assigned crew wages is available, but dismissing claim for lack of proof).

Since the often cited opinion by Justice Story in <u>Harden v. Gordon, 11 F.Cas. 480, 485 (C.C.D. Me. 1823) (No. 6047)</u>, it has been accepted that:

> [e]very Court should watch with jealousy an encroachment upon the rights of seamen, because they are unprotected and need counsel; . . . . They are emphatically the wards of the admiralty; . . . .

<u>Harden</u> was cited approvingly by the Eleventh Circuit in <u>Flores v. Carnival Cruise Lines</u>, 47 F.3d 1120, 1123 (11th Cir. 1995).  In this case, Plaintiffs are acting in good faith to treat the crew as wards of the Court and to make every effort possible to make them whole without requiring them to engage counsel and wait for their wages.  Plaintiff Ray respectfully argues that the payment of pre-arrest outstanding wages respects the Court's obligation to care for the crew and is supported

---

[3]     As the Court is aware, the Eleventh Circuit adopted as precedent those decisions of the Former Fifth Circuit rendered prior to October 1, 1981 in <u>Bonner v. City of Prichard, 661 F.2d 1206, 1207, 1209 (11th Circuit 1981)</u>.

by the existing case allowing the assignment of the lien claims created when these wages were earned during the pre-arrest period.

Since Plaintiff Ray paid the crew their outstanding wages for the month of March, 2016, a period pre-arrest, the documented assignment of the crew wages to Ray constitutes a valid and enforceable maritime lien.[4]  See Second Declaration of Dimitrios Tsouvelekakis in Support of Motion for Summary Judgment [Dkt. 43-2, Dkt. 43-1 Exs. 3 & 4].  Plaintiff Ray respectfully requests that the Court reconsider the Order to the extent it finds that an assignment of pre-arrest crew wages paid and assigned post-arrest is unenforceable.

## CONCLUSION

The impact of the Order on existing and well-established maritime law cannot be overstated.  The entire regime of securing debts against ships by registering a mortgage that gives rise to enforceable mortgage lien, a multi-billion dollar industry, is threatened.  The advancement of pre-arrest crew wages to sailors stranded aboard ships for prolonged periods of time during an arrest will also be negatively impacted, creating a situation where no rational creditor will pay these critical wages to wards of the Court.  Plaintiffs respectfully ask the Court to reconsider the Order in light of the additional authorities cited to the Court herein, and to uphold Plaintiffs' lien claims and arrest of the Vessel pursuant to F.R.Civ.P. Rule C.

---

[4]     Under Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 431, 59 S.Ct. 262, 266-67, 83 L.Ed. 265 (1939), courts are to avoid the application of rules and interpretations "which would affect ... [seamen] harshly because of the special circumstances attending their calling."(citation omitted) *cited by* Isbrandtsen Marine Services, Inc. v. M/V Inagua Tania, 93 F.3d 728, 1997 A.M.C. 912  (11th Cir. 1996).  Plaintiff Ray respectfully notes that, should the Order stand, mortgagees will no longer pay crew their outstanding pre-arrest wages, instead forcing the crew to retain counsel and fight for what they may be owed from the eventual proceeds of the sale of the ship.  Forcing sailors to do so would not be consistent with the Court's duty to these individuals as wards of the Court, and would create unnecessary hardship for sailors stranded far from home in a foreign country with no other means of support for themselves or their families.  Plaintiff Ray respectfully urges the Court to avoid a decision that would augur such drastic results in future, unrelated cases.

8

Respectfully submitted, this 15th day of July, 2016.

                                       **BOUHAN FALLIGANT LLP**

                                       /s/ Todd M. Baiad
                                       TODD M. BAIAD
                                       Georgia Bar No. 031605
                                       LUCAS D. BRADLEY
                                       Georgia Bar No. 672136

                                       *Attorneys for Plaintiffs*

Bouhan Falligant, LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile

**Of Counsel**
Neil A. Quartaro, Esq. (NQ 9640)
Zachary Farley, Esq.
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com

9

80445583v2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**
**IN ADMIRALTY**

| | | |
|---|---|---|
| **RAY CAPITAL INC., OPPENHEIM** | § | |
| **CAPITAL LTD, CHEYENNE** | § | |
| **HOLDINGS LTD. AND LABROY** | § | |
| **SHIPTRADE LIMITED** | § | |
| | § | |
| **PLAINTIFFS** | § | **C.A. NO. 16-CV-093** |
| **V.** | § | |
| | § | |
| **M/V NEWLEAD CASTELLANO,** | § | |
| **IMO NO. 9686338** | § | |
| **HER ENGINES, TACKLE,** | § | |
| **EQUIPMENT, FURNITURE,** | § | |
| **APPURTENANCES, ETC.,** *IN REM*, | § | |
| **AND** | § | |
| **NEWLEAD CASTELLANO LTD.** | § | |
| | § | |
| **DEFENDANTS** | § | |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

Respectfully submitted, this 15th day of July, 2016.

**BOUHAN FALLIGANT LLP**

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia Bar No. 031605
LUCAS D. BRADLEY
Georgia Bar No. 672136

*Attorneys for Plaintiffs*

10

80445583v2

Bouhan Falligant, LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile


**Of Counsel**
Neil A. Quartaro, Esq. (NQ 9640)
Zachary Farley, Esq.
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com

80445583v2