**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY**

| | | |
|---|---|---|
| **RAY CAPITAL INC., OPPENHEIM CAPITAL LTD., CHEYENNE HOLDINGS LTD. AND LABROY SHIPTRADE LIMITED** | ) ) ) ) | |
| | ) | |
| **PLAINTIFFS,** | ) | **CV 4:16-093 (JRH)** |
| | ) | |
| **V.** | ) | |
| | ) | |
| **M/V NEWLEAD CASTELLANO, IMO NO. 9686338 HER ENGINES, TACKLE, EQUIPMENT, FURNITURE, APPURTENANCES, ETC., IN REM, AND NEWLEAD CASTELLANO LTD.** | ) ) ) ) ) ) ) ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

Defendants, NewLead Castellano Ltd. and M/V NEWLEAD CASTELLANO ("Defendants"), through their counsel, Brennan, Harris & Rominger LLP and K&L Gates, LLP (admitted *pro hac vice*, Doc. 58), file this memorandum in opposition to Plaintiffs' Motion for Reconsideration of the Court's Order vacating the Rule C arrest of the M/V NEWLEAD CASTELLANO (Doc. 49).

## PRELIMINARY STATEMENT

Rule B authorizes a plaintiff to obtain an attachment over a defendant's property where plaintiff has a **maritime** claim against the defendant. Fed. R. Civ. P. Supp. B. Rule C authorizes a plaintiff to arrest a defendant's property if the plaintiff has the right to enforce a **maritime** lien

against that property.  Fed. R. Civ. P. Supp. C.  On April 19, 2016, Plaintiffs obtained a Rule B attachment and a Rule C arrest over Defendants' property. (Docs. 8-10).  As set forth in Defendants' previously submitted Cross-Motion for Reconsideration, the Rule B attachment should be vacated because Plaintiffs do not have a maritime claim.  (Doc. 59).  As set forth below, the Rule C arrest was properly vacated by this Court because Plaintiffs also do not have a maritime lien that would support a Rule C arrest.

The details of this dispute are set forth in Defendants' Cross-Motion for Reconsideration (Doc. 59).  Defendants will not repeat them except as necessary for this motion, which responds to Plaintiffs' motion for reconsideration of the Court's July 14, 2016 decision (Doc. 47) to vacate the Rule C arrest over Defendants' vessel issued on April 19, 2016 (Doc. 9).

On July 14, 2016, this Court correctly vacated the Rule C arrest because Plaintiffs did not satisfy their burden of showing that the arrest was valid at the time it was issued.  (Doc. 47).  The court held that: 1) Plaintiffs were not entitled to an arrest based on allegations regarding the Mortgages[1] because preferred mortgages do not qualify as maritime liens (*Id.,* pp 5-6); and 2) Plaintiffs were not entitled to an arrest based on after-arrest payments to crew members because no lien can attach to a vessel while she is in judicial custody.  (*Id.,* pp. 4-5).

On July 15, 2016, Plaintiffs filed a Motion for Reconsideration of the vacatur of the arrest, asserting that the Court erred on both grounds.  (Doc. 49).

Plaintiffs argue that they were entitled to a Rule C arrest pursuant to the Mortgages because: 1) Plaintiffs possess a preferred mortgage over the vessel pursuant to 46 U.S.C. § 31325; 2) Preferred mortgages are maritime liens; and 3) Plaintiffs have a right to enforce the

---

[1] For ease of reference, Defendants use the same defined terms as those used in the Cross-Motion for Reconsideration (Doc. 59).

preferred mortgage and obtain a Rule C arrest based on breaches of the Ray Note[2] **and** breaches of the Mortgages.  (Doc. 49, pp. 2-6; Doc. 18, ¶¶ 91-107).

As set forth in detail below, these arguments fail for two reasons.  First, the "preferred mortgages" in this case do not create and are not maritime liens as a matter of fact and law, for the reasons set forth in both the Court's Order and the authorities **cited by Plaintiffs.**  (*See* Doc. 47, p 4).

Second, even if the preferred mortgages were deemed to give rise to a right to file an in rem action against the vessel under Rule C for any alleged breached thereof,  Plaintiffs cannot enforce the "preferred mortgages" based on alleged breaches of the Ray Note for all the reasons set forth herein.   Likewise, Plaintiffs did not obtain a maritime lien based on alleged breaches of the Mortgages because each alleged breach occurred after the arrest, and post-arrest conduct cannot create a maritime lien as a matter of law.  *See M/V Express*, 2012 WL 3068791; *see also* Doc. 59, pp. 12-13 (citing cases).

The plaintiffs bear the burden of showing that a breach in the preferred mortgage occurred that would give rise to such cause of action.  Plaintiffs have failed to make any showing that would give rise to an action in rem against the vessel.

Plaintiffs next argue that they are entitled to a Rule C arrest based on the post-arrest payment of wages.  This argument fails in light of the "the long established rule in admiralty law is that no lien can attach to a vessel while she is in judicial custody" which applies "**[r]egardless of when the debt was incurred.**"  *See Dresder Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1272 (11th Cir. 2006) *with Cashman Equip. Corp. v. Offshore Contractors, Ltd*., No. 15-1956, 2016 WL 1259866, at *3 (W.D. La. Mar. 28, 2016) (emphasis added).

---

[2] As set forth in Defendants' Cross-Motion for Reconsideration, the Ray Note was issued to replace Settlement Warrants relating to promissory notes which, in turn, were issued for debt arising out of a land-based commission agreement that was not maritime in nature in the first instance.  (Doc. 59, pp. 2-3).

Accordingly, and for all the reasons set forth below, Plaintiffs have not satisfied their burden of showing that the Rule C arrest should not be vacated, and the Court's Order vacating the arrest should stand.

## **LEGAL STANDARD**

Defendants have challenged the Rule C arrest pursuant to Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims.  (Doc. 15).   Once an arrest is challenged under Rule E, the plaintiff must show that "there were reasonable grounds for issuing the arrest warrant."  *James v. M/V/ Eagle Express*, No. CA12-423, 2012 WL 3068791, at *3 (S.D. Ala. July 27, 2012) (internal citations omitted).  To do so, "the plaintiff must show [] by a preponderance of the evidence that it [was] entitled to a **maritime lien**."  *Id.* (emphasis added). There are two statutorily defined types of maritime liens.  First, pursuant to 46 U.S.C. § 31342 ("Section 31342"), a person obtains a maritime lien if said person provides "necessaries" to a vessel on the order of the owner or agent of the vessel.  *Galehead Inc. v. M/V Anglia*, 183 F.3d 1242, 1244 (11th Cir. 1999).  Second, a person can obtain a maritime lien pursuant to 46 U.S.C. § 31301 ("Section 31301") for wages of the crew of the vessel paid before the vessel's arrest.[3] *See, e.g., Admiral Cruise Servs., Inc. v. M/V St. Tropez*, 524 F. Supp. 2d 1378, 1380 (S.D. Fla. 2007) (recognizing status of claims for seamen wages as maritime liens but holding that the long established rule that no lien can attach to a vessel while it is in judicial custody trumps a claim for wages).  These are the only types of maritime lien recognized in the Eleventh Circuit. *Galehead*, 183 F.3d at 1244.[4]

---

[3] A maritime lien can also arise out of Section 31301 under circumstances not relevant to this case.
[4] *Galehead* did not discuss Section 31301, but its clear holding is that "[t]he test for determining who is entitled to a maritime lien must come from the plain reading of the statute itself."  183 F.2d at 1244.  The facts in *Galehead* did not require the court to evaluate whether a maritime lien existed under the plain reading of a different section of Chapter 313 that also defined maritime liens.

**ARGUMENT**

Plaintiffs concede that they cannot enforce a maritime lien pursuant to Section 31342. (Doc. 49, pp. 2, 6).  Plaintiffs also concede that they did not pay crew wages until the vessel was in judicial custody.  (Doc. 18, ¶¶ 70-75).  This should end the inquiry: the arrest was properly vacated for the reasons set forth in the Court's Order (Doc. 47).

In requesting the Court to reconsider its motion to vacate, Plaintiffs offer two arguments. First, Plaintiffs assert that they can enforce a maritime lien under 46 U.S.C.  §31325 (hereinafter "Section 31325") based on alleged breaches of the Ray Note and the Mortgages.  Second, Plaintiffs argue that the well established rule that a lien cannot attach to vessels in judicial custody does not apply here because Plaintiffs paid crew wages that accrued before the vessel's arrest.  As set forth below, both of these arguments are without merit.

**I.       Plaintiffs Are Not Entitled To A Rule C Arrest Under Section 31325**

Section 31325 defines a preferred mortgage as "a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel."  46 U.S.C. § 31325(a). A party can enforce a preferred mortgage "on showing of a default of the mortgage."   *Id.*, § 31325(b).   Despite Plaintiffs' conclusory and self-serving assertions to the contrary, Section 31325 does not entitle Plaintiffs to a Rule C arrest under any theory of fact or law advanced.

A.  Section 31325 Does Not Create A Maritime Lien

As set forth above, a party can only obtain a valid Rule C arrest if it brings an action to enforce a "maritime lien."  In their Motion for Reconsideration, Plaintiffs argue "there is no doubt that a ship mortgage gives rise to a maritime lien - specifically a preferred mortgage lien." (Doc. 49, p. 2).  This is yet another attempt at misdirection by Plaintiffs:[5] Plaintiffs intentionally

---

[5] Plaintiffs' improper conduct in respect to the attachment and arrest of the vessel is set forth in Defendants' Motion for Reconsideration (Doc. 59, pp. 19-23).

blur the line between: 1) actions that can be brought in rem against the vessel if Plaintiffs carry the burden of a true, as opposed to self-serving and baseless alleged, breaches of the Mortgages; and 2) maritime lien actions that can be brought in rem **under Rule C.**

Section 31325 authorizes a mortgagee to enforce a preferred mortgage in rem against the vessel (as an inanimate entity) if there is a true breach of the preferred mortgage.[6]  However, Rule C, by its terms, is only available when the action in rem is brought "to enforce a **maritime lien.**"  Rule C(1)(a).  Because the question before the court is whether the Rule C arrest was valid, the issue is therefore whether Plaintiffs have a valid **maritime lien**.  As the Court held, pursuant to *Galehead*, the Mortgages in this matter do not create a maritime lien as a matter of law.  (Doc. 47, pp. 5-6).

Plaintiffs cite to eight authorities as evidence that this Court should not follow *Galehead*,[7] but none of these authorities provides support for Plaintiffs' request.  As an initial matter, only three of those authorities are binding on this Court, and all three of these binding authorities **reinforce** this Court's holding that **preferred mortgages do not create maritime liens.**  The plaintiffs conflate the principle that preferred vessel mortgages may give rise to an in rem claim against the vessel under certain circumstances, which for the reasons stated herein do not exist in this case, with what constitutes a "maritime lien" as set forth in the express language of Rule C.

Plaintiffs first cite to *Dietrich v. Key Bank, N.A.*, 72 F.3d 1509 (11th Cir. 1509) as evidence that "Plaintiffs' right to bring an *in rem* action **under Rule C** is valid in the Eleventh Circuit."  (Doc. 49, p.2) (emphasis added).  *Dietrich,* which did not involve a Rule C arrest, says no such thing.  Moreover, as the language quoted by Plaintiffs demonstrates, the *Dietrich* court

---

[6] As set forth in detail below, Defendants **do** dispute that there were any defaults and/or breaches  of the Mortgages.
[7] This does not include Plaintiffs' reference to a law review article that does not mention maritime liens at all. *See Benedict on Admiralty*, Vol. 8 § 7.01(C)(1)(v).

expressly recognized a difference between maritime liens and preferred mortgages which do not give rise to maritime liens.  72 F.3d at 1513 ("[M]aritime liens would have priority over ship mortgages.").

Plaintiffs next cite to *The Thomas Barlum*, 293 U.S. 21 (1934), a Supreme Court case that further rebuts Plaintiffs position.  The Court explained that "the preferred mortgage lien is to have priority over all claims against the vessel, **except preferred maritime liens** and expenses, fees and costs allowed by the Court."  *Id.* at 35 (emphasis added).

Third, Plaintiffs cite to the U.S. Code, which states that a vessel can be sold by court order in an action brought under a preferred mortgage.  (Doc. 49, p.5) (citing 46 U.S.C. § 31326(a)).  Like the 11th Circuit and the Supreme Court, the U.S. Code explicitly acknowledges the distinction between preferred mortgages on the one hand and maritime liens on the other.  *Id.* ("When a vessel is sold by order of a district court in a civil action in rem brought to enforce a preferred mortgage **or a maritime lien** …).[8]  Each of these authorities demonstrates that preferred mortgages do not *ipso facto* create maritime liens.  *See also U.S. v. Trident Crusader*, 366 F.3d 391, (5th Cir. 2004) ("The statutory scheme deems the preferred mortgage a 'lien' on the 'vessel,' but does not call it a 'maritime lien.'  The statute distinctively denominates maritime liens and preferred mortgages where both are intended.") (internal citations omitted).

Plaintiffs' remaining five citations are to non-binding authorities that cannot justify a departure from Eleventh Circuit precedent.  *See, e.g., Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co.,* 240 F.3d 956, 965 n.14 (11th Cir. 2001) ([T]he only courts [a district court] must be obedient to are this Circuit and the Supreme Court of the United States.").   In any

---

[8] The structure of the U.S Code further demonstrates this point.  Chapter 313 (the chapter encompassing all the sections relevant to this dispute) is titled "Commercial Instruments and Maritime Liens."  Subchapter II is titled "Commercial Instruments" **and includes Section 31325, i.e. preferred mortgages.**  The U.S. Code is clear: preferred mortgages are commercial instruments, not maritime liens.

event, these authorities do not support Plaintiffs' motion.  Indeed, three of these five non-binding

citations further demonstrate that preferred mortgages are not maritime liens.  *M & T Credit*

*Servs. LLC v. M/V Wine and Crime*, No. 6:14-cv-1821-Orl-22DAB, 2005 WL 4069690 at *4

(M.D. Fla. July 2, 2015) (explicitly recognizing that preferred maritime liens have priority over

preferred mortgage liens); *Old Florida Nat. Bank v. M/V Romance*, No. 6:11-cv-1992-Orl-

28KRS, 2012 WL 933029, at *1(M.D. Fla. Feb. 21, 2012) (same); *A Sea Change in Creditor*

*Priorities,* Kristen van de Biezenbos, 48 U. Mich. J.L. Reform 595, 610 (2015) ("There are two

broad categories of these liens: first is the preferred maritime lien…Second are preferred ship

mortgages.").

Six of the eight authorities **cited by Plaintiffs** therefore reiterate the rule set forth in

*Galehead* and followed by this court: preferred mortgages are not maritime liens.  The two

authorities that arguably support Plaintiffs' position are a case from a different circuit and a law

review article, neither of which is persuasive enough to justify ignoring *Galehead*, 11th Circuit

and Supreme Court precedent, the plain language of the U.S. Code, and the majority of other

cases cited in Plaintiffs' Motion for Reconsideration. [9]  The law is clear: a preferred mortgage is

not a maritime lien, and the Court correctly vacated the arrest to the extent it was obtained under

Section 31325.

---

[9] The Fifth Circuit case upheld a Rule C arrest pursuant to a preferred mortgage, but neither party contested whether the mortgages qualified as maritime liens.  *Merchants Nat. Bank of Mobile v. Dredge General G. L. Gilespie*, 663 F.2d 1338 (5th Cir. Dec. 18, 1981).  Because the opinion was issued after October 1, 1981—which Plaintiffs do not highlight for the Court—its precedent has not been adopted by the 11th Circuit.  *See Bonner v. City of Pritchard,* 661 F.2d 1206, 1207-09 (11th Cir. 1981).  Moreover, "when questions of jurisdiction have been passed on in prior decisions *sub silentio*, [the Eleventh Circuit] has never considered itself bound when a subsequent case finally brings the jurisdictional issue before the Court."  *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1375 (11th Cir. 2004).  Therefore, even if *Merchants* was binding on this Court, its holding as to Rule C jurisdiction would **not** be binding because the Court did not address that issue.  *Id.*  The treatise is even less persuasive: it describes preferred mortgages as maritime liens in passing but does not mention the Rule C requirements as the basis for enforcing such lien.

## II.   Plaintiffs Could Not Obtain A Rule C Arrest Under Section 31325 Even If A Preferred Mortgage Was Deemed  To Create A Maritime Lien Required Under Rule C

Even if Section 31325 does create what could be deemed to be a maritime "lien," Plaintiffs would still not be entitled to a Rule C arrest in the circumstances of this case.  The Section provides that a "mortgagee may . . . enforce the preferred mortgage lien in a civil action in rem **. . . [o]n default of any term of the preferred mortgage."**  (emphasis added).  Contrary to Plaintiffs' representations in its Motion for Reconsideration, the question extends beyond whether "Plaintiffs have a preferred mortgage lien pursuant to 46 U.S.C. 31325(a)."  (Doc. 49, p. 2).  Instead, the Court must determine whether Plaintiffs have shown by a preponderance of the evidence that that there was a default and/or other breach of the Ray Note and/or the preferred mortgages such that Plaintiffs could **enforce** an *in rem* claim against the vessel under Section 31325.  *See, e.g., M/V Eagle*, 2012 WL 3068791, at *3; Rule C ("An action in rem may be brought: (a) to enforce any maritime lien; (b) **Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.**") (emphasis added)).  For the reasons more fully set forth herein and as found by the court in its Order dismissing the Rule C arrest, the plaintiffs do not possess a maritime lien.  Even if they did possess a maritime lien, Plaintiffs would still need to have shown by a preponderance of the evidence that the Defendants breached the terms of the Ray Note and preferred mortgages such that it would permit the Plaintiffs to file an *in rem* claim against the vessel under Section 31325.  The Defendants respectfully submit that Plaintiffs cannot carry their burden in this regard.

Plaintiffs' Motion for Reconsideration does not address this issue.  (Doc. 49).  However, in prior pleadings, Plaintiffs assert that they can enforce a Section 31325 *in rem* claim on two grounds: alleged breaches of the Ray Note and alleged breaches of the Mortgages.  Plaintiffs

cannot enforce a Section 31325 *in rem* claim on either ground.

A. Plaintiffs Cannot Enforce A Section 31325 *In Rem* Claim Against the Vessel Based On Alleged Breaches Of The Ray Note

To enforce a preferred mortgage *in rem*, the mortgagee must show a default of any term **of the preferred mortgage.** 46 U.S.C. § 31325(b) (emphasis added). A breach of an underlying contract ("the Ray Note" in this case) secured by a preferred mortgage does not give rise to a claim under Section 31325. *See, e.g., S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gasteneta*, 833 F.2d 1477, 1482 (11th Cir. 1987) (holding that a cause of action for breaching an underlying contract secured by a maritime lien is "altogether different" from a cause of action to enforce a maritime lien); *Beluga Holding Ltd. v. Commerce Capital Corp.*, 212 F.3d 1199 (11th Cir. 2000) (holding that Section 31325 did not grant the court jurisdiction over an underlying dispute even though that dispute was secured by a preferred mortgage); *First Bank Puerto Rico v. Swift Access Marketing, Inc.*, 697 F. Supp. 2d 259 (D.P.R. 2010) (holding that a complaint seeking enforcement of a promissory note, even one secured by a preferred mortgage, "is devoid of federal law issues").

Plaintiffs allege that the "breach of the Ray Note entitles Plaintiff Ray to foreclose on the Vessel." (Doc. 18, ¶ 93). Pursuant to the plain language of Section 31325 and the authority cited above, breaches of an underlying contract cannot be enforced under Section 31325. In other words, a breach of the Ray Note, to the extent one occurred, which is denied, would not entitle Plaintiffs to enforce an action *in rem* against the vessel. As set forth above, a Rule C claimant must establish that it has a maritime lien (which Plaintiffs cannot do), or demonstrate that it has a right to enforce a claim *in rem* against the vessel pursuant to the applicable federal statute. In this case, as the court rightly determined, Plaintiffs have no right to enforce **anything** under Section 31325 (which, in any event, does not create a maritime lien).

B. <u>Plaintiffs Cannot Enforce A Section 31325 *In Rem* Claim Based On Alleged Breaches Of The Preferred Mortgages</u>

Plaintiffs next argue that they can enforce their preferred mortgage claim by alleging the following breaches of the Mortgages:

- Defendants failed to secure the release of the vessel within 14 days of arrest (Doc. 18, ¶ 119; Doc. 28, p. 4);
- Defendants allowed significant debt to accumulate against the vessel (Doc. 18, ¶58; Doc. 28, p. 4);
- Defendants failed to pay the crew on time (Doc. 18, ¶ 60; Doc. 28, p. 4);
- Defendants failed to maintain insurance cover (Doc. 18, ¶¶ 86-87; Doc. 28, p. 4);
- Defendants failed to provide audited financial statements; (Doc. 18, ¶ 62; Doc. 28, p.4); and
- Defendants have not, upon information and belief, kept the vessel in a complete state of repair. (Doc. 18, ¶ 65, Doc. 28, p. 4).

This list conveniently fails to apprise the Court that each and every one of the alleged defaults occurred after the vessel was arrested.  Plaintiffs likely failed to inform the court because the post-arrest nature of the allegations is fatal to its arrest for three reasons.  First, and most basically, no lien can attach to a vessel while she is in judicial custody.  *Dresder Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1272 (11th Cir. 2006).  Second, Plaintiffs' obligation after a Rule E challenge is to show that the arrest **was** valid at the time it was obtained, rendering any evidence of post-arrest conduct irrelevant.  *See M/V Express*, 2012 WL 3068791; *see also* Doc. 59, pp. 12-13 (citing cases).  Third, Plaintiffs' allegations of post-arrest conduct do not establish a default on the Mortgages because said conduct did not violate any legal duty owed to Plaintiffs.  *See, e.g., Weaver v. Mateer and Harbert, P.A.*, 523 Fed. Appx. 565, 568 (11th Cir. 2013) (affirming grant of summary judgment on a breach of contract claim where the plaintiff's allegations of wrongful conduct fell outside of the scope of the defendant's contractual duties).

1.  Post-Arrest Conduct Cannot Create A Maritime Lien Because No Lien Can Attach To A Vessel While She Is In Judicial Custody

Plaintiffs' position is that they are entitled to a Rule C arrest based purported breaches of the Mortgages, i.e. after the vessel was in judicial custody, despite the "the long established rule in admiralty law is that no lien can attach to a vessel while she is in judicial custody." *See, e.g., Dresder Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1272 (11th Cir. 2006).

A vessel enters judicial custody the moment it is arrested. *See, e.g., Admiral Cruise Servs. Inc. v. M/V St. Tropez*, 524 F. Supp. 2d 1378, 1382 (S.D. Fla. 2007) ("The arrest of a vessel seems to be a logical point to mark when a vessel is in judicial custody."); *Dresder*, 465 F.3d at 1272 (holding that no lien can attach after the vessel is arrested because the vessel is in judicial custody).

Because the vessel was in judicial custody after the vessel was arrested, alleged post-arrest events could not, as a matter of law, create a lien. *Id.* Therefore, Defendants' post-arrest conduct could not and did not create a maritime lien that could be enforced in rem against the vessel.

2.  Plaintiffs' Allegations Of Post-Arrest Breaches Cannot Be The Basis For An Argument That The Arrest **Was** Valid At The Time It Was Obtained

Even if the vessel was not in judicial custody, allegations of post-arrest conduct cannot prevent vacatur. In order to show that an arrest should not be vacated, "the Plaintiff must prove that the arrest or attachment **was** supported by reasonable grounds" at the time the action was filed. *M/V Express*, 2012 WL 3068791, at *3 (internal citations omitted); *see also* Doc. 59, pp. 12-13 (citing cases). Pursuant to this burden "any action in rem pursuant to Supplemental Rule C to enforce any maritime lien *in rem* against a vessel must be premised on the existence of a valid maritime lien **at the time that the action was filed**." *Petroleos Mexicanos Refinacion v.*

*M/T KING A*, 554 F.3d 99, 102 (3d Cir. 2009) (emphasis added).

The arrest in this case must be vacated because there was no valid maritime lien existing at the time the action was filed.  *Id.*

3. The Arrest Would Not Be Valid Even If The Court Considered Post-Arrest Allegations Because The Complaint Fails To Allege, And Plaintiffs Cannot Prove, That Defendants Breached The Mortgages

To show a default on the preferred mortgage in order to bring an action *in rem* under Section 31325, Plaintiffs must show that Defendants "violated legal duties owed" to Plaintiffs. *See, e.g., Weaver v. Mateer and Harbert, P.A.*, 523 Fed. Appx. at 568 (11th Cir. 2013) (affirming grant of summary judgment on a breach of contract claim where the plaintiff's allegations of wrongful conduct fell outside of the scope of the defendant's contractual duties).[10]

As described in detail in Defendants' earlier filed Motion for Reconsideration of the Rule B attachment, (Doc 59) the only evidence that Plaintiffs offer in support of a default on the Mortgages is a May 10, 2016 email from Defendants to the substitute custodian that Plaintiffs appointed.  (Doc. 59, pp. 17-19).

The email included instructions necessary for the vessel to be "maintained in a seaworthy state." (Doc. 18, Ex. 8. p.3).  The email cautioned that **if** the custodian did not follow the instructions, **then** the vessel would lose insurance cover, lose access to communications systems, and have potential issues with the Maritime Labor Commission due to unpaid crew wages.  *Id.* Nothing in the email suggests that Defendants failed to make payments it was required to make before May 10, 2016, nor does anything in the email suggest the vessel was not in a seaworthy state on May 10, 2016.  *See id.*

More importantly, nothing in the email relates to Defendants' legal obligations to

---

[10] Plaintiffs allege they are entitled to enforce the preferred mortgage pursuant to a breach of contract claim.  (Doc. 18, ¶¶ 98-107).

Plaintiffs, because once Plaintiffs arrested the vessel, Defendants' obligations to maintain the vessel transferred to the U.S. Marshals and then to Plaintiffs' appointed substitute custodian. *Donald D. Forsht Associates, Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1561 (11th Cir.1987) ("After arrest, the Marshal is responsible for preserving and safeguarding the arrested property.  . . . [and] the Plaintiff may choose to have a substitute custodian appointed" who steps into the shoes of the Marshall and is charged with the same duties and obligations) (11th Cir. 1987); *see also* Doc. 59, pp. 17-19.

        While an appointed substitute custodian is responsible for maintaining the vessel "[i]t is a well-established tenet of admiralty law that the arresting Plaintiff and the intervening Plaintiffs share in the costs of maintaining the res until the resolution of the case."  *Lubricantes Venoco, Int'l, C.A. v. M/V NEVERIS*, 60 F. App'x 835, 837 (1st Cir. 2003); *Donald D. Forscht*, 821 F.2d at 1563 (holding that claimants bear the cost of maintaining a vessel after its arrest).

        Accordingly, there were no "legal duties owed" to Plaintiffs because Defendants' obligations to maintain the vessel shifted to the U.S. Marshal, and then to Plaintiffs' appointed substitute custodian, ultimately for the account of Plaintiffs, once the vessel was arrested.  *Id.*; *see* Doc. 59, pp. 18-19).   Defendants did not have a legal duty to maintain the vessel after its arrest.  Defendants, therefore, could not have violated legal duties owed to Plaintiffs by not doing so.  *See Weaver*, 523 Fed. Appx. at 568 (holding that there can be no breach of contract if there was not a breach of legal duties owed to the plaintiff).

        Because Defendants did violate any legal duties owed to Plaintiffs, Defendants did not breach the mortgages.  *Id.*  Accordingly, Plaintiffs are not entitled to enforce their preferred mortgage *in rem* in any civil action, let alone a Rule C proceeding.

III.   **Plaintiff Did Not Obtain A Maritime Lien Based On After-Arrest Payment of Crew Wages**

The Court's order correctly held that post-arrest payments of crew wages "do not give rise to a maritime lien."  (Doc. 47, p. 5); *see also Dresder*, 465 F.3d at 1272.  Plaintiffs do not and cannot dispute that Plaintiffs did not make any payments before the vessel was arrested. (*Id.*, p. 5; Doc. 18, ¶¶ 70-75; Doc. 28, pp. 8, 15-16).  Nor do Plaintiffs refute "the long established rule in admiralty law that no lien can attach to a vessel while she is in judicial custody."  (Doc. 47, p. 5 (citing *M/V St. Tropez*, 524 F. Supp. 2d at 1380); Doc. 49, p. 6 (wherein Plaintiffs acknowledge that "the Court is correct that Plaintiff Ray cannot obtain a lien for crew wages paid post-arrest . . .").

Plaintiffs attempt to avoid vacatur of the arrest by arguing that "[t]he [admittedly post-arrest] payment and assignment of pre-arrest wages is an entirely different matter."  (Doc. No. 49, p. 6).  In support of this theory, Plaintiffs cite to *Bank of New Orleans and Trust Co. v. Oil Screw Tracy Marie*, 455 F. Supp. 78, 80 (W.D. La. 1978), aff'd 580 F.2d 8-8 (5th Cir. 1978). Plaintiffs correctly note that the court held that "one who advances money to pay a crew's wages is entitled to a maritime lien of the same rank" but neglect to inform this Court that the claimant in that case advanced the crew's wages **before the vessel was in judicial custody.**  455 F. Supp. at 80.[11]

---

[11] Plaintiffs cite to two other cases in support of their (incorrect) theory, but neither of them says what Plaintiffs imply they do.  *See The Englewood*, 57 F.2d 319 (E.D.N.Y. 1932) (evaluating a subrogation claim that did not involve a vessel arrest at all); *R F C v. The William D. Mangold*, 99 F. Supp. 651, 653 (E.D.N.Y. 1951) ( involving an advance paid to a master "in order to enable him to pay member of the crew in order to induce them to make another voyage on the vessel"- i.e. another case that did not involve an arrest. ).  It is also worth noting that each of the cases Plaintiffs cite use the phrase "advances of wages."  An advance, by definition, is "money given to someone as a loan or before the usual time of payment."  *See, e.g.,* http://www.learnersdictionary.com/definition/advance. Plaintiffs' payment of money already owed and is not an advance, rendering whatever authority for Plaintiffs' position these cases offered irrelevant here.

In other words, Plaintiffs do not tell the Court anything new: it is well-settled that the payment of crew wages can create a maritime lien if those payments are paid before the vessel is in judicial custody.   *See M/V St.Tropez*, 524 F. Supp. 2d at 1380.  However, the rule that no lien can attach to a vessel while it is in judicial custody "trumps a seaman's claim for wages."  *Id.* Accordingly, the law is clear that no lien can attach to an arrested vessel "**[r]egardless of when the debt was incurred.**"  *Cashman Equip. Corp.* 2016 WL 1259866, at *3 (emphasis added); *see also Oil Shipping (Bunkering) B.V. v. Royal Bank of Scotland*, 817 F. Supp. 1254, 1259 (E.D. Pa. 1993) ("[S]eizure revokes **all authority** to incur liability on behalf of the vessel.") (quoting 2 Benedict on Admiralty § 3-86-87 (7th ed. 1992)) (emphasis added).  Most tellingly, one of the cases cited by Plaintiffs expressly held that courts considering subrogation rights of a claimant that paid crew wages "look at [claimant's] relationship to [the shipowner] and the vessel as of the dates of [the] payment of these wages . . . **and not as of the time the crew became entitled to payment of wages**" *P.T. Perusahaan Pelayaran Samudera Trikora Lloyd v. Salzachtal*, 373 F. Supp. 267, 280 (E.D.N.Y. 1974) (emphasis added).[12]

Therefore, because Plaintiffs paid the crew wages after the vessel was in judicial custody, they are not entitled to a maritime lien as a result of those payments under any theory of fact or law.

---

[12] The court did not specifically address whether post-arrest payment for pre-arrest wages could create a lien, but its holding—that the operative question is the status of the vessel at the date of payment—makes clear that no lien can attach as a result of post-arrest payments, regardless of when the crew became entitled to said payments.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court deny

Plaintiffs' Motion for Reconsideration of the Rule C arrest in its entirety and allow its prior

Order dismissing the Rule C arrest to stand.

Respectfully submitted, this 1st day of August, 2016.

 /s/ T. Langston Bass, Jr.
T. LANGSTON BASS, JR.
State Bar No. 041320
*Attorney for Defendants*
BRENNAN, HARRIS & ROMINGER LLP
Post Office Box 2784
Savannah, Georgia 31402
T (912) 233-3399 F (912) 236-4558
tlb@bhrlegal.com

Michael G. Chalos
Federal Bar No. MC-3939
*Attorney for Defendants*
(*pro hac vice*)
K&L Gates, LLP
New York, NY 10022
T: 212.536.4097
F: 212.536.3901
michael.chalos@klgates.com