**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**
**IN ADMIRALTY**

| | | |
|---|---|---|
| **RAY CAPITAL INC., OPPENHEIM** | § | |
| **CAPITAL LTD, CHEYENNE** | § | |
| **HOLDINGS LTD. AND LABROY** | § | |
| **SHIPTRADE LIMITED** | § | |
| | § | |
| **PLAINTIFFS** | § | **C.A. NO. 16-CV-093** |
| **V.** | § | |
| | § | |
| **M/V NEWLEAD CASTELLANO,** | § | |
| **IMO NO. 9686338** | § | |
| **HER ENGINES, TACKLE,** | § | |
| **EQUIPMENT, FURNITURE,** | § | |
| **APPURTENANCES, ETC.,** *IN REM*, | § | |
| **AND** | § | |
| **NEWLEAD CASTELLANO LTD.** | § | |
| | § | |
| **DEFENDANTS** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS-MOTION FOR**
**RECONSIDERATION**

Plaintiffs Ray Capital Inc. ("Ray"), Oppenheim Capital Ltd. ("Oppenheim"), Cheyenne

Holdings Ltd. and Labroy Shiptrade Limited ("Labroy"), through undersigned counsel,

respectfully file the instant reply to the Cross-Motion for Reconsideration ("Cross-Motion") filed

by Defendant vessel M/V NewLead Castellano (the "Vessel") and Defendant NewLead

Castellano Ltd. ("NC") upon the following grounds:

**A.   Relevant Background**

Plaintiffs filed a Verified Complaint on April 19, 2016 (the "Original Complaint")

seeking, *inter alia*, the *in rem* arrest of the Vessel for breach of mortgage and attaching the Vessel

*quasi in rem* for Plaintiffs' *in personam* claims against Defendant NC.   Exhibit 1, Dkt. 1.

Defendants filed a Motion to Vacate on May 3, 2016, seeking vacatur of the arrest and attachment of the Vessel (the "Motion to Vacate").  Exhibit 5, Dkt. 15.  Plaintiffs filed an Amended Complaint on May 12, 2016 (the "Amended Complaint").  Exhibit 6, Dkt. 18.  Neither the Original Complaint nor the Amended Complaint were timely answered.  *See*, Dkt..  Plaintiffs responded to the Motion to Vacate on May 26, 2016 by filing a memorandum in opposition ("Plaintiffs' Rule E Response").  Exhibit 7, Dkt. 28.

On July 11, 2016, a Court hearing was held, following which the Court issued an order dated July 14, 2016 (the "Order"), upholding the attachment of the Vessel for breach of the Mortgages under Rule B, but granting Defendants' Motion to Vacate the arrest of the Vessel under Rule C for breach of the mortgages and non-payment of crew wages assigned to Plaintiff Ray.  Exhibit 15, Dkt. 47.  By separate order, the District Court granted Plaintiffs' request for interlocutory sale of the Vessel and approved certain *in custodia legis* expenses (the "Sale Order").  Exhibit 15, Dkt. 48.  In response to the Order (Exhibit 15, Dkt. 47), Plaintiffs filed an Emergency Motion for Reconsideration on July 15, 2016 (the "Emergency Motion").  Exhibit 16, Dkt. 79.  The Emergency Motion was immediately submitted to request clarification of the Order insofar as the Court found that Plaintiffs' claim for breach of preferred ship mortgages was secured by liens over the Vessel, but that Eleventh Circuit precedent does not permit the arrest of the Vessel to secure these liens.  The Emergency Motion also sought reconsideration of the Order to the extent it invalidated the assignment of pre-arrest crew wages paid by Plaintiff Ray when it discovered Defendants had failed to pay the crew for approximately three months.  By order dated July 21, 2016, the Court ordered Defendants to cross move to reconsider the Order no later than July 27, 2016.  Plaintiffs were given until August 1, 2016 to file the instant response.

At the outset, Plaintiffs respectfully note that the breach of the Ray Note by failure to pay is not at issue.  The Order finds that "[w]hile it managed to reduce the amount owed to Plaintiff Ray, NewLead ultimately failed to fulfill its obligation to Plaintiff Ray as of the note's maturity date of December 27, 2015."  Order, p. 2.  Defendants' Cross-Motion does not ask the Court to reconsider this finding (nor can they – there are no new facts suggesting that the Ray Note was paid).  The underlying fact of breach of the Ray Note, which entitled Plaintiff Ray to call on the NC Guarantee and Indemnity and the security provided by the Mortgage, is what entitled that Plaintiff to arrest the Vessel and seek her interlocutory sale.

In addition to the now-undisputed breach of the Ray Note, there are numerous breaches of the Mortgages securing the other Notes.  Defendants do not seriously deny these breaches: they merely try and argue that they occurred after the April 19, 2016 arrest of the Vessel.  In the case of unpaid crew wages from February and March, 2016, for example, it is difficult to see how Defendants can make this argument.  Similarly, the alleged poor maintenance of the Vessel pre-dates her arrest, as does the debt Defendants themselves admit to having allowed to accumulate over her.  In fact, nearly all of the breaches of the Mortgages occurred prior to the Vessel's arrest, although additional breaches were discovered (or in one case occurred) afterwards as well, such as NC's failure obtain the Vessel's release after 14 days, the failure to keep her insured, and the additional debts NC allowed to accumulate on the Vessel beyond what Plaintiffs had already alleged.

Indeed, more breaches are imminent.  The Notes issued by NewLead to Plaintiffs Labroy and Oppenheim are due, respectively, on August 1 and August 4, 2016.  Amended Complaint Exs. 2 & 4.  There is no indication that they will be paid either, and Plaintiffs Labroy and

Oppenheim expect to add causes of action for breach of these Notes in the coming days, should it be necessary.

### B. Motion for Reconsideration Standard

"Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." Cover v. Wal–Mart Stores, Inc., 148 F.R.D. 294, 295 (M.D.Fla. 1993). Plaintiffs' Emergency Motion for Reconsideration argues that the Order, insofar as it vacated the Rule C arrest but found an enforceable maritime lien for breach of preferred ship mortgage, was the result of (an admittedly easy to make) error in construing Galehead, Inc. v. M/V Angila, 183 F.3d 1242 (11th Cir. 1999).

It is not clear upon which ground the Cross-Motion is made, but Defendants offer no new facts or intervening change in controlling law. Accordingly, Defendants must be arguing that the Court committed clear error by not applying Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14 (2004), a cargo damage case, to the instant ship mortgage foreclosure case. As Plaintiffs' papers make absolutely clear, the Court did not err in failing to cite Kirby, and in fact the argument Defendants make to the contrary is expressly barred by the Ship Mortgage Act and by subsequent Supreme Court and Eleventh Circuit precedent.

### C. Rule E Standard

There appears to be no dispute that the burden in a Rule E motion is on the Plaintiffs to show that they have a *prima facie* admiralty claim. *See*, Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006), overruled on other grounds by Shipping Corp.

of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009). "A rule E(4)(f) hearing is not intended to definitely resolve the dispute between the parties, but only to make a preliminary determination of whether there are reasonable grounds for issuance of the arrest warrant." North of England Protecting and Indem. Ass'n v. M/V Nara, 1999 WL 33116416 at *2 (E.D.La. 1999). The Plaintiffs' burden is not onerous (George v. A 2005 DONZI Motor Yacht, Hull Identification No. DNAFA008A505, 2009 WL 3417707 (S.D.Fl. 2009)) and has been described as requiring that a *prima facie* claim be established. *See*, e.g., Chiquita Int'l Ltd. v. MV Bosse, 518 F.Supp.2d 589, 597 (S.D.N.Y. 2007). This is the same standard urged by Defendants. *See*, Cross-Motion p. 2.

The Aqua Stoli Court (cited by Defendants) interpreted Rule B to permit a plaintiff to obtain an order of attachment if it can make a prima facie showing that (1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. 460 F.3d at 455.

In this case, Defendants argue only point (1), alleging that Plaintiffs do not have a (i) valid *prima facie* claim that (ii) sounds in admiralty. Cross Motion, p. 2. In order to defeat Defendants' Cross Motion, Plaintiffs need only establish these two points. Everything else argued by Defendants in the Cross-Motion is irrelevant and merely obfuscates the issues before the Court.

## ARGUMENT

### POINT 1

### Plaintiffs Have Carried Their *Prima Facie* Burden

Pursuant to 46 U.S. Code § 31301(6), a "preferred mortgage [means]. . . a mortgage, hypothecation, or similar charge that is established as a security on a foreign vessel if the mortgage, hypothecation, or similar charge was executed under the laws of the foreign country under whose laws the ownership of the vessel is documented and has been registered under those laws in a public register at the port of registry of the vessel or at a central office . . .".

In order for a foreign mortgage to be considered a preferred ship mortgage "the mortgage or similar charge [must] be 'duly and validly executed' and 'duly registered' under the foreign law." Mobile Marine Sales, Ltd. v. M/V Prodromos, 776 F.2d 85, 89 (3d Cir. 1985) (Finding mortgage qualified as "preferred mortgage" under 46 U.S.C. § 31301(6)(B) if it is (1) validly "executed under the laws of the foreign country under whose laws the ownership of the vessel is documented" and (2) "has been registered under those laws in a public register at the port of registry of the vessel or at a central office"); Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S., 10 F.3d 1015, fn. 4 (3d Cir. 1993) (same); *See also*, Neptune Orient Lines, Ltd. v. Halla Merch. Marine Co., 1998 WL 128993, at *2 (E.D.La. 1998) (citation omitted); State of Israel v. M/V Nili, 435 F.2d 242, fn. 2 (5th Cir. 1970). Notably, the Ship Mortgage Act does not require a showing by a foreign mortgagee "that the mortgage is valid under foreign substantive law." Mobile Marine Sales, 776 F.2d at 89. In other words, in order to meet its burden in a Rule E hearing, Plaintiffs must make a *prima facie* showing that: (1) they hold mortgages over the

Vessel; and (2) the mortgages are made under the laws of the Vessel's flag state and have been registered with that flag state.[1]

Here, Plaintiffs have alleged that the Mortgages are duly and validly registered in the Republic of Liberia.  Complaint ¶ 38; Amended Complaint ¶ 49.  Defendants admit that Plaintiffs each hold a Liberian-law mortgage over the Vessel.  Answer ¶¶ 39-40.  Plaintiffs have produced the Vessel's Certificate of Ownership and Encumbrances ("COE") demonstrating that the Vessel is registered in the Republic of Liberia, and that the Mortgages are duly registered with the Liberia Maritime Authority.  Amended Complaint ¶ 49, Ex. 7; Second Declaration of Dimitrios Tsouvelekakis in Support of Motion for Summary Judgment [Dkt. 43-2, Dkt. 43-1 Ex. 2].  Plaintiffs have also supplied authority from the Republic of Liberia, Liberia Maritime Authority that the COE is considered to be an "original" and "authentic" document.  Defendants do not challenge these documents, and there is thus no real dispute that Plaintiffs hold preferred ship mortgages over the Vessel, or that the Mortgages are registered with the flag state.  Plaintiffs have accordingly made out a *prima facie* case that they hold valid preferred ship mortgages, while Defendants have produced no evidence or argument why these allegations or evidence are not persuasive.

---

[1]    Defendants try and argue that ContiChem LPG v. Parsons Shipping Co., Ltd., 229 F.3d 426 (2d Cir. 2000) requires vacatur of the attachment and, should it be upheld, arrest in this case.  But ContiChem is not on-point, as it involves a temporary restraining order ("TRO") brought under New York Civil Practice Law and Procedure § 7502(c).  The TRO in that case was improper because plaintiff could not invoke state court remedies to secure its maritime claim against defendants.  Having obtained a remedy for which there was no subject matter jurisdiction, the Plaintiff could not then attach the property wrongly restrained under New York state law.  Here, Plaintiffs have proceeded at all times under the federal statutes and case law that provide express authority for the arrests and attachments sought by Plaintiffs.

**POINT 2**

**Congress Gave Mortgagees the Right to Proceed in Admiralty *In Rem* Under Rule C**

Since the passage of the Ship Mortgage Act of 1920 (since re-codified as the Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31301 *et seq.*) vessel mortgage liens have been enforceable in admiralty.  The language of the Ship Mortgage Act expressly provides this remedy at 46 U.S.C. § 31325(b):

> (b) On default of any term of the preferred mortgage, the mortgage[e] may-
>
>> (1) enforce the preferred mortgage lien in a civil action in rem for a documented vessel, a vessel to be documented under chapter 121 of this title, or a foreign vessel; and
>>
>> (2) enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in-
>>
>>> (A) a civil action in personam in admiralty against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness;

The lead precedent interpreting the Ship Mortgage Act is The Thomas Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176 (1934) (Interpreting the Ship Mortgage Act and the lead case for ship mortgage enforcement under the Act).[2]  The Thomas Barlum contains a lengthy review of the nature and purpose of the Ship Mortgage Act, and finds that this important legislation provides the right for ship mortgagees to enforce their rights via *in rem* admiralty proceedings.  Id.

Following the passage of the Ship Mortgage Act and the The Thomas Barlum decision, actions to enforce a preferred ship mortgage sound in admiralty in every district court in the United States.   Dietrich v. Key Bank, N.A., 72 F.3d 1509 (11th Cir. 1996) is a particularly

---

[2]   Although not cited by Defendants, The Thomas Barlum remains good law, and was recently cited approvingly by the Eleventh Circuit.  Franza v. Royal Caribbean Cruises, Ltd., 772 F.3d 1225, 1232 (11th Cir. 2014).

instructive precedent because the Eleventh Circuit undertook a detailed description of the background and application of the Ship Mortgage Act of 1920.  The <u>Dietrich</u> Court stated that:

> The Ship Mortgage Act provided a means through which vessel mortgages could be given a preferred status and could be enforced in admiralty. . . . The Act itself did at least three important things - it set forth the requirements for recording preferred mortgages, established that only maritime liens would have priority over ship mortgages, and provided for a means of enforcing preferred mortgage liens in admiralty.

<u>Id.</u> at 1513.

To support its conclusion that the Ship Mortgage Act allows the holder of a preferred ship mortgage to enforce their lien in admiralty, the <u>Dietrich</u> Court cited 46 U.S.C. § 31325(b).  <u>Id.</u>

Nor is <u>Dietrich</u> the only recent Eleventh Circuit case enforcing a preferred ship mortgage *in rem* under the Ship Mortgage Act.  In <u>Dresdner Bank AG v. M/V OLYMPIA VOYAGER</u>, 463 F.3d 1233 (11th Cir. 2006) and <u>Dresdner Bank AG v. M/V OLYMPIA VOYAGER</u>, 446 F.3d 1377 (11th Cir. 2006), the Eleventh Circuit twice expressly noted that it was handling an "admiralty appeal" in which the foreclosing bank was proceeding against the vessel *in rem* and her owner *in personam* – **exactly as Plaintiffs have sought to do here**.  463 F.3d at 1235; 446 F.3d at 1379.  *See also*, <u>Donald D. Forsht Associates, Inc. v. Transamerica ICS, Inc.</u>, 821 F.2d 1556 (11th Cir. 1987) (enforcing mortgagee's *in rem* rights in admiralty proceeding).  In <u>Beluga Holding, Ltd. v. Commerce Capital Corp.</u>, 212 F.3d 1199, 1202 (11th Cir. 2000) the Eleventh Circuit found that the "Ship's Mortgage Act allows a mortgagee to bring a cause of action *in rem* for the foreclosure of a preferred ship's mortgage and gives federal district courts exclusive original jurisdiction to hear that cause of action", citing 46 U.S.C. § 31325(b)(1) and (c) in support.  As recently as last year, the Eleventh Circuit noted that the terms of a preferred ship mortgage are governed by the Ship Mortgage Act, pursuant to which "Congress enabled 'a

mortgagee to bring a cause of action *in rem* for the foreclosure of a preferred ship's mortgage' and endowed 'federal district courts exclusive original jurisdiction to hear that cause of action.'" AIG Centennial Ins. Co. v. O'Neill, 782 F.3d 1296, fn. 1 (11th Cir. 2015).

Preferred ship mortgages have also been enforced in Eleventh Circuit District Courts many times. *See*, e.g., M & T Credit Servs. LLC v. M/V Wine N Crime, 2015 WL 4069690, at *4 (M.D.Fla. 2015) ("Ship Mortgage Act . . . provides that a prior in time preferred mortgage is entitled to priority over all subsequently arising liens against the subject vessel, excepting only certain "preferred" maritime liens as set out in the statute. . ."); Old Florida Nat. Bank v. M/V ROMANCE, 2012 WL 933029, at *1 (M.D.Fla. 2012) ("The Ship Mortgage Act provided a means through which vessel mortgages could be given a preferred status and could be enforced in admiralty.") (citation omitted); Bogle v. M/Y Cajun Princess, 2010 WL 1949550, at *5 (S.D. Fla. 2010) ("Plaintiff's Preferred Ship Mortgage Constitutes a Valid Maritime Lien . . . Pursuant to Section 31325 of Title 46 of the United States Code, the plaintiff is entitled to enforce his valid maritime lien resulting from the preferred ship mortgage.").   Precedent from the former Fifth Circuit is also in accord. *See*, e.g., Merchant & Marine Bank v. The T.E. Welles, 289 F.2d 188, 193 (5th Cir. 1961) (Explaining that a mortgage that complies with the [Ship Mortgage] statute "ma[kes] it superior to every kind and character thereafter incurred save liens for crews' wages, general average, salvage and tort claims").

As a matter of federal common law, ship mortgages are routinely enforced in admiralty proceedings *in rem* in other Circuits as well. *See*, e.g., Scotiabank de Puerto Rico v. M/V ATUTI, 326 F. Supp. 2d 282 (D.P.R. 2004) (Action *in rem* and *in personam* to enforce a preferred ship mortgage in default); Bank of the W. v. Sailing Yacht Serendipity, 101 F. Supp. 3d 238, 247

(E.D.N.Y. 2015) (Under Ship Mortgage Act, mortgagee may enforce a preferred mortgage on a vessel via *in rem* action);  Bank of N. Carolina v. Motor Yacht SEA HUNT,  2014 WL 897156, at *3 (D.S.C. 2014) ("Congress enacted the Ship Mortgage Act [and] [i]t is well settled that a party in the event of a default may enforce its maritime lien by arresting a vessel and her appurtenances . . ."); Merchants Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie, 663 F.2d 1338, 1344-48 (5th Cir. 1981) (Upholding admiralty sale of seized vessels where mortgagee banks arrested vessels pursuant to Rule C); Columbus Bank & Trust Co. v. M/V Shooting Star, 2009 WL 3824413 (W.D.La. 2009) (Ordering *in rem* arrest and admiralty sale in enforcement of preferred ship mortgage); N. Bank Towing Corp. v. BARGE BAY MASTER, 1992 WL 54714, at *2 (E.D.La. 1992) (Finding "jurisdiction over parties and subject matter pursuant to Rules B and C" in case enforcing preferred ship mortgages); Ventura Packers, Inc. v. F/V JEANINE KATHLEEN, 424 F.3d 852, 858 (9th Cir. 2005) (Finding mortgagee has "right to proceed in rem directly against the vessel") (internal citation omitted); Washington Mut. Bank v. Bellatrix, 2 F.Supp. 2d 1458, 1459 (N.D.Cal. 1997) (upholding arrest where "verified complaint and supporting papers demonstrate that the Vessel was encumbered by a maritime lien").

## **POINT 3**

### **Congress Also Gave Mortgagees the Right to Proceed in Admiralty**

### ***In Personam* Under Rule B**

Defendants advance a similarly misplaced argument that the Mortgages do not support a Rule B attachment.  At the outset, as the Court found in the Memorandum and Order, it is clear that Plaintiffs have preferred mortgage liens over the Vessel.  As has been previously briefed, a preferred mortgage lien is enforceable by an action *in rem*.  The *in rem* remedy is in turn provided by F.R.Civ.P. Rule C, which expressly provides:

> Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, **proceed in personam against any person who may be liable**.

(Emphasis added).

Accordingly, Plaintiffs have the right under F.R.Civ.P. Rule C to proceed *in personam* against the guarantor and owner of the Vessel, Defendant NC.  This *in personam* remedy is found in F.R.Civ.P. Rule B, which is titled "In Personam Actions: Attachment and Garnishment".  Defendants cite no authority invalidating Rules B or C of the Federal Rules of Civil Procedure or providing that a mortgagee cannot sue on a preferred ship mortgage *in personam*.

## POINT 4

### Defendants Ignore Applicable Statutes and Case Law and Urge a New Rule

Defendants do not cite the controlling, on-point statutory law or interpretive precedent.[3]  Instead, they urge the Court to abandon the Ship Mortgage Act, Supreme Court precedent, and Eleventh Circuit precedent and adopt an entirely new rule.  Defendants posit that Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14 (2004) provides the test under which this Court should determine whether or not the Mortgages are maritime in nature.  First, Kirby is a cargo damage case that does not involve a ship mortgage or the Ship Mortgage Act in any way.  *See*, Kirby.  Second, Kirby does not purport to overrule any preferred mortgage lien cases.  Id.  Most importantly, Kirby does not purport to overrule The Thomas Barlum, in which the Supreme Court specifically addressed the issue of the nature of the obligation underlying a ship mortgage:

> An examination of the provisions of the [Ship Mortgage] Act leaves no room for doubt that the subject of mortgages of vessels, and, in particular, the priority which should be assigned to them in relation to other liens, was under the close

---

[3]   Defendants do cite James v. M/V EAGLE EXPRESS, 2012 WL 3068791, a case which involved an attempt to characterize non-maritime state law lien as a maritime lien.  There is no discussion of the Ship Mortgage Act, which as shown here and in Plaintiffs' Emergency Motion for Reconsideration creates a statutory preferred mortgage lien in favor of Plaintiffs enforceable *in rem* and *in personam*.

scrutiny of the Congress in determining its policy. But, among all the minute requirements of the Act, we find none as to the application of the proceeds of loans which such mortgages secure. **No condition is imposed as to the purposes for which the moneys are lent**. While the Congress took care to make distinct provision for cases where a mortgage covers property other than a vessel, no distinction is made as to the status of mortgages of vessels by reason of an intention to devote the borrowed moneys to uses other than maritime. . .

**We find no warrant for leaving it to be tested by extrinsic criteria, raising a host of questions as to the application of the proceeds of loans, in the solution of which the statute affords no aid**.

55 S.Ct. at 37-38 (emphasis added).

Despite the fact that <u>Kirby</u> is inapplicable by its terms, and in the face of controlling Supreme Court precedent, Defendants nevertheless argue that this Court should apply <u>Kirby</u> to determine whether or not the Mortgages, which enjoy a statutory maritime lien pursuant to an act of Congress, confer admiralty jurisdiction.  The proof that <u>Kirby</u> is inapplicable to the case at bar is provided by Defendants themselves, who are unable to point to a single ship mortgage case applying the <u>Kirby</u> factors urged upon this Court (if this Court were to do so, it would be the first).  As cited above, there are many reported ship mortgage foreclosure cases since <u>Kirby</u> was decided, **and none of them apply <u>Kirby</u>**.

Should the Court elect to fashion this new standard, Plaintiffs respectfully note that it would singlehandedly eviscerate every ship mortgage in the United States by requiring that lenders prove that any loans secured by ship mortgages were used for the sole purpose of supporting the vessel's trading.  This would be directly contrary to the purpose of the Ship Mortgage Act.  As the Supreme Court noted in <u>The Thomas Barlum</u>, "[t]here is no suggestion [in the Congressional record underlying the Ship Mortgage Act] of any requirement as to the use, intended or actual, of the moneys borrowed upon the faith of the mortgage security." *citing* H.R. No. 1102, 66th Cong., 2d Sess., p. 34; H.R. No. 1107, 66th Cong., 2d Sess., p. 31.  The Supreme

Court went on to find "[t]he Congress made simple, clear, and definite conditions as to all ship mortgages otherwise valid, and when these were performed the mortgages were to have the status prescribed." 55 S.Ct. at 40-41. The Thomas Barlum has not been overturned, and accordingly the very rule Defendants argue is applicable is in fact barred by Supreme Court precedent.

However, even if the Court did apply Kirby, it would still be unavailing to Defendants. Kirby simply requires that a party alleging admiralty jurisdiction demonstrate a nexus to maritime commerce. Defendants point to the underlying notes, but this is a red herring argument as the real issue would be whether or not the Mortgages are sufficiently maritime. The Mortgages grant a security interest in the Vessel, and pursuant to 46 U.S.C. § 31325(b) (*supra*) this security interest is cognizable in admiralty. Defendants have advanced no argument or theory as to why this statute is unenforceable.

There is simply no judicial support for Defendants' request to apply a maritime contracts analysis to the obligations underlying a preferred ship mortgage, and indeed this request is expressly barred by statute and Supreme Court precedent. Defendants' Cross-Motion makes this clear by failing to cite a single Court that has adopted this approach. In any event, the clear and compelling language of the Ship Mortgage Act and legions of subsequent cases unambiguously demonstrate that Plaintiffs have alleged a valid *prima facie* admiralty claim.

**POINT 5**

**Plaintiffs' Breach Allegations Arose Before the Original Complaint was Filed, But the Amended Complaint is Also Valid**

Defendants erroneously argue that the breaches of the Mortgages complained of in the Amended Complaint occurred after the Vessel was arrested. At the outset, it should be noted that

Defendants are essentially arguing that in a ship arrest or attachment case it is not possible to file an amended complaint.  This is clearly incorrect.[4]

In any event, the Original Complaint alleged the breach of the Ray Note (¶ 41), which allowed Plaintiff Ray to call on the Guarantee and Indemnity issued by NC, and to execute on the Mortgage security provided by NC.  In addition, the Original Complaint contained the following allegations:

- Upon information and belief, NC has allowed significant debt to accumulate against the Vessel other than obligations that could be characterized as liabilities incurred during the ordinary course of business. (Complaint ¶ 47).

- Upon information and belief, some of the debt that has been accumulated by the Vessel may prime the Mortgages, prejudicing Plaintiffs' security. (Complaint ¶ 48).

- Moreover, upon information and belief, some of these debts meet the definition of an "Encumbrance" in the Mortgages in that they are secured by maritime liens or other security interests. (Complaint ¶ 49).

- NC also undertook to provide Plaintiffs with copies of NC's audited financial statements. However, NewLead has since advised that there are no audited financial statements limited to only NC.   Accordingly, other than through NewLead's unaudited representations as to the financial performance of NC, Plaintiffs are unable to determine the Vessel's performance. (Complaint ¶ 50).

- Unfortunately, NC has not provided Plaintiffs with copies of the documents provided to NewLead by NC pursuant to NewLead's role as the sole shareholder of NC. (Complaint ¶ 47).

- In addition, upon information and belief, NC has not kept the vessel in a complete state of repair because NC lacks the cash flow to properly maintain the Vessel. (Complaint ¶ 53).

Defendants' statement that Plaintiffs have not alleged breaches of the Mortgages that arose prior to the arrest of the Vessel is thus entirely counterfactual and belied by the record.

---

[4]   See, e.g., <u>Nehring v. Steamship M/V Point Vail</u>, 901 F.2d 1044 (11th Cir. 1990) (Discussing the contents of an answer to an amended complaint); <u>Caribbean Yacht Works, Ltd. v. M/V "NEENAH Z"</u>, 410 F.Supp. 2d 1261 (S.D.Fla. 2005) (Upholding validity of a late filed complaint); <u>Navieros Inter-Americanos, S.A. v. M/V  Vasilia Exp.</u>, 120 F.3d 304 (1st Cir. 1997) (Discussing court ordered attachment pursuant to an amended complaint).

After the Vessel was arrested and attached Plaintiffs learned that certain allegations initially made on information and belief were now supported by evidence from the Vessel such that they be pled with greater certainty.   In addition, several additional breaches emerged that were properly alleged in the Amended Complaint, including: (1) NC's failure to release the Vessel from arrest after 14 days; (2) NC's failure to keep her insured; and (3) NC's failure to comply with applicable maritime safety conventions, all which are additional events of default under the Mortgages.   Amended Complaint ¶ 100-102.   These are not seriously denied by Defendants.

Notwithstanding the contents of the Original Complaint, Defendants aver to the Court that all of the breaches occurred post-arrest.   Cross Motion, p. 13.   This is an interesting position to take, as the crew was not paid its wages in February, March, or April.   First Declaration of Alan Swimmer dated May 25, 2016 [Dkt. 28-1] (the "Swimmer Dec.") ¶ 9-10.   The Vessel was arrested April 19, 2016.   Dkt. 12.   It is not clear what calendar Defendants use to argue that February and March come before April, but in the Gregorian calendar February and March come first.

In any event, Defendants admitted many of these breaches in the May 10, 2016 e-mail to the substitute custodian (the "May 10 Email").   Swimmer Dec., Ex. 4 [Dkt. 28-1, Ex. 4]. Defendants' replacement counsel takes the position that "nothing in the email suggests that Defendants failed to make payments it was required to make before May 10, 2016, nor does anything in the email suggest that the vessel was not in a seaworthy state on May 10, 2016." Cross-Motion, p. 18.   As a cursory review of the May 10 Email demonstrates, this statement is incorrect.

16

The May 10 Email asks the substitute custodian to pay $279,941.49, stating that "[f]ailure to immediately pay the above will result to the vessel losing her insurance cover, her telecommunications, having issues with the MLC [Maritime Labor Convention] etc.".  Swimmer Dec., Ex. 4 [Dkt. 28-1, Ex. 4].  The May 10 Email goes on to note that of this figure, NC owed "US$53,101.07 for non-Interiorient[5] crew wages" and an additional "US$178,546.10 for Interiorient crew wages, relevant SOA attached for your reference".  Id.  The May 10 Email included a document dated "31.05.2016" listing the Vessel's "MONTHLY CREW MANAGEMENT COST".  Id., at page 18 of 24.  The average monthly crew wages incurred by the Vessel are identified by Defendants as $43,637.00.  Id.

The May 10 Email asks the substitute custodian to pay a total of $231,647.17 in unpaid crew wages, and shows that these wages accrue at the rate of $43,637 per month.  Swimmer Dec., Ex. 4 [Dkt. 28-1, Ex. 4].  Defendants' counsels' protestations to the contrary, it is mathematically obvious that the May 10 Email admits that somewhere between three and four months of crew wages were unpaid at that time, though the Vessel had been under arrest for less than three weeks when the May 10 Email was sent by Defendants.

The May 10 Email also seeks an additional $28,956.83 for insurance costs, but as the Court-appointed substitute custodian learned, these costs were also for pre-arrest insurance obligations the Defendants failed to pay.  Swimmer Dec. ¶ 22.  This is also true for the unpaid communications costs NC has failed to pay.  Id.  Unsurprisingly, Defendants offer nothing more than the statements of counsel to support their argument that all of these costs were incurred by NC between April 19, 2016 and May 10, 2016.

---

[5]   Interiorient appears to be the non-party crewing agency that arranged the crew and was processing crew wages when they were paid by NC.  Notably, NC does not contest that it failed to pay crew wages in February, March and April 2016, instead arguing that these months occurred before April 19, 2016.

**POINT 5**

**Defendants' Argument That Plaintiff Must Prove Liberian Law is Misplaced**

Defendants argue that applicable case law requires that Plaintiffs' claims be dismissed because Plaintiffs did not allege the validity of the Mortgages under foreign law or provide evidence of applicable foreign law. This is wrong as a matter of fact and law.

Defendants represent to the Court that <u>Ancile Inv. Co. v. Archer Daniels Midland Co.</u>, 2012 WL 6098729 (S.D.N.Y. 2012) requires the dismissal of this matter because Plaintiffs have not proven a breach of contract under Liberian law. Cross-Motion p. 16-17. However, this case does not stand for proposition cited. First, <u>Ancile</u> is expressly limited to the Second Circuit: "**[i]n the Second Circuit**, a claim resting on the existence or application of foreign law will be dismissed if the party advancing the claim fails to provide evidence of the contents of the foreign law." 2012 WL 6098729 at *3 (emphasis added). Second, the <u>Ancile</u> Court cited F.R.Civ.P. Rule 44.1 in stating: "'[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.' . . . Although a court may 'enlist the parties in th[e] effort'" to determine foreign law, "'[u]ltimately, the responsibility for correctly identifying and applying foreign law rests with the court.'" 2012 WL 6098729 at *3 (S.D.N.Y. 2012) (<i>quoting</i> <u>Rationis Enters. Inc. of Pan. v. Hyundai Mipo Dockyard Co.</u>, 426 F.3d 580, 586 (2d Cir. 2005)). In other words, to the extent there are questions of foreign law, the Court may look to any evidence available. Finally, the <u>Ancile</u> Court, faced with a question of Brazilian law, did consider evidence from Brazilian legal experts, provided at docket entries 104 through 110, nearly three-and-a-half years after the original complaint was filed. Defendants' representation to the Court that the absence of a foreign law declaration at the pleadings stage of <u>Ancile</u> required dismissal in that case is thus inaccurate.

18

Instead, should a question of foreign law arise, the matter is controlled by F.R.Civ. P. Rule 44.1, "Determining Foreign Law" (which Defendants do not cite).  Pursuant to F.R.Civ.P. Rule 44.1:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Contrary to Defendant's representation that pleadings must include <u>proof</u> of foreign law, the applicable rule only requires <u>notice</u> in a pleading.  As detailed above, there is no question that Plaintiffs alleged Liberian-law mortgages.  In the Eleventh Circuit, the requirement that a party notify its opponent about an issue of foreign law is that such notice should generally be given by the pretrial conference.  <u>Mutual Service Ins. Co. v. Frit Industries, Inc.</u>, 358 F.3d 1312, 1321 (11th Cir. 2004) (citation omitted).  Moreover, the remedy Defendants urge (immediate dismissal) is also inconsistent with applicable authorities.  The Restatement (Second) of Conflict of Laws provides: "[W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law except when to do so would not meet the needs of the case or would not be in the interests of justice." Restatement (Second) of Conflict of Laws, § 136, cmt. h, at 378–79 (1971); see also <u>Cavic v. Grand Bahama Dev. Co., Ltd.</u>, 701 F.2d 879, 882 (11th Cir. 1983) (citing Restatement with approval).

As discussed above, Plaintiffs' burden here is established by U.S. maritime law, which requires only a showing that the preferred ship mortgage be "duly and validly executed" and "duly registered" under the foreign law.  <u>Mobile Marine Sales</u>, 776 F.2d at 89.  Plaintiffs have

easily surpassed that burden by producing the Mortgages, which Defendants have admitted. Plaintiffs have also produced the Vessel's COE showing registration of the Mortgages, along with evidence that the COE is an official document from the Republic of Liberia Maritime Authority. Against this evidence, Defendants offer nothing.

**POINT 6**

**Defendants' Request for Equitable Vacatur Is Meritless**

The paucity of Defendants' argument is laid bare by the meritless request that the Court vacate the attachment in this case because of alleged inequitable conduct.  Defendants cite McDermott Gulf Operating Co., Inc. v. Con-Dive, LLC, 371 Fed. Appx. 67 (11th Cir. 2010) in support.  However, Defendants make no effort to explain how that case applies to the facts at bar.  In McDermott, an attaching Plaintiff was subject to an order in Mexico requiring it to surrender certain equipment to the Mexican authorities.  Id. at *5.  Instead, Plaintiffs removed the equipment to U.S. waters and attached it.  Id.  The McDermott Court vacated the attachment, finding lack of jurisdiction over the defendant under Aqua Stoli.  Clearly, McDermott has no applicability to the facts at bar, and Defendants' allegations to the contrary are quickly exposed as little more than optimistic arguments.

Defendants offer the Court a bullet-point list of supposedly inequitable conduct, but a cursory examination of these points reveals them to be simple supposition or misdirection.  At the outset, there is no real doubt that the allegations of breach of the Ray Note and the Mortgages in the Original Complaint allege maritime claims – breach of preferred ship mortgages and, in the case of Plaintiff Ray, the underlying Note guaranteed by a preferred ship mortgage.  Original Complaint ¶¶ 39-55.  The Amended Complaint adds to these allegations a number of additional pre-arrest breaches that were discovered and one breach that occurred post-arrest.  As shown

above, there is nothing improper about filing an amended complaint in a ship mortgage foreclosure case and Defendants offer no authority to support this point.

Defendants also complain that the Amended Complaint was improperly filed 21 days after the Original Complaint without leave of Court.  F.R.Civ.P. Rule 15(a)(1), which Defendants partially reference, allows a party to amend a complaint 21 days after service or 21 days after a responsive pleading or a motion brought under F.R.Civ.P. Rule 12(b), (e) or (f).  The Original Complaint was served on April 19, 2016 and the Amended Complaint was served May 12, 2016. Dkt. 12 & 18.  There are no responsive pleadings or motions filed by Defendants pursuant to F.R.Civ.P. Rule 12 in the intervening period.  *See*, Dkt.  Accordingly, the Amended Complaint was timely filed pursuant to F.R.Civ.P. Rule 15(a)(1)(B).  Defendants cite nothing to the contrary.

Defendants' suppositions about the relevance of the post-arrest breaches are similarly misplaced.  As shown above, there is no statutory or case law that prevents parties in admiralty cases from filing amended pleadings, and in fact there are many example of ship mortgage foreclosure cases where this has occurred.  Defendants offer no support for their contention that post-arrest mortgage breaches are effectively a nullity. Similarly devoid of support is Defendants' contention that Plaintiffs have somehow impermissibly "blurred the line" between the underlying Notes, each Guarantee and Indemnity, and the Mortgages provided by NC as guarantor of the Notes (all of which are attached to the Original Complaint and the Amended Complaint).

Defendants' remaining allegations of inequitable conduct cannot be meaningfully answered because they are vague and conclusory, but the contents of the May 10 Email and the nature and amount of the authorized *in custodia legis* fees (which Defendants have not asked the Court to reconsider) speak for themselves.  As with Defendants' other arguments, no legal

authority is offered for the remedy sought (which is not even properly before the Court on a Motion to Reconsider) and the facts offer no support.

## CONCLUSION

Defendants' Cross-Motion exposes Defendants' arguments as meritless.  Instead of directing the Court to the clear and undisputed statutes and case law regarding the enforcement of preferred ship mortgages under U.S. law, Defendants urge the Court to adopt an entirely new standard of analysis.  That this approach is directly forbidden by the Ship Mortgage Act, Supreme Court precedent, and Eleventh Circuit precedent, to say nothing of innumerable rulings in other Districts and Circuits, seems to be no bar to Defendants.  Rather than conceding any of the applicable law, Defendants extend their fantastical arguments to advise the Court that parties in a ship foreclosure case have to prove foreign law outside the F.R.Civ.P. 44.1, and that plaintiffs in such cases cannot amend their pleadings under F.R.Civ.P. 15.  Defendants even try and convince the Court that the month of February comes after the month of April.

Defendants have succeeded only in wasting the time and resources of the Court and Plaintiffs, and Defendants' Cross-Motion should be dismissed in its entirety.  Defendants pray for all other relief to which this Honorable Court finds they are entitled.

RESPECTFULLY SUBMITTED 1ST DAY OF AUGUST, 2016.

**BOUHAN FALLIGANT LLP**

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia Bar No. 031605
LUCAS D. BRADLEY
Georgia Bar No. 672136
*Attorneys for Plaintiffs*

Bouhan Falligant, LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile

**<u>Of Counsel</u>**

Neil A. Quartaro (*Pro Hac Vice*) (NQ 9640)
Zachary Farley (*Pro Hac Vice*)
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**
**IN ADMIRALTY**

| | | |
|---|---|---|
| **RAY CAPITAL INC., OPPENHEIM CAPITAL LTD, CHEYENNE HOLDINGS LTD. AND LABROY SHIPTRADE LIMITED** | § § § § § | |
| **PLAINTIFFS** | § | **C.A. NO. 16-CV-093** |
| **V.** | § § | |
| **M/V NEWLEAD CASTELLANO, IMO NO. 9686338 HER ENGINES, TACKLE, EQUIPMENT, FURNITURE, APPURTENANCES, ETC.,** *IN REM*, **AND NEWLEAD CASTELLANO LTD.** | § § § § § § § | |
| **DEFENDANTS** | § | |

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

Respectfully submitted, this 1st day of August, 2016.

**BOUHAN FALLIGANT LLP**

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia Bar No. 031605
LUCAS D. BRADLEY
Georgia Bar No. 672136

*Attorneys for Plaintiffs*

Bouhan Falligant, LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile

**Of Counsel**

Neil A. Quartaro (*Pro Hac Vice*) (NQ 9640)
Zachary Farley (*Pro Hac Vice*)
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com