## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION
## IN ADMIRALTY

| | | |
|---|---|---|
| RAY CAPITAL INC., OPPENHEIM CAPITAL LTD, CHEYENNE HOLDINGS LTD. AND LABROY SHIPTRADE LIMITED | § § § § § | |
| PLAINTIFFS | § | C.A. NO. 16-CV-093 |
| V. | § § | |
| M/V NEWLEAD CASTELLANO, IMO NO. 9686338 HER ENGINES, TACKLE, EQUIPMENT, FURNITURE, APPURTENANCES, ETC., *IN REM*, AND NEWLEAD CASTELLANO LTD. | § § § § § § § § | |
| DEFENDANTS | § | |

## PLAINTIFFS' OPPOSITION TO MOTION TO CONSOLIDATE

Plaintiffs Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd. and Labroy Shiptrade Limited ("Plaintiffs"), through undersigned counsel, as and for their opposition to the DHL Project & Chartering Limited ("DHL") Motion to Consolidate (the "Motion to Consolidate") civil action 4:16-cv-123, captioned "DHL Project & Chartering Limited v. NewLead Holdings, et al." (the "DHL Action") with the above-captioned matter, respectfully plead as follows:

## INTRODUCTION[1]

The Motion to Consolidate should be denied because the DHL Action does not involve common questions of law or fact with the instant action.  Even if it did, consolidation would be

---

[1]   Plaintiffs use the same defined terms here as in the other pleadings before the Court.

futile because the DHL Complaint does not make out a valid *prima facie* maritime claim and is hence dismissible.   The Motion to Consolidate should also be denied because DHL's failure to comply with applicable local rules and the Federal Rules of Civil Procedure deprive it of standing to seek consolidation.   The failure to follow these rules has resulted in a procedural posture such that only denial of the Motion to Consolidate will prevent prejudice to Plaintiffs.

As the Court will appreciate, the arrest and sale of a vessel is a streamlined process that occurs relatively quickly due to the great expense involved.   In order to make this process efficient and fair, many Courts have promulgated local admiralty rules that require parties with claims to an arrested or attached asset to timely intervene in the initial action so that the arrest, foreclosure and distribution of sale proceeds can take place in a single, orderly, proceeding. These rules are designed to bar claimants from lying in wait until a ship is to be auctioned before suddenly appearing and making spurious claims to the proceeds of sale.   Unfortunately, DHL has done exactly what the rules are designed to prevent.

## **FACTS**

There are few operative facts needed to reveal the legal and procedural deficiencies of the Motion to Consolidate and the pleadings behind it.   Plaintiffs filed this action pursuant to F.R.Civ.P. Rules B and C on April 19, 2016 and attached and arrested M/V NEWLEAD CASTELLANO (the "Vessel") the same day.   Docket 1-12.   DHL filed a verified complaint on May 25, 2016 (the "DHL Complaint") alleging two causes of action: (1) breach of maritime contract against NewLead Shipping S.A. ("NewLead Shipping"), NewLead Bulkers S.A. ("NewLead Bulkers"), and Grand Venetico Inc. ("Grand Venetico"); and (2) "alter ego of

Defendants"[2] NewLead Holdings Ltd., NewLead Shipping, NewLead Bulkers, NewLead Castellano Ltd., Grand Venetico, and NewLead Venetico Ltd. (the "DHL Defendants").

The DHL Complaint alleges that DHL chartered a vessel, M/V NEWLEAD VENETICO, from Grand Venetico, which DHL then sub-chartered to a company called Zhejiang. DHL Complaint ¶ 15. The vessel suffered a delay and Zhejiang has commenced arbitration against DHL in Hong Kong. Id. ¶ 19. DHL alleges that all of the DHL Defendants are alter ego entities, and that it has the right to attach the assets of NewLead Castellano Ltd. to secure against the possibility that DHL **might** be found liable to Zhejiang. DHL Complaint ¶ 20. DHL does not allege that it has been found liable or has been required to post any security in the Zhejiang arbitration, which as will be seen below is fatal to the DHL Complaint. See DHL Complaint. In any event, the DHL Complaint sought an order of attachment under F.R.Civ.P. Rule B, but does not allege a lien over the Vessel. DHL Complaint ad damnum ¶ 1.

Defendants in the instant action moved to vacate the arrest and attachment of the Vessel on May 3, 2016, arguing inter alia that the Mortgages are not maritime. Docket 15. By order dated July 14, 2016, the Court granted the Motion to Vacate with respect to the Rule C arrest, but denied vacatur of the Rule B attachment. Docket 47. Plaintiffs moved for emergency reconsideration (Docket 49), and the Court set a briefing schedule in which the final briefs were due August 1, 2016. Docket 55. In the meantime, on July 28, 2016, DHL moved the Court to

---

[2] At the outset, Plaintiffs note that "alter ego" is not even a cognizable cause of action under federal law. Pursuant to Fed.R.Civ.P. 10(b) "[E]ach claim founded on a separate transaction or occurrence ... must be stated in a separate count." Accordingly, federal courts generally find that "[a]lter ego is not a separate cause of action for which relief can be granted; rather, ... alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity." Tara Prods., Inc. v. Hollywood Gadgets, Inc., 2010 WL 1531489, at *9 (S.D.Fla. 2010) (Dismissing alter ego count with prejudice and requiring plaintiff to re-plead allegations regarding alter ego in the body of the complaint); Oginsky v. Paragon Properties of Costa Rica LLC, 784 F.Supp.2d 1353 (S.D.Fl. 2011) (Dismissing with prejudice separately pled alter ego cause of action); Matter of Arbitration between Holborn Oil Trading Ltd. and Interpol Bermuda Ltd., 774 F.Supp. 840 (S.D.N.Y. 1991) (Alter-ego claim not separate cause of action). But this is the least of DHL's problems.

consolidate the DHL Action with the instant matter, arguing that it has a claim to the Vessel and wished to argue the maritime nature of the mortgages.  Docket 60.  By subsequent order dated August 5, 2015, the Court reinstated the Rule C arrest of the Vessel (the "Amended Order").  Docket 64.  The Amended Order disposes of the grounds for consolidation urged by DHL by overruling Defendants' argument that the Mortgages are non-maritime and establishes the order of priority to the proceeds of sale of the Vessel by recognizing a lien under the Ship Mortgage Act.

DHL filed the DHL Complaint on May 25, 2016, but did not promptly serve any of the Defendants in the DHL Action.  _See_ DHL Action Docket.  Instead, DHL purports to have served NewLead Castellano via email to the substitute custodian late in the afternoon on Friday, August 5, 2016.  First Declaration of Neil A. Quartaro, dated August 15, 2016 ("Quartaro Dec.") ¶ 10, Ex. 1.  As the Court is aware, the Vessel was auctioned Monday, August 8, 2016 at 10:00 A.M., E.S.T. Docket 66.

## CONSOLIDATION STANDARD

DHL does not meet the standard for consolidation because there is no common question of law or fact, consolidation would be futile, and DHL's disregard of the applicable local and Federal rules deprive it of standing and have prejudiced Plaintiffs.  F.R.Civ.P. Rule 42 provides:

> (a) Consolidation. If actions before the court involve a common question of law or fact, the court may:
>
> > (1) join for hearing or trial any or all matters at issue in the actions;
> >
> > (2) consolidate the actions; or
> >
> > (3) issue any other orders to avoid unnecessary cost or delay.
>
> (b) Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate

4

> issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

As Plaintiffs demonstrate below, the Motion to Consolidate was filed before the Amended Order issued on August 4, 2016, and so there is no longer any argument that DHL has a claim to the proceeds of sale.  Even if there were such issues, the DHL Complaint does not even allege a *prima facie* maritime claim and so consolidation would be futile.  Finally, DHL has ignored the applicable Federal Rules of Civil Procedure and local rules at every turn so that it could insert itself in the instant action mere hours before the Vessel was sold at auction.  This is a transparent attempt to "parachute" into this case at the last minute to avoid paying its share of the *in custodia legis* expenses and to delay the final resolution of this matter holding up the distribution of the proceeds of sale of the Vessel to Plaintiffs.  Accordingly, Plaintiffs respectfully submit that DHL does not meet the consolidation standard and respectfully request that the Court deny DHL's Motion.

### 1.  DHL's Claims Do Not Involve Common Questions of Law or Fact

DHL's claims do not involve common questions of law or fact because the Motion to Consolidate only identifies issues that were resolved by the Amended Order and DHL makes no other argument as to why consolidation is warranted.  The Motion to Consolidate alleges that a single common issue supports consolidation: ". . . once the Vessel is sold, the sale proceeds will stand as a substitute *res* for the Vessel, against which DHL and the Ray Capital Plaintiffs both have claims".  Docket 60, p. 4.  Consolidation, DHL claims, will allow it to "participate in motion practice as to the non-maritime nature of the Ray Capital Plaintiffs' claims, and for this Court to make a determination as to the priority of claims against the Vessel sale proceeds."  Id.

The Amended Order finds that Plaintiffs hold *prima facie* valid preferred mortgage liens over the Vessel cognizable *in rem*.  Docket 64, pp. 3-4.  DHL alleges only an *in personam* claim against NewLead Castellano Ltd., and not a claim against the Vessel herself.  DHL Action Docket ¶ 2.  Accordingly, Plaintiffs have made out preferred mortgage lien claims that prime any possible breach of contract claim by DHL.[3]  Docket 64*, p. 4.  DHL's claim that it wishes to participate in motion practice related to the maritime nature of Plaintiffs' claims has also been resolved by the Amended Order, which relegates an identical argument made by Defendants to a footnote.[4]  Id., p. 3.  The Motion to Consolidate has thus been eclipsed by a subsequent ruling of the Court and the grounds urged for consolidation are no longer relevant.

Even if the Amended Order had not mooted the Motion to Consolidate, the nature of the claims alleged by DHL and Plaintiffs are entirely different.  DHL seeks security for a contingent indemnity claim pursuant to Rule B (which, as argued below, is not even a maritime claim).  DHL Complaint ¶ 20 and fn. 2.  DHL seeks this security from the DHL Defendants, of which only NewLead Castellano Ltd. is present in this district via the presence of its asset, the Vessel.  Id. ¶ 8 & 11.  DHL's attachment therefore rests on ultimately proving a chain of alter ego relationships among six defendants, only one of whom is present here.  Id.  ¶ 27-43.  DHL does not allege a lien or other security interest in the Vessel and hence does not name her as a defendant *in rem*.  *See* Id.

Plaintiffs' priority claims to the proceeds of sale of the Vessel are definitively established by the Ship Mortgage Act and so the issue of priority gives DHL no succor.  Plaintiffs have

---

[3]   Notably, the alleged breach of charter occurred in early 2012 (DHL Complaint ¶ 16) while the Vessel was built in 2013.  It is difficult to see how DHL could have a breach of contract claim against the owner of a ship that did not exist when the alleged breach of contract claim accrued.

[4]   DHL missed the boat on this issue by filing an original complaint instead of intervening under Local Admiralty Rule 9 (*See* § 3, *infra*).  If DHL had intervened, it would have been present in this case when that issue was briefed.

already established a *prima facie* case to enforce their preferred mortgage liens *in rem* against the Vessel and have moved for summary judgment on this issue.  Docket 43.  The relative priority of claimants to the proceeds of the foreclosure sale of a vessel is (somewhat confusingly) established by 46 U.S.C. § 31326(b):

> (1)     the preferred mortgage lien, including a preferred mortgage lien on a foreign vessel whose mortgage has been guaranteed under chapter 537 of this title, has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens); and
>
> (2)     for a foreign vessel whose mortgage has not been guaranteed under chapter 537 of this title, the preferred mortgage lien is subordinate to a maritime lien for necessaries provided in the United States.

Accordingly, Plaintiffs' preferred mortgage liens have priority over all claims except for *in custodia legis* expenses, Court costs, preferred maritime liens and necessaries.  The legal term of art "preferred maritime liens" is defined at 46 U.S.C. 31301(5), which provides:

> "preferred maritime lien" means a maritime lien on a vessel--
>
> > (A) arising before a preferred mortgage was filed under section 31321 of this title;
> >
> > (B) for damage arising out of maritime tort;
> >
> > (C) for wages of a stevedore when employed directly by a person listed in section 31341 of this title;
> >
> > (D) for wages of the crew of the vessel;
> >
> > (E) for general average; or
> >
> > (F) for salvage, including contract salvage;

Distilling the Code definitions and ranking them as the Code requires leads to the commonly-accepted ranking of maritime lien priorities:

1. Expenses of justice during custodia legis—expenses arising from the care and operation of the ship while it is in the custody of the Court through the U.S. Marshal (not regarded as a lien, but given priority).

2. Seamen's liens (including those of the Master) for wages, maintenance and cure; and wages of longshoremen directly employed by the vessel.

3. Salvage and general average liens.

4. Tort liens, including personal injuries.

5. Preferred ship mortgage liens (U.S. flag vessels).

6. Liens for necessaries under 46 U.S.C. §§ 31301(4), 31341 and 31342

7. Preferred mortgage lien on foreign vessel.

THOMAS J. SCHOENBAUM, 1 ADMIRALTY & MAR. LAW § 9-6 (5th ed.) (Quartaro Dec. Ex. 2). Notably, a claim for breach of charter appears nowhere in the statutory lien priority scheme. Nor should it, as a breach of maritime contract claim does not give rise to a lien and DHL does not allege otherwise. It is therefore clear that DHL does not have or allege a claim that is capable of priming the Mortgages in the instant case. While it may be that there would have been a question as to priority if vacatur of Plaintiffs' Rule C arrest been upheld, the Amended Order dispelled any illusion DHL might have harbored about the relative priority of their claims. Since there is no common question of law or fact in the DHL Action and this case, there is no reason to consolidate these actions.

## 2. **Consolidation is Futile Because DHL Does Not Allege a Maritime Claim**

Even if the Court is inclined to consolidate the DHL Action with this case, it would be futile because the DHL Complaint does not allege a *prima facie* maritime claim. The DHL Complaint was filed to secure DHL's "contingent liability claim against Newlead Shipping, Newlead Bulkers and Grand Venetico Inc. for breach of charter party". DHL Complaint ¶ 21. However, Rule B is not available to obtain security for prospective indemnity claims: an

8

indemnity claim is not ripe until the party claiming indemnity either is ordered to pay another entity or actually pays damages. Armstrong v. Alabama Power Co., 667 F.2d 1385, 1388-89 (11th Cir. 1982) (Upholding dismissal of contingent maritime indemnity claim as premature) citing A/S Ludwig Mowinckles Rederi v. Tidewater Construction Corp., 559 F.2d 928 (4th Cir. 1977) (Dismissing indemnity claim where "neither a determination of liability nor a settlement in any of the" underlying matters had been made); See also CPM Corp. Ltd. v. Prominent Shipping PTE Ltd., 2009 WL 3787380 (S.D.N.Y. 2009) (Vacating Rule B attachment securing unripe contingent claim for failure to state *prima facie* maritime claim); Beluga Chartering GMBH v. Korea Logistics Sys. Inc., 589 F. Supp.2d 325, 330 (S.D.N.Y. 1998) (Dismissing Rule B claim for failure to allege *prima facie* maritime claim where Plaintiff had made no payments or initiated action against defendant); Sanko Steamship Co., Ltd. v. China Nat'l Chartering Corp., 536 F. Supp.2d 362, 366-67 (S.D.N.Y. 2008) (Noting "precedent in both this District and elsewhere that an indemnity claim is not ripe until the underlying claim has been paid"); J.K. Int'l, Pty., Ltd. v. Aqriko S.A.S., 2007 WL 485435, at *4-5 (S.D.N.Y. 2007) (Vacating attachment based on charterers' unripe indemnity claims against cargo receivers in absence of evidence that the ship owner intended to press a demurrage claim against charterer); Bottiglieri Di Na Vigaizione Spa v. Tradeline LLC, 472 F. Supp.2d 588, 591 (S.D.N.Y. 2007) (Vacating attachment based on unripe indemnity claims that included potential liability, fees, and costs of ongoing arbitrations); Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA, 2005 WL 2218025, at * 2 (S.D.N.Y. 2005) (Holding that indemnity claim based on costs and fees associated with an arbitration that had not yet been initiated was too speculative to support attachment).[5]

---

[5]   For a time, Rule B was used to attach electronic funds transfers (i.e., wires) coming through banks in New York. See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 278 (2d Cir. 2002). While this remedy is no longer available following Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009), The

The DHL Complaint cites <u>Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.</u>, 485 F.Supp.2d 399 (S.D.N.Y. 2007) for the proposition that "[w]here the underlying liability proceeding has been commenced, court [sic] have found that a contingent indemnity claim is ripe for adjudication, and security may be obtained for that claim pursuant to Supplemental Admiralty Rule B."  DHL Action Docket 1, fn 2.  However, <u>Navalmar</u> is the exception, not the rule.  In <u>Navalmar</u>, the party seeking the attachment based on an indemnity claim had been required to file a million dollar bank guarantee in the underlying proceeding. <u>Id.</u> 404.  It was on this basis that the Court in that case expressly distinguished the facts from the general rule and upheld the attachment.  <u>Id.</u>

DHL does not allege that it has initiated any proceeding against any of the DHL Defendants.  DHL Action Docket 1, ¶ 20.  Nor does DHL allege that it has been found liable or required to post security in the underlying arbitration with Zhejiang.  <u>*See*</u> <u>Id.</u>  Accordingly, <u>Navalmar</u> provides no guidance and DHL's claims are instead governed by the well-established precedent that requires the Rule B attachment be vacated for failure to allege a *prima facie* maritime claim because DHL alleges no underlying payments or action against any of the DHL Defendants.  Since DHL has failed to allege a *prima facie* maritime claim, there is nothing to consolidate with the instant action.[6]

---

Southern District of New York has likely decided more Rule B attachment cases than any other judicial district and is a source of persuasive authority in this area.

[6]    Should it be necessary, Plaintiffs could simply appear in the DHL Action and require DHL to show cause why the attachment in that case should not be vacated.  The Attachment Order obtained by DHL provides:

> [T]hat any person claiming an interest in the property attached or garnished pursuant thereto may, upon a showing of any improper practice or a manifest want of equity on the part of Plaintiff, be entitled to an order requiring Plaintiff to show cause forthwith why the attachment should not be vacated.

3.   **DHL Lacks Standing Because It Has Ignored the Local Rules**

The Court can also safely deny the Motion to Consolidate because DHL has ignored the applicable local rules and Federal Rules of Civil Procedure, such that DHL has no standing to demand consolidation.   Failure to follow the local rules (let alone the Federal Rules of Civil Procedure) is grounds to dismiss the DHL Complaint, though Plaintiffs here seek only denial of the Motion to Consolidate.   Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985); See also Gyasi v. M/V ANDRE, 2004 WL 906761 *S.D.Fl. 2004) (Dismissing intervenor's complaint for failure to comply with local admiralty rules and F.R.Civ.P.).   Specifically, DHL has failed to promptly serve its papers, did not post the required stipulation for costs, ignored the local rule requirement that it intervene instead of filing an original complaint, failed to post additional security with the Marshal, and purported to effect service on the Vessel in direct contravention of the express requirements of Rule B.   The result of these procedural irregularities is that DHL has failed to obtain jurisdiction over any of the DHL Defendants by valid service.   See DHL Action Docket.   Accordingly, DHL lacks standing to seek consolidation because DHL still has not effectively served the DHL Complaint or attached any assets in the DHL Action.

(i)   *DHL Failed to Promptly Serve the DHL Complaint and Attachments*

Pursuant to F.R.Civ.P. 83(a)(1), the District Court for the Southern District of Georgia "may adopt and amend rules governing its practice".   The Court has done so, adopting local rules for civil actions (the "Local Civil Rules") and for admiralty actions (the "Local Admiralty Rules").   The Local Civil Rules provide:

---

Plaintiffs have obviously claimed an interest in the property attached, the Vessel, having arrested it over three and a half months before DHL purports to have done so.   As the papers at hand demonstrate, DHL's claims are subject to vacatur on several grounds.

> **LR 4.3 Service of Process**. It shall be the responsibility of the plaintiff or plaintiff's attorney to effectuate prompt service of the summons and a copy of the complaint. . . .

DHL did not promptly serve the DHL Complaint or Rule B process.  DHL obtained a writ of attachment on May 25, 2016, but did not purport to serve it or the DHL Complaint until more than ten (10) weeks had passed.  DHL Action Docket; Quartaro Dec. ¶ 10, Ex. 1.  During this entire time, the Vessel was in the custody of the Court in this district and was easily accessible as she lay off Tybee Island.  The reason DHL did not advance its alleged claim during this time is obvious:  DHL wanted to avoid paying its share of the approximately $800,000 of *in custodia legis* expenses incurred by Plaintiffs in maintaining the Vessel while she was under arrest.  However, the decision not to effect prompt service, improper as it was, pales in comparison to DHL's flouting of the Local Admiralty Rules.

### (ii) *DHL Did Not Stipulate to Costs*

When a party seeks a remedy listed in F.R.Civ.P. A, the Local Admiralty Rules require that no pleading seeking such remedy shall be filed without a stipulation for costs:

> **LAdR 5. Costs and Security, Stipulations for**.

>> (a) In actions where there is sought, in whole or in part, a remedy listed in Supplemental Rule A of the Supplemental Rules For Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure, no initial pleading seeking such remedy, or claim pursuant to Supplemental Rule F(5), shall be filed unless the party offering the same shall first file a stipulation for costs in the sum of $250.00.

F.R.Civ.P. Rule A states in relevant part:

> (1) These Supplemental Rules apply to:

>> (A) the procedure in admiralty and maritime claims within the meaning of Rule 9(h) with respect to the following remedies:

>>> (i) maritime attachment and garnishment. . .

The DHL Complaint sought the attachment of assets pursuant to Rule B, which is titled "In Personam Actions: Attachment and Garnishment". DHL Action Docket 1, ¶ 2. However, DHL did not post a stipulation for costs. *See* DHL Action Docket. Accordingly, DHL has filed a pleading seeking a remedy pursuant to Rule A, but has not stipulated to costs. The very filing of the DHL Complaint was thus improper and cannot form the basis of a consolidated action.

### (iii) *DHL Ignored the Local Admiralty Rule Governing Intervention*

Even if DHL had complied with the foregoing Local Civil and Admiralty Rules, DHL apparently made a strategic decision to ignore the Local Admiralty Rules concerning intervening claims in admiralty cases. The Local Admiralty Rules[7] lay out the specific requirements for a party wishing to allege a claim in an existing seizure, arrest or attachment:

**LAdR 9. Intervention**.

> (a) Whenever a vessel or other property is seized, attached or arrested in a proceeding and said property is in the hands of the Marshal, **anyone having a claim against the vessel or property is required to present the same by intervening complaint filed in the case and not by way of original complaint**, unless otherwise ordered by the Court. Upon the filing of each such intervening complaint, the Clerk (or, counsel who files same) shall forthwith deliver a conformed copy thereof to the Marshal who shall thereupon post such copy on the vessel property, but the Marshal need not re-arrest or re-attach the vessel or property. Counsel for intervening parties are required to ascertain the names and addresses of other counsel of record in the proceedings at the time of the filing of an intervening complaint and forthwith to serve a copy of the intervening complaint, including any exhibits attached to the original thereof, upon such other counsel and shall thereafter file a certificate with the Clerk setting forth the names and addresses of counsel served, method of service, and the date thereof.

---

[7] Every District Court in the Eleventh Circuit that touches the sea has adopted a local admiralty rule requiring third-party post-arrest claims to be brought by intervening complaint and not by way of original complaint. *See* Northern District of Florida Local Admiralty Rule E(2)(a); Middle District of Florida Local Admiralty Rule 7.05(b)(1); Southern District of Florida Local Admiralty Rule E(2)(a); and Southern District of Alabama Local Admiralty Rule 104 Rule E(k). The Southern District of New York has the same rule at Local Admiralty Rule E.2.

(emphasis added).

Plaintiffs filed the instant action and arrested the Vessel on April 19, 2016.  Docket 12.  DHL filed an original complaint on May 25, 2016.  DHL Action Docket 1.  Since DHL did not comply with Local Admiralty Rule 9, the DHL Complaint was not delivered to the Marshal.  _See_ DHL Action Docket.  This allowed DHL to file papers (improperly) months in advance, but to delay service on the Vessel until a few business hours before the Court-ordered auction.[8]  Id.  Ignoring Local Admiralty Rule 9 also meant that DHL did not serve the DHL Complaint on counsel of record, as required by the rule.  Id.

DHL's failure to intervene, or even timely serve its improper original complaint, until late in the afternoon on the business day before the auction means that DHL also avoided the Local Admiralty Rule requirement that no party may intervene except on order of the Court if such intervention is sought within the fifteen days prior to the auction date.  Local Admiralty Rule 9(b), partially cited above, goes on to provide:

> . . . no party is permitted to intervene in any such proceedings without first obtaining leave of Court if intervention is sought within fifteen days prior to the date for which a sale of the vessel or property has been set by the Court.
>
> If intervention is sought within said fifteen-day period by any party, that party is required to file a motion or petition to intervene and to serve copies thereof along with any exhibits or documents relied upon in support of such intervenors' claims and request for intervention, upon all counsel of record. In such circumstances the Court may allow intervention upon such terms and conditions which is considered equitable to the interests of all parties involved.

Had DHL intervened during the fifteen-day period preceding the auction, it would have been required to first obtain a Court order, and, if it allowed such intervention, the Court might have

---

[8]   DHL has not yet filed an affidavit of service, but counsel was copied on a reply to the email purporting to make such service on NewLead Castellano Ltd. by having the substitute custodian serve the Vessel's captain.  Quartaro Dec. ¶ 10, Ex.1.

crafted an equitable process.  Instead, DHL simply sat on its improperly-filed original complaint and purportedly served it within the fifteen-day period before the auction (however, even this service was ineffective, as Plaintiffs argue below).  Put another way, DHL ignored every requirement of Local Admiralty Rule 9 requiring it to intervene instead of file an original complaint, but now seeks to be treated as if it followed this rule to the letter.

### (iv) DHL Did Not Provide Additional Security or Pay the Substitute Custodian

In addition to the foregoing, DHL failed to provide the additional security required by the Marshal.  Local Admiralty Rule 9 further provides:

> (c) Following an initial attachment, arrest, or seizure, all parties except seamen, intervening in a proceeding alleging a claim against the property are **required** to deposit funds for the safekeeping of the property with the Marshal upon the filing of such intervening claim or complaint. Unless the Court otherwise orders for good cause shown the deposit is to be in an amount determined by the Marshal.

(Emphasis added)

The DHL Action Docket is devoid of any evidence that DHL provided the required funds to the Marshal.  _See_ DHL Action Docket.  This is in addition to DHL's failure to stipulate to costs under Local Admiralty Rule 5.

In fact, DHL has also ignored the substitute custodian's request that DHL pay its share of anticipated custody costs going forward or to execute a custody agreement agreeing to pay these costs. By email dated Friday, August 5, and time stamped at 4:27 PM, National Maritime, the Court-appointed substitute custodian, copied Plaintiffs' counsel on an email to counsel for DHL. Quartaro Dec. ¶ 5, Ex. 1. This email advises that National Maritime expects that the Vessel will incur approximately $214,000 in additional custody costs through the anticipated date of her disposition.  Id.  The email seeks $107,000 from DHL as payment of half these anticipated

custody costs.  Id.   The substitute custodian also sought the execution of a "Commercial Vessel Custody Agreement" pursuant to which DHL would agree to be responsible for its share of *in custodia legis* costs.  Quartaro Dec. ¶ 6, Ex. 1.

Despite the passage of 10 days since the August 5, 2016 Email was sent, DHL has not remitted any payment for its share of the custody costs of the Vessel, nor has it executed the "Commercial Vessel Custody Agreement".   Quartaro Dec. ¶¶ 7-8.   As the Court is aware, Plaintiffs herein have executed a "Commercial Vessel Custody Agreement" and have advanced approximately $800,000 of *in custodia legis* costs to the substitute custodian.   Id. ¶ 9.   This includes Plaintiffs' remittance of its half of the anticipated $214,000 additional expense, which funds were sent Friday, August 5.   Id.   DHL's failure to contribute anything to the cost of the Vessel, or even to execute the substitute custodian's custody agreement, leaves Plaintiffs entirely responsible for this burden, but failing to comply with the Local Admiralty Rule should militate in favor of denying the Motion to Consolidate.

### (v) DHL's Service on the Vessel Did Not Comply With Rule B

DHL also ignored the express requirement of Rule B that the Marshal serve the attachment papers by preparing an order of attachment that purports to allow DHL to have the substitute custodian serve the Vessel in lieu of the Marshal.  This is in direct contravention of Rule B, which states:

> (1) When Available; Complaint, Affidavit, Judicial Authorization, and Process. In an in personam action:
>
> > (d)(i) If the property is a vessel or tangible property on board a vessel, the summons, process, and any supplemental process **must** be delivered to the marshal for service.

(emphasis added).

The DHL Complaint sought the attachment of the Vessel.  DHL Action Docket 1, ¶ 73.  The DHL Complaint has not been served by the Marshal.  *See* DHL Action Docket.   Because the language of Rule B is mandatory, not permissive, the order of attachment obtained by DHL (which DHL prepared) is ineffective to the extent it purports to allow service by someone other than the Marshal. Accordingly, the DHL Complaint has not been properly served on any of the DHL Defendants.

In light of the express language of Rule B, the Vessel has not been properly served and hence DHL has not brought the Vessel's owner within the jurisdiction of the Court in the DHL Action.  This is fatal to the Motion to Consolidate because DHL does not have an action to consolidate, merely an unserved original complaint (which, pursuant to Local Admiralty Rule 9 is not even servable because it is not an intervening complaint).

DHL's deliberate avoidance of the Local Civil Rules, Local Admiralty Rules, especially Rule 9, and Federal Rules of Civil Procedure threatens numerous procedural and substantive problems, all of which were entirely avoidable if DHL had only followed the applicable Local Admiralty Rules.  Plaintiffs respectfully aver that granting the Motion to Consolidate would effectively render the Local Civil Rules, Local Admiralty Rules and service requirements of Rule B void and DHL's effort to ignore these requirements should be rejected.

### 4.   <u>DHL's Procedural Machinations Prejudice Plaintiffs</u>

Plaintiffs respectfully submit that DHL's various procedural machinations have prejudiced Plaintiffs such that the Court should exercise its discretion to deny the Motion to Consolidate. The language of F.R.Civ.P. Rule 42 is permissive in that a District Court considering

consolidation "may" order such a remedy.   In exercising its discretion, the Court should determine:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985) (citation omitted).

The risks of prejudice and confusion are balanced against the interest of judicial convenience. _See_ Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990) (Observing that "a court should balance the interest of judicial convenience against any delay, confusion, or prejudice that might result from such consolidation"); Bernardi v. City of Scranton, 101 F.R.D. 411, 413 (M.D.Pa. 1983) ("In deciding whether to order consolidation, the trial court must balance the probable savings of time and effort against the likelihood that a party might be prejudiced, inconvenienced or put to extra expense.").   Whether the parties in the two cases are the same and whether the cases are at the same stage of trial preparation also are relevant inquiries to the determination of consolidation.   _See_ In re Enron Corp. Sec., Derivative & "ERISA" Litig., 2007 WL 446051, *1 (S.D.Tex. 2007).

The case at bar has been proceeding according to the Court's schedule for nearly four months.   Plaintiffs and Defendants have held the Rule 26(f) conference, made initial disclosures, briefed the Court several times, and are in the midst of discovery related to Defendants' opposition to Plaintiff's Motion for Summary Judgment.   Consolidating the DHL Action with the instant case will delay the matter at bar because DHL has not participated in any of the briefing or discovery to date (and indeed seeks to resurrect arguments that have already been rejected).   It will also bring in a host of additional parties because only one defendant is common to the two

actions, but the DHL Action names six (6) defendants.   Consolidation will also delay the resolution of the preferred mortgage liens, and will greatly inconvenience Plaintiffs by forcing them to get involved in DHL's breach of charter claim on an unrelated vessel owned by a non-party.   DHL's claims of an alter ego relationship between various NewLead entities is not at issue in the instant matter, but consolidation will force Plaintiffs to litigate this aspect of DHL's claims as well.   The cases are also not at the same stage of preparation, given the discovery, briefing and schedule present in the matter at bar compared with the DHL Action, which has only just been "served".

DHL has only itself to blame for this situation.   Had DHL properly moved to intervene back in May, instead of proceeding via original complaint, the case schedule and briefing might have accommodated them.[9]   Instead, DHL's last minute attempt at service of an original complaint threatens to derail the case at bar.

## <u>CONCLUSION</u>

The Motion to Consolidate should be denied because there are no common issues of law or fact in these two cases following the Amended Order.   Even if there were, the DHL Complaint fails to allege a *prima facie* maritime claim that would support an attachment.   Moreover, DHL has failed to comply with the Local Rules and Local Admiralty Rules, including those that explicitly prohibit the actions DHL has taken, to the prejudice of Plaintiffs.   Since DHL does not

---

[9]   With no hint of irony, DHL argues that consolidation would "prevent prejudice to DHL".  Motion to Consolidate p. 4.  However, DHL does not allege a lien over the Vessel and hence does not allege a claim that can prime Plaintiffs' Mortgages.  In the unlikely event that there is a surplus remaining after distribution of the proceeds of sale from the Vessel, DHL can then pursue its Rule B claim against such fund, which is no less a right to the proceeds of sale than DHL has now.  There is thus no prejudice to DHL.

allege a claim capable of priming Plaintiffs' Mortgages, DHL will suffer no prejudice from denial of the Motion to Consolidate.

Dated: Savannah, Georgia

      August 15, 2016

                                 **BOUHAN FALLIGANT LLP**

                                 <u>/s/ Todd M. Baiad</u>
                                 TODD M. BAIAD
                                 Georgia Bar No. 031605
                                 LUCAS D. BRADLEY
                                 Georgia Bar No. 672136

                                 *Attorneys for Plaintiffs*

Bouhan Falligant, LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile

**<u>Of Counsel</u>**
(*Pro Hac Vice*)
Neil A. Quartaro (NQ 9640)
Zachary Farley (Pro Hac Vice)
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY**

| | | |
|---|---|---|
| **RAY CAPITAL INC., OPPENHEIM CAPITAL LTD, CHEYENNE HOLDINGS LTD. AND LABROY SHIPTRADE LIMITED** | § § § § § | |
| **PLAINTIFFS** | § | **C.A. NO. 16-CV-093** |
| **V.** | § § | |
| **M/V NEWLEAD CASTELLANO, IMO NO. 9686338 HER ENGINES, TACKLE, EQUIPMENT, FURNITURE, APPURTENANCES, ETC.,** *IN REM*, **AND NEWLEAD CASTELLANO LTD.** | § § § § § § § | |
| **DEFENDANTS** | § § | |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

Respectfully submitted, this 15th day of August, 2016.

BOUHAN FALLIGANT LLP

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia Bar No. 031605
LUCAS D. BRADLEY
Georgia Bar No. 672136

*Attorneys for Plaintiffs*

Bouhan Falligant, LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile

**Of Counsel**
(*Pro Hac Vice*)
Neil A. Quartaro (NQ 9640)
Zachary Farley (Pro Hac Vice)
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com