IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

| | | |
|---|---|---|
| RAY CAPITAL INC., OPPENHEIM CAPITAL LTD, CHEYENNE HOLDINGS LTD. AND LABROY SHIPTRADE LIMITED | § § § § § | |
| PLAINTIFFS | § § | C.A. NO. 16-CV-093 |
| V. | § § | |
| M/V NEWLEAD CASTELLANO, IMO NO. 9686338 HER ENGINES, TACKLE, EQUIPMENT, FURNITURE, APPURTENANCES, ETC., *IN REM*, AND NEWLEAD CASTELLANO LTD. | § § § § § § § § | |
| DEFENDANTS | § § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO NON-PARTY DHL PROJECT & CHARTERING LIMITED'S MOTION TO INTERVENE**

Plaintiffs Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd. and Labroy Shiptrade Limited ("Plaintiffs"), through undersigned counsel, as and for their opposition to the Motion to Intervene (the "Motion to Intervene") filed by DHL Project & Chartering Limited ("DHL"), respectfully plead as follows:

**INTRODUCTION[1]**

Having failed to enter the matter at bar through the front door, DHL now tries to join this case using the back door. However creative this approach, the Motion to Intervene should be denied simply because DHL ignored the basic requirements of Fed.R.Civ.P. 24(c) and failed to file a pleading with the Motion to Intervene that sets out DHL's claim. Even if this is overlooked and

---

[1] Plaintiffs use the same defined terms here as in the other pleadings before the Court.

DHL's papers filed in the related action are considered, the complaint in that matter only alleges an economic interest insufficient to support intervention.  Tellingly, DHL's complaint does not even allege a meritorious *prima facie* maritime claim.  DHL's problems do not end there, because even if the allegations are considered, there is no doubt that Plaintiffs' lien claims come first and will exhaust the funds on hand.  But even were this not the case, DHL's tardy attempt at intervention limits its claims to the "remnants" remaining after previously-filed claimants are paid pursuant to the Local Admiralty Rules and previous Court Order.

## FACTS

Plaintiffs filed this action pursuant to F.R.Civ.P. Rules B and C on April 19, 2016 and attached and arrested M/V NEWLEAD CASTELLANO (the "Vessel") the same day.  Docket 1-12.  DHL filed a verified complaint on May 25, 2016 (the "DHL Complaint") under docket 4:16-cv-00123 (the "DHL Docket") alleging (1) breach of maritime contract; and (2) an alter ego relationship between NewLead Holdings Ltd., NewLead Shipping S.A., NewLead Bulkers S.A., NewLead Castellano Ltd., Grand Venetico Inc., and NewLead Venetico Ltd. (the "DHL Defendants").  However, DHL did not serve the DHL Complaint initially, and instead purports to have served the substitute custodian via email shortly before the close of business on Friday, August 5, 2016.  DHL Action Docket, First Declaration of Neil A. Quartaro, dated August 15, 2016 ("Quartaro Dec.") ¶ 10, Ex. 1.  As of the date hereof, DHL has not filed an affidavit of service in the DHL Action, and in light of the Motion to Intervene it is not clear whether that action has been abandoned.[2]

---

[2]  DHL has failed to comply with F.R.Civ.P. 4(m), which requires that service of the DHL Complaint be made within 90 days after the DHL Complaint was filed, absent good cause.  The presence of the Vessel in the District during the entire relevant time period removes any credible "good cause" argument DHL might advance.  To the extent DHL argues that it served the Vessel by providing the DHL Complaint to the substitute custodian, this argument is unavailing because DHL also ignored the express requirement of Rule B that the Marshal serve the attachment

2

In any event, the Vessel was auctioned Monday, August 8, 2016 at 10:00 A.M., E.S.T. Docket 66. By Order dated August 16, 2016, the Court confirmed the sale of the Vessel (the "Sale Confirmation Order") and found that the date of sale was the date of the Sale Confirmation Order:

> In light of the Court's finding herein that the sale of the Vessel for the Sale Price is confirmed, the sale date of the Vessel is the date hereof, and claims made after this Order is entered shall be treated in accordance with Local Admiralty Rule 15.

(Docket 75, p. 6).

The Sale Confirmation Order further provides:

> [P]ursuant to Local Admiralty Rule 15, claims upon the proceeds of sale of the Vessel, except for seaman's wages, shall be limited to any remnants and surplus of the Sale Price remaining after distribution to lienors who filed their claims before the date hereof.

(Docket 75, p. 7-8).

The proceeds of the auction were placed in the Court's registry and are pending final distribution (the "Proceeds"). The Vessel was delivered to her buyers on August 21, 2016 at 10:42 A.M. E.S.T. Third Declaration of Alan Swimmer in Support of Third Motion for *Custodia Legis* Fees, ¶ 8.

Shortly before the Vessel was sold, DHL sought to consolidate the DHL Action with the instant case. DHL Docket 11. Plaintiffs in the instant action opposed consolidation on a number of grounds.[3] Docket 74. By order dated August 25, 2016, the Court denied the Motion to

---

papers by preparing an order of attachment that purports to allow DHL to serve the Vessel's substitute custodian in lieu of the Marshal. This is in direct contravention of Rule B, which states:

> (1) When Available; Complaint, Affidavit, Judicial Authorization, and Process. In an in personam action:
> > (d)(i) If the property is a vessel or tangible property on board a vessel, the summons, process, and any supplemental process **must** be delivered to the marshal for service.

(emphasis added).

3   Many of the reasons cited by Plaintiffs in support of the argument to deny consolidation are also germane to the instant motion to intervene. Plaintiffs apologize for the need to repeat these arguments to the Court, but this is made necessary by DHL's optimistic views on the application of the Federal Rules of Civil Procedure.

Consolidate, holding that the DHL Action and the matter at bar did not present common questions of law or fact sufficient to justify consolidation. DHL Docket 13, p. 2-3. Several hours after the Court denied the Motion to Consolidate, DHL allegedly wired $84,462.20 to the substitute custodian. Docket 80, ¶ 3.

Undaunted by the denial of the Motion to Consolidate, on September 8, 2016, DHL filed the instant Motion to Intervene. Docket 80. The Motion to Intervene consists of ten numbered paragraphs, none of which state DHL's alleged claim(s) in the instant action. Id.

## INTERVENTION STANDARD

DHL moves for intervention of right pursuant to Fed.R.Civ.P. 24(a)(2). Docket 80 at ¶ 7. Under Fed.R.Civ.P. (24)(a)(2), a party may intervene if, "on timely motion," such party

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest.

Motions to intervene under Fed.R.Civ.P.24(a) are governed by the notice and pleading requirements of Fed.R.Civ.P. 24(c), which provides that the "motion [to intervene] must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."

The Eleventh Circuit has provided a four-prong test that requires any party seeking intervention to demonstrate that: '(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.' Stone v. First Union Corp., 371 F.3d 1305, 1308–09 (11th Cir. 2004) (*quoting* Worlds v. Dept. of Health and Rehabilitative Servs., 929 F.2d 591, 593 (11th Cir.1991)).

Here, DHL has failed to comply with Fed.R.Civ.P. 24(c) by failing to include a proposed complaint in intervention or other pleading setting out DHL's claims. Giving DHL the benefit of the doubt and assuming that the DHL Complaint filed in the DHL Action both states DHL's claims and is incorporated by reference in the Motion to Intervene, the DHL Complaint alleges only an economic interest in this matter, which is insufficient "interest" to support intervention. But were this problem ignored, DHL still does not allege a meritorious claim against the proceeds of sale of the Vessel. Even if it did, DHL's claims rank behind Plaintiffs', and hence intervention is futile because there will be nothing remaining from the Proceeds after Plaintiffs are paid. If DHL somehow managed to navigate all of these problems, there remains the problem that the Motion to Intervene is subject to the Sale Confirmation Order, and hence DHL's claims are entirely subordinated to those of Plaintiffs even if they ranked equally.

## DISCUSSION

1. **The Motion to Intervene Should be Denied for DHL's Failure to Include a Complaint or Other Pleading Setting Out its Claims**

The Motion to Intervene was not filed accompanied by a supportive pleading and so should be denied for failure to comply with the Federal Rules. Fed.R.Civ.P. 24(c) requires that a motion to intervene "must state the grounds for intervention *and* be accompanied by a pleading that sets out the claim or defense for which intervention is sought." (emphasis added). While it is true that the Eleventh Circuit has a liberal standard for such a pleading (see Piambino v. Bailey, 727 F.2d 1112 (11th Cir. 1985)), there must be some indication of the potential intervenor's claim(s). The purpose of requiring an intervenor to file a pleading is to place the other parties on notice of the claimant's position, the nature and basis of the claim asserted, and the relief sought by the intervenor. Dillard v. City of Foley, 166 F.R.D. 503, 506 (M.D.Ala. 1996); *See* WJA Realty Ltd. Partnership v. Nelson, 708 F.Supp. 1268, 1272 (S.D.Fla.1989)

Here, DHL has failed to do provide any such clear statement of its claims, and the Motion to Intervene has neither factual nor legal allegations. Docket 80. Moreover, the Court has already found that the DHL Complaint does not have "common factual allegations" with the Plaintiffs. DHL Docket 13, p. 3. Accordingly, the Motion to Intervene should be denied for failure to comply with Fed.R.Civ.P. 24(c) because DHL has not set out its claim.

### 2. Even if the DHL Complaint is Considered, DHL Alleges Only a Financial Interest Insufficient to Justify Intervention

Even if the Court overlooked DHL's failure to include a pleading and considered the DHL Complaint as incorporated by reference, this pleading only alleges an economic interest in the proceeds of sale, which is insufficient to justify intervention. DHL alleges that it has a right to intervene under Fed.R.Civ.P. 24(a)(2) because it has "an interest in the subject matter of this suit, and the final disposition of the proceeds of the Vessel's sale will impair [DHL's] interest and no existing party adequately represents Intervenor's interests." Docket 80 at ¶ 4. However, in the 11th Circuit, intervention as of right requires that the party seeking to intervene have an "'interest in the subject matter of the litigation [that] is direct, substantial and legally protectable.'" Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc., 425 F.3d 1308, 1311 (11th Cir. 2005) (citation omitted). Expanding upon that definition, the Eleventh Circuit in Mt. Hawley Ins. Co. stated that:

> [A] legally protectable interest 'is something more than an economic interest. What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant.' . . . Thus, a legally protectable interest is an interest that derives from a legal right.

Id. (citation omitted).

In Mt. Hawley Ins. Co., the proposed intervenor was the estate of a drowning victim at an apartment complex. The underlying lawsuit was between the building management company and the building's insurer. The Court ruled that intervention under 24(a)(2) by the estate was improper because its interest was "purely economic." The estate was not a party to the insurance policy at

6

issue and had no legally protectable interest, stating "only there will be less money available from which he can recover his wrongful death damages" and that his damages were "purely speculative" and dependent upon the final outcome of the lawsuit. Id. at 1311.

Just as in Mt. Hawley Ins. Co., DHL has failed to assert a legally protectable claim either in its Motion to Intervene or in the DHL Complaint. The basis of DHL's claim against the Vessel is an alleged breach of charter party by a different vessel owned by a non-party to this action. DHL does not claim privity with any of the defendants in this action. DHL merely alleges a prospective indemnity claim and does not allege that it has begun any proceedings against Defendant NewLead Castellano, Ltd. or the Vessel. Accordingly, DHL does not have a legally protectable interest in the Vessel or the funds from its sale. Viewed in the most charitable light, DHL may have an economic interest in the funds because its indemnity claim could one day ripen, but such a speculative, economic-only interest is expressly disallowed as a ground for intervention in the Eleventh Circuit.

### 3. The DHL Complaint is Not Meritorious

Were the Court to exercise its discretion and consider the allegations of the DHL Complaint, intervention should still be denied because DHL fails to advance a meritorious claim. In order to comply with F.R.Civ.P. 24(c), a proposed intervening claim must be meritorious. See, e.g., Arvida Corp. v. City of Boca Raton, 59 F.R.D. 316, 323 (S.D.Fl. 1973). The DHL Complaint was filed to secure DHL's "contingent liability claim against Newlead Shipping, Newlead Bulkers and Grand Venetico Inc. for breach of charter party." DHL Complaint ¶ 21. In other words, DHL seeks security in case it is one day found liable in an arbitration with a non-party. Unsurprisingly, there is a long line of authority holding that Rule B is not available to obtain security for prospective indemnity claims: an indemnity claim is not ripe until the party claiming indemnity either is ordered to pay another entity or actually pays damages. Armstrong v. Alabama Power Co., 667 F.2d 1385,

1388-89 (11th Cir. 1982) (Upholding dismissal of contingent maritime indemnity claim as premature) *citing* A/S Ludwig Mowinckles Rederi v. Tidewater Construction Corp., 559 F.2d 928 (4th Cir. 1977) (Dismissing indemnity claim where "neither a determination of liability nor a settlement in any of the" underlying matters had been made); *See also* CPM Corp. Ltd. v. Prominent Shipping PTE Ltd., 2009 WL 3787380 (S.D.N.Y. 2009) (Vacating Rule B attachment securing unripe contingent claim for failure to state prima facie maritime claim); Beluga Chartering GMBH v. Korea Logistics Sys. Inc., 589 F. Supp.2d 325, 330 (S.D.N.Y. 1998) (Dismissing Rule B claim for failure to allege *prima facie* maritime claim where Plaintiff had made no payments or initiated action against defendant); Sanko Steamship Co., Ltd. v. China Nat'l Chartering Corp., 536 F. Supp.2d 362, 366-67 (S.D.N.Y. 2008) (Noting "precedent in both this District and elsewhere that an indemnity claim is not ripe until the underlying claim has been paid"); J.K. Int'l, Pty., Ltd. v. Aqriko S.A.S., 2007 WL 485435, at *4-5 (S.D.N.Y. 2007) (Vacating attachment based on charterers' unripe indemnity claims against cargo receivers in absence of evidence that the ship owner intended to press a demurrage claim against charterer); Bottiglieri Di Na Vigaizione Spa v. Tradeline LLC, 472 F. Supp.2d 588, 591 (S.D.N.Y. 2007) (Vacating attachment based on unripe indemnity claims that included potential liability, fees, and costs of ongoing arbitrations); Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA, 2005 WL 2218025, at * 2 (S.D.N.Y. 2005) (Holding that indemnity claim based on costs and fees associated with an arbitration that had not yet been initiated was too speculative to support attachment).

The DHL Complaint cites Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F.Supp.2d 399 (S.D.N.Y. 2007) for the proposition that "[w]here the underlying liability proceeding has been commenced, court [sic] have found that a contingent indemnity claim is ripe for adjudication, and security may be obtained for that claim pursuant to Supplemental Admiralty

Rule B." DHL Action Docket 1, fn 2.  However, Navalmar involved an underlying proceeding between the same parties to the attachment in which the party seeking indemnity had been required to file a million dollar bank guarantee in the underlying proceeding.  Id. at 404.  It was expressly on this basis that the Court in that case upheld the attachment and distinguished many of the authorities cited above.  Id.  Thus, while DHL cites Navalmar as providing authority for DHL's claims, in fact Navalmar is a factually distinguishable exception to the rule barring DHL's claims.

DHL does not allege that it has initiated any proceeding against any of the DHL Defendants.  DHL Action Docket 1, ¶ 20.  Nor does DHL allege that it has been found liable or required to post security in the underlying arbitration.  See Id.  Accordingly, Navalmar provides no guidance and DHL's claims are instead governed by the well-established precedent that requires the Rule B attachment to be vacated and the DHL complaint dismissed for failure to allege a *prima facie* maritime claim because DHL alleges no underlying payments or action against any of the DHL Defendants.  Since DHL has failed to allege a meritorious claim, intervention should be denied.

4. **Even if Intervention is Allowed, It is Futile Because DHL is "limited to any remnants" under Local Admiralty Rule 15.**

Should the Court grant the Motion to Intervene, DHL's claims are futile because DHL is limited to any Sale Proceeds remaining after distribution to Plaintiffs, and this is likely to be none.  According to the Court's Order for Sale of August 16, 2016, "pursuant to Local Admiralty Rule 15, claims upon the proceeds of sale of the Vessel . . . shall be limited to any remnants and surplus of the Sale Price remaining after distribution to lienors who filed their claims before the date hereof."  Docket 75, p. 7.  Local Admiralty Rule 15 states that "[c]laims upon the proceeds of sale of property under a final decree . . . will not be admitted in behalf of lienors who filed their claims after the sale, to the prejudice of lienors who filed their claims before the sale, but shall be limited to remnants and surplus."  The Motion to Intervene was filed on September 8, 2016, 31 days after the Vessel

9

was auctioned, 23 days after the Order for Sale was entered and 17 days after the filing of the U.S. Marshal's Report of Sale. Docket 79. DHL alleges that it may have a claim against the Proceeds which would prejudice the Plaintiffs' claims. Docket 80, ¶ 4. Accordingly, at best, DHL has a potential claim (if its indemnity claim ever ripens) to the remnants and surplus of the Proceeds after Plaintiffs' mortgages are paid.

As the Court is aware, absent a legal miracle there will be no surplus remaining the Court's registry following satisfaction of Plaintiffs' claims. With a motion for summary judgment pending for October 14, 2016, Defendants' counsel have filed a motion to withdraw from the case for a second time. Docket 83. Plaintiffs, who have numerous open discovery requests unanswered by Defendants (Defendants have not served any discovery requests), do not believe a credible defense can be made to the unquestionable defaults under the Mortgages before the Court. Plaintiffs, on the other hand, have already established a *prima facie* case to enforce their preferred mortgage liens over the Vessel. Docket 43. Plaintiffs' security interest in the Vessel makes them secured creditors, and their relative claim to priority to the proceeds of sale of the Vessel is established by the Ship Mortgage Act. Order dated August 5, 2016 (the "Aug. 5, 2016 Order") p. 3. Any issue as to the maritime nature of Plaintiffs' claims was definitively resolved by the Aug. 5, 2016 Order and by the Court's August 25, 2016 Order in the DHL matter at docket 13.

Even if DHL could somehow overcome the myriad procedural, factual and legal obstacles to its claim, there is thus no doubt that Plaintiffs' claims will come first. The relative priority of claimants to the proceeds of the foreclosure sale of a vessel is established by 46 U.S.C. § 31326(b):

> (1) the preferred mortgage lien, including a preferred mortgage lien on a foreign vessel whose mortgage has been guaranteed under chapter 537 of this title, has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens); and

      (2)      for a foreign vessel whose mortgage has not been guaranteed under chapter 537 of this title, the preferred mortgage lien is subordinate to a maritime lien for necessaries provided in the United States.

Accordingly, Plaintiffs' preferred mortgage liens have priority over all claims except for *in custodia legis* expenses, Court costs, preferred maritime liens and necessaries. The commonly-accepted ranking of maritime lien priorities is:

1. Expenses of justice during custodia legis—expenses arising from the care and operation of the ship while it is in the custody of the Court through the U.S. Marshal (not regarded as a lien, but given priority).

2. Seamen's liens (including those of the Master) for wages, maintenance and cure; and wages of longshoremen directly employed by the vessel.

3. Salvage and general average liens.

4. Tort liens, including personal injuries.

5. Preferred ship mortgage liens (U.S. flag vessels).

6. Liens for necessaries under 46 U.S.C. §§ 31301(4), 31341 and 31342

7. Preferred mortgage lien on foreign vessel.

THOMAS J. SCHOENBAUM, 1 ADMIRALTY & MAR. LAW § 9-6 (5th ed.) (First Declaration of Neil A. Quartaro, dated August 15, 2016 Ex. 2).

A claim for breach of charter appears nowhere in the statutory lien priority scheme and DHL does not allege otherwise. Since DHL does not even allege a claim that is capable of priming the Mortgages in the instant case, it would be futile to grant intervention this action.

## **CONCLUSION**

      The Motion to Intervene should be denied because DHL did not comply with F.R.Civ.P. 24(c) by failing to include a pleading setting outs DHL's claims. Ignoring this procedural deficiency, the DHL Complaint alleges a mere financial interest in the Proceeds which is insufficient to support intervention under Eleventh Circuit precedent. Were the Court to ignore this,

the DHL Complaint does not even allege a meritorious claim, instead seeking to attach assets in case DHL is one day found liable in an unrelated proceeding between non-parties.  If DHL were able to get past these problems, the DHL Complaint still fails to allege a claim capable of priming the mortgages in this case, and in any event is limited to "remnants" of the Proceeds even if DHL had a priming claim.  Last, DHL claims to have paid *custodia legis* costs to the substitute custodian, but obviously did so for the sole purpose of circumventing the Court's Order denying consolidation.  DHL's various procedural machinations in this and the DHL Action make clear that DHL's sole purpose in this case is to be disruptive as possible, presumably so it can force some concession from Plaintiffs or the Court.  DHL's efforts to do so should be denied.

Dated: Savannah, Georgia

      September 26, 2016

                              BOUHAN FALLIGANT LLP

                              /s/ Todd M. Baiad
                              TODD M. BAIAD
                              Georgia Bar No. 031605
                              LUCAS D. BRADLEY
                              Georgia Bar No. 672136
                              *Attorneys for Plaintiffs*

Bouhan Falligant, LLP
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile

*Of Counsel*
(*Pro Hac Vice*)
Neil A. Quartaro (NQ 9640)
Zachary Farley (Pro Hac Vice)
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

| | | |
|---|---|---|
| RAY CAPITAL INC., OPPENHEIM CAPITAL LTD, CHEYENNE HOLDINGS LTD. AND LABROY SHIPTRADE LIMITED | § § § § § | |
| PLAINTIFFS | § | C.A. NO. 16-CV-093 |
| V. | § § | |
| M/V NEWLEAD CASTELLANO, IMO NO. 9686338 HER ENGINES, TACKLE, EQUIPMENT, FURNITURE, APPURTENANCES, ETC., *IN REM*, AND NEWLEAD CASTELLANO LTD. | § § § § § § § § | |
| DEFENDANTS | § | |

## **CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

Respectfully submitted, this 26th day of September, 2016.

BOUHAN FALLIGANT LLP

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia Bar No. 031605
LUCAS D. BRADLEY
Georgia Bar No. 672136

*Attorneys for Plaintiffs*

Bouhan Falligant, LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile

**Of Counsel**
(*Pro Hac Vice*)
Neil A. Quartaro (NQ 9640)
Zachary Farley (Pro Hac Vice)
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com