**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**
**IN ADMIRALTY**

|  |  |  |
|---|---|---|
| RAY CAPITAL INC., OPPENHEIM CAPITAL LTD, CHEYENNE HOLDINGS LTD. AND LABROY SHIPTRADE LIMITED | ) ) ) ) ) ) | |
| PLAINTIFFS, | ) ) | |
| V. | ) ) | CIVIL ACTION NO. 16-CV-093 |
| M/V NEWLEAD CASTELLANO, IMO NO. 9686338 HER ENGINES, TACKLE EQUIPMENT, FURNITURE, APPURTENANCES, ETC., *IN REM*, AND NEWLEAD CASTELLANO LTD. | ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) ) | |

**DHL PROJECT & CHARTERING LIMITED'S REPLY**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO INTERVENE**

COMES NOW, DHL Project & Chartering Limited ("DHL" or "Intervenor"), by and through its undersigned counsel of record, and files this Memorandum of Law in reply to Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd. and Labroy Shiptrade Limited (collectively, "Plaintiffs")'s opposition to DHL's Motion to Intervene, which seeks to allow the participation of DHL in this action for the purposes of opposing the Plaintiffs' motion for summary judgment against the vessel sale proceeds on deposit in this District, to which DHL has a competing claim as set forth in the related proceeding currently pending as Civil Action File No. CV416-123.

1

## PRELIMINARY STATEMENT

The Court should grant DHL's motion to intervene pursuant to Fed. R. Civ. P. 24, which allows for the intervention by DHL as a matter of right where DHL has a legal right to recovery against the vessel sale proceeds on deposit in this action, which requires the opposition by DHL of Plaintiffs' claims, and which will not be protected without DHL's intervention in this action. As set forth in its opening Motion and Incorporated Memorandum of Law (Dkt. 80), these cases both involve claims to the sale proceeds of the vessel M/V Newlead Castellano (the "Vessel"), against which DHL and the Plaintiffs both have claims.[1]  Whether the Plaintiffs have a valid, maritime claim against the Vessel pursuant to Supplemental Admiralty Rule B and/or Rule C directly affects the availability of funds available to satisfy the claims of DHL.  However, as the Court is aware, counsel for the defendants in this action recently filed a withdrawal (Dkt. 83), and it does not appear that Defendants will be opposing Plaintiffs' claims based on an alleged breach of a vessel mortgage.  In order to avoid prejudice to DHL's rights (including its valid attachment lien against the Vessel), DHL should be permitted to fully participate in pending discovery and the summary judgment briefing concerning the validity of the Plaintiffs' claim against the Vessel, and whether such claim, if proven, has priority over DHL's maritime claim.

---

[1] Now that this Court has upheld its subject-matter jurisdiction in this case against the Vessel by upholding the Rule B attachment and Rule C arrest by Plaintiffs (Dkt. 64), intervention by DHL is appropriate.  As set forth in its opening papers (Dkt. 80), when DHL filed its Rule B Complaint, substantial questions concerning the arrest and attachment of the Vessel by the Plaintiffs were pending, and briefing on the Defendants' motion to vacate was ongoing.  DHL prudently sought to file an original complaint as opposed to intervening in a case which may have been imminently dismissed, thereby also invalidating DHL's own writ of attachment on the Vessel.  Other district courts have proceeded in this manner. *See Flame, S.A., et al. v. Glory Wealth Shipping Pte Ltd.*, No. 2:13-cv-658 (E.D. Va.) (RGD) (Dkt. 36) (denying motion to intervene in vessel attachment case where "substantial jurisdictional questions" were pending), notwithstanding E.D. Va. Local Admiralty Rule E(13) requiring intervention.  Accordingly, DHL filed an original complaint, with the intention of attaching the Vessel once the jurisdictional challenges were determined with respect to the Plaintiffs' claims.  DHL made the Court fully aware that the Vessel was already under arrest/attachment in another action, and marked its own case as related to that action.  The case was accepted by this Court as related, and an order for writ of attachment was granted by the Court.

The Plaintiffs' opposition to intervention seeks to keep DHL out of the case so that the Plaintiffs may attempt to collect on a questionable claim related to the breach of only one of four promissory notes (in favor of Ray Capital), and the ad-hoc alleged claims concerning the breach of the vessel mortgages, which are based on unproven claims arising in the post-attachment context (discussed further below). Plaintiffs ignore the fact that DHL has a valid attachment issued by this Court against the Vessel (now, the sale proceeds), which has not been vacated by any party, and that Plaintiffs are not entitled to the disbursement of funds from the Court registry which are currently attached by Court order, requiring the litigation of the Plaintiffs' and DHL's respective priority of claims.   The Plaintiffs instead seek to prematurely and preliminarily argue the merits of DHL's maritime claim in the present motion.  These arguments fail where this Court issued an order for attachment by DHL against the Vessel, knowing well that the Vessel was already under attachment in the District by the Plaintiffs in another action, and allowing the actions to be marked as related.  Finally, where DHL has paid its share of *custodia legis* expenses as demanded by the substitute custodian and in accordance with the Order of the Court (Dkt. 2), DHL should be permitted to intervene at the very least to obtain the approval and disbursement of the *custodia legis* expenses.

## ARGUMENT

**I.     INTERVENTION IS NECESSARY TO AVOID PREJUDICE TO DHL AND PROTECT ITS INTEREST IN ENFORCING ITS RIGHT OF ATTACHMENT AGAINST THE VESSEL, AND TO DETERMINE PRIORITY OF CLAIMS TO THE VESSEL SALE PROCEEDS**

Under Rule 24 of the Federal Rules of Civil Procedure, DHL may intervene where it "claims an interest relating to the property… that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest…" Fed. R. Civ. P. 24(a)(2).  Additionally, the Court has the inherent power to control

the disposition of cases, particularly where is it making disbursements of a specific fund to various claimants.   In accordance with *Halo Wireless, Inc. v. TDS Telecommunications Corp.*, 1:11-CV-2749-RWS, 2012 WL 246393, at *2-3 (N.D. Ga. Jan. 26, 2012), this Court should recognize the risk of prejudice to DHL if the Court were to adjudicate the merits of the Plaintiffs' claims to the fund, without an opportunity for DHL to be heard on the validity of Plaintiffs' claims, particularly where DHL has a superior right to the vessel sale proceeds.

The Plaintiffs incorrectly assert that DHL's intervention pleading is deficient because it failed to include a complaint setting out its claims.  Fed. R. Civ. P. 24(c).  However, as DHL's opening papers made clear, DHL seeks intervention not to assert its own claim in this action.[2] Rather, DHL seeks to protect its legal interest (the attachment right against the vessel sale proceeds), by participating in discovery against the Plaintiffs and defending against the Plaintiffs summary judgment on its claims in order to establish priority of claims to the sale proceeds. Intervention is granted in many different contexts (such as opposing a party's motion) which do not include asserting an intervening complaint or other pleading at the initial stage.   *E.g.*, *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1078 (9th Cir. 1985) (nonparty "successfully moved to intervene for limited purpose of opposing [plaintiff's] motion for summary judgment").  Many cases also recognize that a pleading pursuant to Fed. R. Civ. P. 24(c) is not required "where the court was otherwise apprised of the grounds for the motion."  *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) (citing cases from many circuits).  Accordingly, DHL properly filed its motion to intervene, setting out the basis for its intervention pursuant to Fed. R. Civ. P. 24, which is sufficient to allow this Court to make a determination that DHL has interests which must be protected by its participation in this action.

---

[2] As this Court previously declined to consolidate the actions, this avenue seemed inappropriate.  *See* 16-cv-123, Dkt. 13.

Once intervention is granted, DHL plans to prepare a robust opposition to Plaintiffs' motion for summary judgment highlighting the extreme flaws in Plaintiff's case (both factually and legally) and the inherent lack of subject matter jurisdiction over Plaintiffs' claims.

The Plaintiffs also suggest that DHL is not permitted to intervene because it claims only an economic right, as opposed to a legal right. Dkt. 85 at 6. But as Plaintiffs note, "a legally protectable interest is an interest that derives from a legal right." *Id.* (citing *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). A party may intervene where its interest is "direct, substantial and legally protectable." *Id.* DHL's interest in this litigation to the vessel sale proceeds is not insufficient merely because DHL's interest should ultimately result in financial recovery. It is DHL's interest in *these funds* specifically, and not financial recovery generally, that gives DHL an absolute right to intervene. It is well established by many circuits that "[w]hile mere economic interest may be insufficient to support a right to intervene, intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." *E.g., Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995); *Statewide Masonry v. Anderson*, 511 Fed. App. 801 (10th Cir. 2013); *Liberty Mut. Ins. Co. v. Treesdale*, 419 F.3d 216 (3d Cir. 2005); *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 53-54 (5th Cir. 1970); *Hardy-Lathan v. Wellons*, 415 F.2d 674 (4th Cir. 1968); *U.S. Commodity Futures Trading Com'n v. Giddens*, 2012 WL 603592 (N.D. Ga. Feb. 24, 2012) (granting intervention to protect interest in specific funds which were subject of lawsuit). An attachment pursuant to Supplemental Admiralty Rule B gives rise to an attachment lien against the Vessel (or the sale proceeds) which provides security for a party's claims against an entity which is not otherwise found within the District. Thus, DHL's valid attachment of the Vessel provides it with a legally protectable right of recovery in the specific vessel sale funds which must

be protected by allowing full participation by DHL to oppose Plaintiffs' competing claims and have Plaintiffs' claims dismissed.

Intervention is commonly permitted in order to challenge another party's right to a fund and to determine priority of claims.  *See Valentino v. Rickners Rhederei, G.m.B.H.*, 417 F.Supp. 176, 177 (E.D.N.Y. 1976) (where claimant intervened to oppose plaintiffs' motion for disbursement of funds, in order to preserve its priority of lien on funds); *In re McLean Industries*, 74 B.R. 589 (S.D.N.Y. Bnkr. 1987) ("intervention in a pending arrest proceeding entitled the intervenor to oppose the arresting party's claim").  Indeed, "one cannot, however, seek summary declaration of the validity of a preferred ship mortgage, its foreclosure… and yet reserve the matter of priorities."  *Security Pacific Nat. Bank v. Ol.s. Pacific Pride*, 549 F.Supp. 53 (W.D. Wash. 1982).

## II.  PLAINTIFFS' ARGUMENTS ON THE MERITS OF DHL'S CLAIM ARE INAPPROPRIATE AT THIS STAGE AND DEMONSTRATE THE UTILITY OF GRANTING INTERVENTION TO DETERMINE PRIORITY

The Plaintiffs incorrectly argue that the Court need not grant DHL's intervention because it alleges that DHL will fail on its contingent indemnity claim.  Dkt. 85 at 7-8.  However, the case cited by Plaintiffs actually suggests that where intervention is sought to defend against a claim (as opposed to setting forth an intervening complaint, a meritorious *defense* is what is required.  *Id.* (citing *Arvida Corp. v. City of Boca* Raton, 59 F.R.D. 316, 323 (S.D. Fl. 1973)).[3]  Nonetheless, and despite that a motion to intervene is an improper stage at which to brief the merits of the intervening party's own case,[4] DHL submits that its Rule B attachment action to obtain security

---

[3] Details with respect to DHL's intended defenses are discussed further in Point III, below.

[4] If Plaintiffs wish to challenge the merits of DHL's claim, they may similarly seek to intervene in the DHL attachment action (16-cv-123) or raise those issues in a motion for summary judgment with respect to priority of claims. Alternatively, the Court could *sua sponte* reconsider its previous opinion denying DHL's request to consolidate so that Plaintiffs' efforts to litigate the merits of DHL's claims are facilitated in a singular proceeding.

for its contingent indemnity claim pursuant to a maritime contract (a charter party), pending in the separate action No. 16-cv-123 is a valid maritime claim.

Many district courts have ruled that an adjudication of underlying liability is not a prerequisite to a claim for indemnity.  Courts have noted that "[w]hether an indemnification issue is ripe for adjudication depends on the facts and circumstances of the case under consideration." *A/S J. Ludwig Mowingckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 932 (4th Cir. 1977). An important factor in considering ripeness is "whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated."  *Id.*  In determining whether an indemnity claim states a valid prima facie admiralty claim, some courts have looked to whether the plaintiff's expectation of payment to a third party is reasonable, and/or how imminent such payment is likely to be.  *See, e.g., Exmar Shipping, N.V. v. Polar Shipping, S.A.*, 2008 WL 3992290, *3 (S.D.N.Y. Aug. 27, 2008) ("some courts have looked at the stage of litigation and the general context to determine whether plaintiff's request for security based on its expectation to be sued by third parties is reasonable"); s*ee also Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*, 2005 WL 2446236, *2 (S.D.N.Y. Oct. 3, 2005) ("we find that it is not unduly speculative to assume that the physical damage claims are being asserted down the chain of charter parties and that plaintiff has a reasonable belief that it faces potential liability").

Although Plaintiffs focus on cases that look at whether an indemnity claim is ripe for determination, in a Rule B security action, as long as the underlying liability action has been commenced, the claim is ripe for attachment in order to secure subsequent indemnification. *Navalmar (U.K.) Ltd v. Welspun Gujarat Stahl Rohren, Ltd.*, 485 F. Supp. 2d 399 (S.D.N.Y. 2007); c*f. Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007) (in absence of evidence that shipowner intended to press a demurrage claim against charterer,

charterer's claim for contingent indemnity not ripe to support attachment).  This is consistent with Supplemental Rule B being a pre-judgment remedy.

Additionally, "a district court may in some circumstances disregard the prematurity of a plaintiff's claim as a matter of discretion." *Patricia Hayes Assoc. v. Cammell Laird Holdings U.K.*, 339 F.3d 76, 82 (2d Cir. 2003); *see also Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965) ("The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge."). Accordingly, it is within the discretion of district courts to allow a party to obtain security for an otherwise premature indemnity claim.  *See Patricia Hayes*, 339 F.3d at 82; *J.K. Intern. Pty., Ltd. v. Agriko S.A.S.*, 2007 WL 485435 (S.D.N.Y. Feb. 13, 2007) (but finding that plaintiff had not carried burden of showing that it was likely to incur underlying liability).

In cases where courts of this district have chosen to exercise their discretion to uphold the plaintiff's attachment, there was some evidence in the record upon which the court could conclude that the plaintiff was likely to incur liability from a third party. *See, e.g., Daeshin Shipping Co. v. Meridian Bulk Carriers, Ltd.*, No. 05 Civ. 7173, 2005 WL 2446236, at *2 (S.D.N.Y. Oct. 3, 2005) (upholding attachment and distinguishing Greenwich because, based on documentary evidence, there was evidence that a damage claim would be passed along and asserted against the plaintiff); *Hibiscus Shipping, Ltd. v. Novel Commodities S.A.*, No. 04 Civ. 2344, at 3-4 (S.D.N.Y. July 8, 2004) (Order denying motion for vacatur of attachment) (stating that a claim letter was sufficient to demonstrate ripeness); *Staronset Shipping Ltd. v. North Star Nav. Inc.*, 659 F.Supp. 189, 191 (S.D.N.Y. 1987) (noting that action had been brought *in rem* against ship owner).

In this case, where Defendants provided a vessel under the charter party where cracking of the hull was a clear breach of contract, and indisputably resulted in a large amount of damages

incurred and put forward in arbitration against DHL by its subcharterer, the circumstances of this case are sufficient to award an attachment here.  It is not a matter of whether DHL will be found liable for the cracked hull, but what the precise amount of damages will be.  *Oldendorff Carriers GmbH & Co. KG v. Sidor C.A.*, 2010 WL 334926, *1-2 (S.D.N.Y. Jan. 29, 2010) (noting that where indemnity claim can also be considered a separate breach of the contract, was not a question of whether liable, but amount of damages to be determined in underlying arbitration).

## III.   DHL'S INTERVENTION IS NOT FUTILE – DHL INTENDS TO RAISE MATERIAL ISSUES OF FACT WHICH PREVENT THIS COURT FROM GRANTING SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS

The Plaintiffs assert that because this Court reversed itself and upheld and subsequently upheld its arrest of the Vessel pursuant to Supplemental Admiralty Rule C, that DHL is only entitled to the remnants after Plaintiffs' recovery.  Dkt. 85 at 9-10 (citing Local Admiralty Rule 15).[5]  Although Plaintiffs hope to rely on the priority of claims as between a Rule C arrest claim and a Rule B attachment claim,[6] Plaintiffs presuppose that because they have survived a motion to vacate by the Defendants (based on a *prima facie* standard), that this Court will ultimately find there are no issues of material fact, allowing Plaintiffs to prove their claim and recover against the Vessel sale proceeds.  As this Court and the Plaintiffs are aware, many arrest or attachment actions are upheld at the motion to vacate stage, and later dismissed on the basis that the arresting or attaching Plaintiff failed to prove its claims.  By its order dated July 21, 2016 (Dkt. 55) this Court

---

[5] Importantly, Local Admiralty Rule 15 concerns lienors who file claims after the sale of the vessel, whereas DHL filed its action on May 25, 2016, and served the writ of attachment on the Vessel on August 5, 2016.  The Vessel was sold on August 8, 2016.

[6] Plaintiffs make reference to the ranking of priority of maritime claims, but conveniently stop the list at foreign preferred mortgages (number 7), conveniently omitting attachment liens pursuant to Supplemental Admiralty Rule B which are also listed in the ranking (at number 11).  In total, 12 types of maritime claims have been ranked in priority under the relevant jurisprudence.  *United States v. One 254 Foot Freighter, M/V Andoria*, 570 F. Supp. 413, 415 (E.D. La. 1983).  In the event that Plaintiffs lose on their Rule C claim, DHL could very well recover against the vessel sale proceeds.  If the obligations underlying the mortgage are unenforceable the Liberian mortgage is without effect.

allowed factual discovery to proceed in order to allow Defendants to develop certain affirmative defenses to the Plaintiffs' summary judgment motion on its alleged preferred mortgage lien claim. *See* Dkt. 31 at 12, Dkt. 15 at 5-7 and Dkt. 59.   Now that Defendants' counsel has requested to withdraw (Dkt. 83) and all indications are that Defendants do not plan to pursue defense of Plaintiffs claims, DHL should be permitted to engage in similar discovery, or at the very least submit briefing which raises issues of material fact.   These issues include whether Ray Capital met all of its obligations on the underlying promissory note which is the basis of its claims,[7] whether the mortgages of the Vessel were actually breached merely on the allegation of unpaid insurance and/or crew wages, and whether the Plaintiffs interests under the agreements were even validly created or assigned from Tiger Capital Partners Ltd.   Tellingly, the alleged assignment under very peculiar circumstances from Tiger Capital Partners Ltd., a British Virgin Islands Company to Ray Capital, a Marshall Islands company, appears to be absent from the record.   Finally, at the very least, the Plaintiffs must demonstrate that their foreign registered mortgages comply with the requirements of the Ship Mortgage Act, 46 U.S.C. §§ 31301-31343 and the underlying obligations (subject to the laws of various jurisdictions) were breached and that the single purpose/single asset Liberian entity Newlead Castellano Ltd. had authority under Liberian law to encumber its sole asset for debts of others with no consideration particularly where those third party obligations involved serious questions of fraud and corporate malfeasance.   No such showing has been made nor has a breach of the underlying mortgage obligations been sufficiently alleged much less proven.

---

[7] The very transactions for which Plaintiffs allegedly earned these amounts are subject to a fraud proceeding in the New York Supreme Court. *See Transasia Commodities Ltd. v. Newlead JMEG, LLC, et al.*, Index No. 654414/2013 (N.Y. Sup.) (where plaintiff Transasia alleges fraudulent coal purchase contracts which in fact never occurred, for the purpose of fraudulently inflating Newlead Holdings Ltd. stock value).

## CONCLUSION

For the reasons set forth above, DHL respectfully requests that its motion be granted and that it be permitted to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a) in this action for the purpose of participating in discovery, opposing Plaintiffs' motion for summary judgment, litigation concerning the priority of claims, and to request disbursement of *custodia legis* expenses, as appropriate.

This 28th day of September, 2016.

BRENNAN WASDEN & PAINTER LLC

By:    s/s/ Travis D. Windsor
       William E. Dillard
       State Bar No. 222030
       Travis D. Windsor
       State Bar No. 770441
       *Attorneys for Plaintiff DHL Project &*
       *Chartering Limited*

P.O. Box 8047
Savannah, Georgia 31412
(912) 232-6700
FAX (912) 232-0799
bdillard@brennanwasden.com
twindsor@brennanwasden.com
565-6

HOLLAND & KNIGHT LLP

By:    s/s/ James H. Power
       James H. Power *(pro hac vice)*
       31 West 52nd Street
       New York, NY 10019
       Phone: (212) 513-3200
       Fax:  (212) 385-9010
       Email: james.power@hklaw.com