UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

| | |
|---|---|
| RAY CAPITAL INC., OPPENHEIM CAPITAL LTD, CHEYENNE HOLDINGS LTD. AND LABROY SHIPTRADE LIMITED <br><br> PLAINTIFFS, <br><br> V. <br><br> M/V NEWLEAD CASTELLANO, IMO NO. 9686338 HER ENGINES, TACKLE EQUIPMENT, FURNITURE, APPURTENANCES, ETC., *IN REM*, AND NEWLEAD CASTELLANO LTD. <br><br> DEFENDANTS. | CIVIL ACTION NO. 16-CV-093 |

## DHL PROJECT & CHARTERING LIMITED'S EMERGENCY MOTION FOR STAY PENDING APPEAL AND MEMORANDUM OF LAW

COMES NOW, DHL Project & Chartering Limited ("DHL" or "Intervenor"), by and through its undersigned counsel of record, and files this Memorandum of Law in support of its Emergency Motion for Stay Pending Appeal, providing for a stay of litigation of the Motion for Summary Judgment filed by Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd. and Labroy Shiptrade Limited (collectively, "Plaintiffs") (Dkt. 43), and/or to stay or enjoin distribution of the vessel sale proceeds on deposit with the court registry in this action, resulting from the sale the M/V NEWLEAD CASTELLANO (the "Vessel"), during the pendency of DHL's appeal.

1

## PRELIMINARY STATEMENT

This dispute arises out of two separately filed actions in this District against the Vessel and certain other defendants pursuant to the Supplemental Rules for Admiralty or Maritime Claims (Rules B and C). Plaintiffs assert a claim against the Vessel and its owner pursuant to a purported breach of a promissory note and foreign mortgage. DHL, in its own action (Civil Action No. 16-cv-123) asserts a claim for damages arising out of Defendants' breach of a charter party. The Vessel was arrested and attached by Plaintiffs and also attached by DHL. On August 8, 2016 (subsequent to DHL's attachment of the Vessel) the Vessel was sold and funds in the amount of $7.4 million (reflecting the substitute *res*) were deposited into this Court's registry where they remain subject to the attachment of DHL (with the exception of disbursement of *custodia legis* fees approved by the Court).[1]

On September 8, 2016 DHL filed a Motion to Intervene in this action (Dkt. 80) pursuant to Fed. R. Civ. P. 24(a) on the basis that it has an interest in the subject matter of the action, namely a claim against the same fund created by the sale of the Vessel which was attached by DHL in Civil Action No. 16-cv-123 pursuant to its prejudgment maritime claim against Defendants arising out of breach of a charter party.[2] DHL asserts that intervention is required in order to allow Intervenor to protect its interest in the Vessel proceed fund (i.e., the substitute *res*) by allowing it to challenge the Motion for Summary Judgment filed by Plaintiffs, and to establish the priority of its own claim to the substitute *res*. Namely, there exist substantial issues of material fact with respect to Plaintiffs' claims which warrant the denial of summary judgment and which ultimately

---

[1] On September 12, 2016, the Court granted Plaintiffs' motion to disburse *custodia legis* fees incurred in connection with the arrest and attachment of the Vessel, in the amount of $695,370.37. Dkt. 81. On October 7, 2016 the Court approved another $9,320.54 of *custodia legis* expenses. Dkt. 97. Intervenor does not oppose the disbursement of these amounts to Plaintiffs.

[2] DHL also previously filed a Motion to Consolidate the actions (Dkt. 60) which was denied without allowing DHL to file a memorandum in reply.

2

will prevent Plaintiffs from recovering. On October 4, 2016 this Court denied DHL's Motion to Intervene (Dkt. 94), stating that DHL does not have a protectable interest in the action, because its interest in the *res* is "highly speculative" due to the four legal findings that are required in order for Intervenor to succeed on its claim. Dkt. 94 at 7-8. Additionally, the Court stated that Intervenor had not established that a Rule B attachment provides a property interest in the specific fund on deposit in this action. *Id.* at 7, n. 6 (distinguishing cases cited by Intervenor for interest in a specific fund based on no Rule B attachment involved). Intervenor has filed a Notice of Interlocutory Appeal (Dkt. 98), appealing the October 4, 2016 Order denying its intervention to the Court of Appeal for the 11th Circuit.

This Emergency Motion for Stay Pending Appeal seeks to stay adjudication of Plaintiffs' Motion for Summary Judgment in this action during the pendency of Intervenor's appeal. Because the opportunity to participate in litigating the competing claims against the Vessel substitute *res* the very opportunity which Intervenor seeks through its appeal, Intervenor asserts that a stay pending appeal is necessary, and further supported by the relevant factors considered by the Court as to whether to grant a stay, such as irreparable harm. On October 5, 2016, this Court extended the briefing schedule allowing the Defendants until November 4, 2016 to obtain new counsel and to file an opposition to the Summary Judgment Motion. Dkt. 95. In its order, the Court notes that failure to obtain new counsel by Defendants may result in the entry of default against Defendants, and that the Summary Judgment Motion will be treated as unopposed. Dkt. 95 at 2. This further demonstrates the very reason why an immediate stay is necessary, to avoid default judgment and the granting of an unopposed summary judgment motion, when Intervenor seeks to participate to present various defenses to Plaintiffs' claims and to raise substantial issues of material fact. These

defenses directly affect Intervenor's own security interests perfected by attachment of the Vessel, for which Intervenor asserts that it has a priority claim.

Intervenor's stay application also seeks to prevent the release of funds in the approximate amount of $7.4 million currently under attachment in the Southern District of Georgia (the "Funds") in the event that a default is found against Defendants, or if Plaintiffs' Summary Judgment Motion is granted unopposed. A stay pending appeal should issue where the equities favor maintaining the status quo and the movant shows a likelihood of success as well as irreparable harm. The loss of security constitutes an irreparable harm to a maritime plaintiff or intervenor. If the Funds are released, Intervenor's appeal will be an empty rite. In contrast, there is negligible comparative harm to Plaintiffs as the Funds will reside in the Court registry. Moreover, Plaintiffs have already been made whole for the advances for *custodia legis* which have been ordered returned to Plaintiffs. Dkts. 81, 97. And there is a strong public interest in allowing Intervenor's appeal to be decided before disbursing the substitute *res* to Plaintiffs on the basis of an unopposed summary judgment motion to which Intervenor intends to present several defenses.[3]

Therefore, Intervenor respectfully submits that this Court should 1) stay adjudication of Plaintiffs' Motion for Summary Judgment in this action during the pendency of Intervenor's appeal, and/or 2) issue a stay order preventing the release of the Funds pending the Eleventh Circuit's decision on Intervenors' interlocutory appeal.

---

[3] The current record already evidences serious, if not fatal flaws in Plaintiffs' lien claims with respect to both the mortgage itself as well as the alleged breach of the underlying obligations by Defendants.

4

## ARGUMENT

I. **THIS COURT SHOULD STAY ADJUDICATION OF PLAINTIFFS' CLAIMS AND THE DISBURSEMENT OF FUNDS PENDING RESOLUTION OF INTERVENOR'S APPEAL**

It is "beyond question that a district court has the power to grant a stay of its own order pending the determination of an appeal therefrom." *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010) (citation omitted). In determining whether to issue a stay pending appeal "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 432 (2009); see also *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Courts balance the equities of these four factors in evaluating whether to grant a stay pending appeal. *See, e.g., Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). A balancing of these factors weighs in favor of a stay pending appeal.

Where the potential irreparable harm to the movant is great enough, "a court will not require a ***strong*** showing that the applicant is likely to succeed on the merits." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed. Cir. 1990) (quoting *Hilton*, 481 U.S. at 776) (internal quotation marks omitted) (emphasis added). Rather, only a ***fair*** showing of likelihood of success is required when weighed against a significant harm. *See id.* (collecting cases on the sliding standard). Notably:

> [A] movant need not convince a district court that it is more likely than not that the appeal will succeed. Were this the standard, a stay would be warranted only in the unlikely event a movant could persuade the district judge that his or her decision was probably incorrect. The rule does not impose so onerous a burden on stay movants. Instead, to show a likelihood of success in the appeal, a movant must demonstrate that its appeal raises a substantial legal question.

5

*MicroStrategy, Inc. v. Bus. Objects, S.A.*, 661 F. Supp. 2d 548, 559 (E.D. Va. 2009) (citation and internal quotation marks omitted).

In the maritime context, courts routinely grant permanent and temporary stays of district courts orders pending appeal, particularly where the order affects a party's attachment rights. *See, e.g., Scanscot Shipping Services (Deutschland) GmbH v. Metales Tracomex Ltd.*, No. 08 Civ. 7505 (PGG) (S.D.N.Y. Dec. 23, 2009) (Power Decl., Ex. 2); *Panamax Bulk AS v. Dampskibsselskabet Norden AS*, No. 08 Civ. 8601 (JSR) (S.D.N.Y. Dec. 7, 2009) (stay) (Power Decl., Ex. 3); *Carolina Shipping Ltd. v. Renaissance Ins. Group Ltd.*, No. 08 Civ. 4711 (BSJ) (S.D.N.Y. Sept. 10, 2008) (Power Decl., Ex. 4).[4] Preserving the *status quo* with respect to attachment rights and priorities in maritime cases is paramount, and the slight delay to adjudicating the merits of Plaintiffs' summary judgment motion is minimal compared to the irreparable harm to be suffered by Intervenor without the requested stay.

### A. INTERVENOR HAS AT LEAST A SUBSTANTIAL CASE ON THE MERITS, WHICH SATISFIES THE LIKELIHOOD OF SUCCESS STANDARD

A stay may be "granted upon a lesser showing of a 'substantial case on the merits' when 'the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay." *Garcia-Mir*, 781 F.2d at 1453 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)). This takes into account the fact that the district court "has already decided the merits of

---

[4] The vast majority of Rule B precedent has issued from the Second Circuit and the Southern District of New York, especially during the last decade during the time period in which electronic fund transfers (i.e., wire transfers) were capable of Rule B attachment under *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002), *overruled by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). As a result, U.S. District Courts and Circuit Courts in other regions of the country nevertheless cite to Second Circuit and SDNY precedent in the area of maritime attachment law. *See, e.g., Jensen v. Rollinger*, No. SA:13-cv-1095, 2014 WL 4539660, at *5 n. 2 (W.D. Tex. Sept. 11, 2014) (stating, in citing Second Circuit maritime attachment precedent, that "[c]ourts within the Fifth Circuit have noted the long history of maritime attachments in the Second Circuit.") (citing *Eitzen Bulk A/S v. Capex Indus., Ltd.*, CIV. A. 10-395, 2010 WL 5141257, at *2 (E.D. La. Dec. 13, 2010) (same)).

the legal issue," such that the moving party cannot reasonably be required to convince the district court that "the appeal would probably be successful." *Ruiz*, 650 F.2d at 565. Here, Intervenor has made a strong showing that it is likely to succeed on appeal and, in any event that it has at least a substantial case on multiple issues. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (required showing can be made by demonstrating that a "serious" legal question is involved).

### 1. DHL Has a Substantial Interest Meriting Intervention Because it Has a Security Interest in the Specific Funds on Deposit Pursuant to Rule B

Federal Rule of Civil Procedure 24(a) permits a party to intervene as a matter of right where (1) the motion is timely; (2) the movant claims an interest relating to the property or transaction which is the subject of the action; (3) the movant's interest relating to the property may be impaired or impeded; and (4) the movant's interest is not adequately represented by existing parties. Fed. R. Civ. P. 24(a). To decide if a movant has a legally protectable interest, a court must be flexible, with focus on the particular facts and circumstances of the case. *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014). As set forth above, DHL obtained a writ of attachment from this Court and duly served the writ upon the substitute custodian of the Vessel (as required by the order) on August 5, 2016. "What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." *United States v. South Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991).

Despite the Court's statement that there is no support that a Rule B attachment created a property right sufficient to justify a right of intervention, Intervenor is likely to succeed on the merits of its appeal on the basis that it does have a protectable interest which it possesses or "owns" under Rule B, and is protectable under Fed. R. Civ. P. 24. Contrary to the Court's conclusion, Rule B attachment does create a property interest. *Aurora Maritime Co., Ltd. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 46 (2d Cir. 1996) (noting that once property is attached under

7

Rule B, a limited "property right" is created); *see also Jensen v. Rollinger*, 2014 WL 4539660, *5 (W.D. Tex. Sept. 11, 2014) (citing *Aurora*). Indeed, if not a property interest, Rule B attachment certainly preserves a party's security interest, long recognized by Federal Maritime law, which is a sufficient "interest" in need of protection through intervention. *E.g., Oceanfocus Shipping Ltd. v. Naviera Humboldt S.A.*, 962 F.Supp. 1481, 1486 (S.D. Fla. 1996) (recognizing that Rule B attachment preserves a party's "security interest").

Of course, this important interest is why intervention is routinely permitted in order to challenge another party's right to a fund and to determine priority of claims in the Rule B and C attachment and arrest context. *See Valentino v. Rickners Rhederei, G.m.B.H.*, 417 F.Supp. 176, 177 (E.D.N.Y. 1976) (where claimant intervened to oppose plaintiffs' motion for disbursement of funds, in order to preserve its priority of lien on funds); *In re McLean Industries*, 74 B.R. 589 (S.D.N.Y. Bnkr. 1987) ("intervention in a pending arrest proceeding entitled the intervenor to oppose the arresting party's claim"); *Evridiki Navigation Inc. v. Sanko SS Co Ltd.*, 880 F. Supp. 2d 666 (D. Md. 2012) (wherein many parties intervene to assert *in rem* and other claims against the attached vessel on various claims which had not yet been proven). Indeed, the interest of a maritime claimant exists even prior to perfecting any Rule B attachment. Property need not even be attached by the adverse claimant prior to intervention. *See Hausler v. J.P. Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 541 n. 15 (S.D.N.Y. 2010) (noting that any adverse claimant shall have the opportunity to intervene and assert a priority claim against the funds attached pursuant to Rule B).

### 2. DHL's Security Interest in the Funds is Not Speculative

Plaintiffs with an interest against a specific fund pursuant to a pending litigation are not required to have already prevailed in their action in order to intervene. *See TIG Specialty Ins. Co.*

8

*v. Financial Web.com, Inc.*, 208 F.R.D. 336, 338 (M.D. Fla. 2002) (where intervenors could be deprived of a source from which to recover should they prevail on their claims to the fund); *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007) (en banc) ("Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation"); *see also* cases cited by Intervenor in its reply memorandum (Dkt. 89 at 5). This is particularly true in the unique <u>*prejudgment*</u> attachment context of the Supplemental Admiralty Rules, which does not require a determination of liability in order for a Plaintiff to be entitled to an attachment. *See cases cited, supra*, permitting intervention on basis of maritime attachment security interest. This is because the security interest in the attached funds is created prior to adjudication on the merits of a party's claims.

Although the Court relies heavily of *Mt. Hawley Ins. Co. v. Sandy Lake Properties*, 425 F.3d 1308 (11th Cir. 2005), the prevailing authority in this Circuit, the case is factually distinguishable where a nonparty sought to intervene in a declaratory action regarding an insurance policy, but had no protectable property interest in the policy.[5] Thus, the interest was found to be "speculative" because any right to or interest in the policy funds was dependent on a finding of liability in the intervenor's separate action. However, that case had no security interest at issue. By contrast, as set forth above, DHL <u>*does*</u> have a protectable property interest and security interest in the attached funds pursuant to its Rule B writ of attachment served on the Vessel prior to its sale. The writ of attachment already having been properly ordered, that interest is not "speculative," rather, it already exists and has been perfected against the property.

---

[5] Intervenor does not argue here that it has rights arising under the alleged ship mortgages or the alleged underlying debt obligations of Plaintiffs, as the intervenors did in *Mt. Hawley Inc.* The claim asserted by DHL is against the substitute *res*.

9

To the extent that this Court has instead performed an analysis as to whether DHL's <u>recovery</u> (rather than its interest) is speculative, this is an improper analysis. Nevertheless, Intervenor submits that its recovery is not unduly speculative to be dismissed by this Court out of hand at this stage. The Court set forth four findings which must be made in order to establish DHL's right to collect on the Funds. Dkt. 94 at 7-8. These findings include, 1) the underlying liability of DHL to its contractual counterparty; 2) indemnification by Newlead of the damages; 3) alter ego liability; and 4) that Rule B attachment was proper based on the aforementioned claims. *Id.* As set forth in the Complaint filed in the DHL action (Case No. 16-cv-123, Dkt. 1), the Hong Kong arbitration proceeding between DHL and its subcharterer will determine whether the cracking in the hull of the chartered vessel was a breach of contract for failure to maintain a seaworthy vessel. Dkt. 1 at para. 20. It is hardly speculative to suppose that a cracking vessel will be found to render a vessel unseaworthy. That Defendants are contractually bound to indemnify DHL for providing a vessel which was cracking at the hull such that it was not permitted entry into the port in Australia, is also hardly speculative. 16-cv-123, Dkt. 1 at ¶ 16. Indeed, arbitration has been commenced in London against Newlead. Power Decl. at ¶ 4, Ex. 1. As head owner of the chartered vessel, Defendants' liability is governed by the same standard which was applied against DHL in its subcharter (where it acted as nominal owner). An award of liability against Defendants and in favor of DHL will be issued at some point after the next 90 days, particularly if Defendants fail to participate in the London arbitration which seems likely at this juncture.

**B.   INTERVENOR WILL BE IRREPARABLY HARMED ABSENT A STAY**

"[L]oss of appellate rights is a quintessential form of prejudice. Thus, where denial of a stay pending appeal risks mooting any significant claims of error, the irreparable harm requirement is satisfied." *In re Adelphia Communs. Corp.*, 361 B.R. 337, 347–48 (S.D.N.Y. 2007) (granting

stay). "[F]ailure to issue an injunction pending appeal, therefore, could strip the Court of jurisdiction over this case and deprive Plaintiff forever of something of great value: his day in a court of law. That circumstance alone presents a significant risk of irreparable harm to Plaintiff." *Gonzalez ex rel. Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000) (granting injunction).

"As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Int'l Chem. Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir. 1999). However, the loss of pre-judgment security afforded to Intervenor by means of a maritime attachment constitutes irreparable harm, even though the ultimate loss would be monetary. *See, e.g., Centauri Shipping Ltd. v. Western Bulk Carriers KS,* No. 07-cv-4761 (S.D.N.Y. Oct. 12, 2007) (Power Decl., Ex. 5); *Eitzen Bulk A/S v. Capex Industries A/S,* No. 09-1987-cv (2d Cir. June 9, 2009) (Power Decl., Ex. 6); *Scanscot Shipping* (Power Decl., Ex. 2). As Justice Frankfurter noted in the context of a maritime attachment vacatur action: "[a]ppellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." *Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A.,* 339 U.S. 684, 689 (1950).

This rule makes eminent sense as the fundamental justification underlying maritime attachments is that maritime entities are peripatetic creatures that may "dissipate[ ] or hide[ ] their assets thereby unfairly depriving plaintiff of the security Rule B is intended to confer." *Sonito Shipping Co. v. Sun United Maritime Ltd.,* 478 F.Supp. 2d 532, 542 (S.D.N.Y. 2007); *accord Trans-Asiatic Oil S.A. v. Apex Oil Co.,* 743 F.2d 956 (1st Cir. 1984) (citing *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottachhi S.A. de Navegacion,* 732 F.2d 1543, 1548 (11th Cir. 1984)).

Here, if a stay is not granted, as discussed above, Plaintiffs will likely recover the full amount on deposit in the registry despite Intervenor's priority claim to the funds, simply because Defendants have abandoned their defense of Plaintiffs claims and this Court intends to issue a default. This will leave Intervenor nothing against which to apply its attachment order. This appeal seeking intervention in the action would become, in the Supreme Court's own words, an "empty rite" if there is no security against which to enforce Intervenor's claim.

### C. A STAY PRESERVING THE STATUS QUO WILL NOT SUBSTANTIALLY INJURE PLAINTIFFS

While the denial of a stay would irreparably injure Intervenor, it would at most result only in delay to Plaintiffs if Plaintiffs were to ultimately succeed on the priority issue of claims against the Funds. "A mere assertion of delay does not constitute substantial harm." *United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003); *see also Richard Feiner & Co., Inc. v. Turner Entm't Co., MGM/UA*, 98 F.3d 33 (2nd Cir. 1996) ("Where unreasonable delay has occurred, courts have concluded that such delay is suggestive of a lack of irreparable harm").

Further, where the funds remain in the Court registry pending the distribution to the rightful priority claimant, there is no harm. *See Am. Ass'n of People with Disabilities v. Hood*, No. 3:01CV1275-J, 2004 WL 1041536 at *2 (M.D. Fla. Apr. 16, 2004) (noting that a serious irreparable injury to the moving party outweighs a situation that is not the "optimal" status quo for the opposing party.); *Panamax Bulk AS* (Power Dec., Exhibit 3) (granting stay where Defendant's funds would be placed in an interest-bearing Escrow Account until the conclusion of the proceedings). Accordingly, Appellee will not suffer harm if a stay is granted.

### D. THE PUBLIC INTEREST SUPPORTS A STAY

To satisfy the public interest factor of the stay analysis, Intervenor need only show that granting a stay pending appeal "will not harm the public interest." *Fla. Land Title Co. v. Martinez*,

No. 93-1779-CIV-T-17C, 1996 WL 73386, at *3 (M.D. Fla. Jan. 26, 1996); *see also In re Albicocco*, No. 06-CV-3409 (JFB), 2006 WL 2620464, at *4 (E.D.N.Y. Sept. 13, 2006). Here, the public interest actually weighs in favor of granting a stay. There is a strong due process interest in protecting litigants' right to meaningful appellate review. Permitting the release of the security without giving Intervenor a chance to appeal this Court's decision would make any appeal an empty rite and would make this Court's decision effectively unappealable. *Swift & Co. Packers*, 339 U.S. at 689.

## CONCLUSION

For the foregoing reasons, Intervenor DHL Project & Carriers Ltd. respectfully requests this Court to enter an order staying the adjudication of Plaintiffs' Motion for Summary Judgment, and staying the disbursement of funds to Plaintiffs on their claims in this action, with the exception of approved *custodia legis* expenses authorized by this Court.

This 11th day of October, 2016.

BRENNAN WASDEN & PAINTER LLC

By: /s/ Travis D. Windsor
William E. Dillard
State Bar No. 222030
Travis D. Windsor
State Bar No. 770441

*Attorneys for Plaintiff DHL Project & Chartering Limited*

P.O. Box 8047
Savannah, Georgia 31412
(912) 232-6700
FAX (912) 232-0799
bdillard@brennanwasden.com
twindsor@brennanwasden.com
565-6

        HOLLAND & KNIGHT LLP
        James H. Power *(pro hac vice forthcoming)*
        31 West 52nd Street
        New York, NY 10019
        Phone: (212) 513-3200
        Fax:  (212) 385-9010
        Email: james.power@hklaw.com

*Of Counsel*