IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

RAY CAPITAL INC.; OPPENHEIM      *
CAPITAL LTD.; CHEYENNE HOLDINGS  *
LTD.; and LABROY SHIPTRADE       *
LIMITED,                         *
                                 *
     Plaintiffs,                 *
                                 *
          v.                     *    CV 416-093
                                 *
M/V NEWLEAD CASTELLANO, IMO NO.  *
9686338, her engines, tackle,    *
equipment, furniture,            *
appurtenances, etc., *in rem*,   *
and NEWLEAD CASTELLANO LTD.,     *
                                 *
     Defendants.                 *

O R D E R

Presently before the Court is Plaintiffs' motion for summary judgment. (Doc. 43.) The Clerk of Court gave Defendants timely notice of the summary judgment motion and the summary judgment rules, its right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 45.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. Defendants have wholly failed to respond to Plaintiffs' motion for summary judgment; with the time for

filing materials in opposition having expired, the motion is ripe for consideration.[1] Plaintiffs' motion, therefore, is deemed unopposed. LR 7.5, SDGa. ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion."). Further, all material facts set forth in Plaintiffs' statement of material facts ("PSMF") (doc. 44) are deemed admitted for the purpose of this motion because Defendants have failed to controvert them by filing their own statement of facts or any other materials in opposition. LR 56.1, SDGa. ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party."); see also FED. R. CIV. P. 56(c)(1) & (e)(2). Upon due consideration and for the reasons that follow, the Court hereby **GRANTS** Plaintiffs' motion for summary judgment.

## I. BACKGROUND

The present dispute arises out of Defendants' default and/or other breaches of several financing transactions and related instruments executed in favor of Plaintiffs. Plaintiffs each hold a promissory note executed by non-party Newlead Holdings, Ltd. ("NH") in favor of the respective Plaintiffs. (PSMF ¶ 1; Tsouvelekakis 05/25/2016 Decl., Doc. 28-2, ¶ 11.)

---

[1] Defendants' response to Plaintiffs' motion for summary judgment was due on or before November 4, 2016. (See Doc. 95, at 2.)

2

More particularly, Plaintiff Ray Capital Inc. ("Ray") holds a note dated December 27, 2013 in the principal amount of $6,000,000.00 USD executed by NH in favor of Ray, as subsequently amended (the "Ray Note"). (PSMF ¶ 1; Tsouvelekakis 05/25/2016 Decl. ¶ 11; Doc. 18-1.) Plaintiff Oppenheim Capital Ltd. ("Oppenheim") holds a note dated August 4, 2014 in the principal amount of $2,499,955.98 USD executed by NH in favor of Oppenheim, as subsequently amended (the "Oppenheim Note"). (PSMF ¶ 1; Tsouvelekakis 05/25/2016 Decl. ¶ 11; Doc. 18-2.) Plaintiff Cheyenne Holdings Ltd. ("Cheyenne") holds a note dated September 21, 2014 in the principal amount of $1,250,000.00 USD executed by NH in favor of Cheyenne, as subsequently amended (the "Cheyenne Note"). (PSMF ¶ 1; Tsouvelekakis 05/25/2016 Decl. ¶ 11; Doc. 18-3.) Plaintiff Labroy Shiptrade Limited ("Labroy") holds a note dated May 26, 2015 in the principal amount of $1,215,000.00 USD executed by NH in favor of Labroy (the "Labroy Note", and collectively with the Ray Note, the Oppenheim Note, and the Cheyenne Note, the "Notes"). (PSMF ¶ 1; Tsouvelekakis 05/25/2016 Decl. ¶ 11; Doc. 18-4.) Each of the Notes is secured by a guarantee and indemnity agreement executed by NH's wholly-owned subsidiary, Defendant Newlead Castellano Ltd. ("NC"), in favor of the respective Plaintiff creditor (each, a "Guaranty"). (PSMF ¶ 6; Doc. 18-5.) Each Note and Guaranty is secured by a mortgage over Defendant M/V Newlead

3

Castellano, IMO No. 9686338 (the "Vessel") executed by NC in favor of the respective Plaintiff creditor (each, a "Mortgage").[2] (PSMF ¶ 7; Doc. 18-6; see also Doc. 18-7.)

NH subsequently defaulted on the Ray Note by failing to tender payments due thereunder by the maturity date of December 27, 2015. (PSMF ¶¶ 9-10; Livanos Decl., Doc. 15-1, ¶ 23.) NH's default on the Ray Note entitled Ray to call on NC's Guaranty. (Doc. 18-5, 59-80, ¶ 3.) Accordingly, Ray sent notices of default to NH and NC on December 29, 2015 and January 8, 2016, respectively. (Tsouvelekakis 05/25/2016 Decl. ¶ 32; Livanos Decl. ¶ 25; compare Am. Compl. ¶¶ 53, 56, with Answer, Doc. 31, ¶¶ 53, 56.) NH and/or NC failed to cure their respective defaults within the requisite cure period. (PSMF ¶ 11; Tsouvelekakis 05/25/2016 Decl. ¶ 32.) NC also defaulted on the terms of the Mortgages by, inter alia: (a) allowing significant debt to accumulate against the Vessel; (b) failing to pay the Vessel's crew in a timely manner; (c) failing to maintain insurance cover on the Vessel; (d) failing to provide audited financial statements to Plaintiffs where required; and (e) failing to maintain the Vessel in a complete state of repair. (PSMF ¶ 13; Swimmer 05/25/2016 Decl., Doc. 28-1, ¶¶ 8-9, 18-27; Tsouvelekakis 05/25/2016 Decl. ¶¶ 37-38; Tsouvelekakis

---

[2] Each Mortgage is registered with the Vessel's flag state, the Republic of Liberia. (PSMF ¶ 8; Doc. 18-7, at 2.) Notably, Ray's Mortgage is in first position, followed by Cheyenne's Mortgage, then Oppenheim's Mortgage, and finally Labroy's Mortgage. (Doc. 18-7, at 2.)

07/08/2016 Decl., Doc. 43-2, ¶¶ 6-7, 10-12 & Ex. 1; see also Doc. 18-6, at 2-30, 64-93, 122-53, 157-85.) NC also failed to cure these additional defaults. (PSMF ¶¶ 15-24.)

Based upon NH and NC's failure to cure their respective defaults and/or breaches, Plaintiffs initiated the instant action on April 19, 2016. (Doc. 1.) Upon the filing of Plaintiffs' verified complaint, the Court entered orders directing the issuance of a warrant for the maritime arrest – and process for the maritime attachment and garnishment – of the Vessel. (Docs. 1, 8, and 10.) On May 3, 2016, NC filed a motion to vacate the arrest and attachment of the Vessel. (Doc. 15.) On July 14, 2016, the Court entered an order vacating the arrest of the Vessel, but denying the vacatur of the attachment of the Vessel. (Doc. 47.) On July 15, 2016, Plaintiffs filed an Emergency Motion for Reconsideration seeking to reinstate the arrest of the Vessel. (Doc. 49.) On August 4, 2016, the Court reinstated the arrest of the Vessel. (Doc. 64.) The Vessel was subsequently sold to non-party Strategic Shipping, Inc. ("Strategic") via interlocutory admiralty sale for $7,400,000.00 USD (plus the current market price of any fuel or gas oil remaining on board the Vessel at the time of its delivery to Strategic), with that sale being confirmed by this Court on August 16, 2016 and the Vessel's sales proceeds (i.e., the substitute *res*) (the "Proceeds") being deposited in the registry

5

of this Court.³ (Docs. 73, 75; see also Docs. 48, 65, 66, 68, 70, 79.)

On July 8, 2016, Plaintiffs filed their present motion for summary judgment. (Doc. 43.) On July 21, 2016, so as to allow

---

³ More specifically, on May 26, 2016, Plaintiffs filed a motion seeking, *inter alia*, the interlocutory sale of the Vessel, which the Court granted on August 8, 2016. (Docs. 28, Doc. 48, as subsequently amended in part by the Court's Order dated August 4, 2016, Doc. 65 (as amended, the "Order for Sale").) As set forth in the Order for Sale, the interlocutory sale of the Vessel was warranted because of: (1) the great expense being incurred to keep the Vessel seaworthy (thereby deteriorating its value as collateral for Plaintiffs and other creditors); and (2) the limited tools available to the Vessel's crew to prevent corrosion and other physical deterioration. (Doc. 48.) See FED. R. CIV. P., SUPP. ADM. R. E(9)(a). Notice of the sale of the Vessel was duly published by the United States Marshal for the Southern District of Georgia, Savannah Division (the "Marshal") pursuant to Local Admiralty Rule 4. (Doc. 70-1.) On August 8, 2016, the sale of the Vessel was duly conducted in accordance with the Order for Sale by the Marshal at the premises of the entrance to the United States District Court, Savannah, Georgia. (Doc. 66.) At the sale, Strategic presented a bid of $7,400.000.00 USD (plus the current market price of any fuel or gas oil remaining on board the Vessel at the time of its delivery to the successful bidder) (collectively, the "Sale Price") and was the highest bidder capable of performing at the auction. (Id.) On August 8, 2016, Strategic presented $1,000,000.00 USD to the Marshal as security for payment of the remainder of its bid. On August 11, 2016, Strategic made a wire transfer to the Clerk of Court in the amount of $6,400,000.00 USD to be applied towards its bid upon the successful confirmation of the sale held on August 8, 2016. The Court confirmed the sale of the Vessel to Strategic on August 16, 2016 (the "Confirmation Order"). (Doc. 75.) As set forth in the Confirmation Order, any claims in the Vessel existing on the date of the Confirmation Order - including those claims held by Plaintiffs and other lienors - were terminated and the Vessel was sold to Strategic "free and clear of all liens and encumbrances," but any claims terminated thereby "would attach in the same amount and in accordance with their priorities to the [Proceeds] as provided in 46 U.S.C. § 31326(b) . . . ." (Id. at 7-8.) On August 19, 2016, the Marshal executed and delivered to Strategic a Bill of Sale for the Vessel. (Doc. 79.) The Vessel was delivered to Strategic on August 21, 2016. (Swimmer 09/27/2016 Decl., Doc. 86-1, ¶ 8.) Notably, during the pendency of this action, Plaintiffs have filed several motions seeking the authorization of certain *in custodia legis* expenses incurred by Plaintiffs during the Vessel's arrest from April 19, 2016 through August 21, 2016. (Docs. 28, 69, 86.) The Court has granted each of these motions, for a total amount of authorized *in custodia legis* expenses incurred by Plaintiffs to date of $704,690.91 USD. (Docs. 48, 81, 97.) Plaintiffs have also filed several motions requesting the disbursement of funds from the Court's registry (*i.e.*, the Proceeds) to reimburse them for the funds they have advanced to satisfy these *in custodia legis* expenses. (Docs. 77, 101.) The Court subsequently granted these motions and directed the Clerk to disburse a total of $704,690.91 USD from the Proceeds to counsel for Plaintiffs' escrow account. (Docs. 81, 108.)

Defendants to conduct factual discovery, Defendants were granted until October 14, 2016 to respond to Plaintiffs' motion for summary judgment. (Doc. 55, at 2.) On September 16, 2016, Defendants' counsel filed their motion to withdraw as counsel of record after having provided Defendants with notice of their intent to withdraw on August 30, 2016. (Doc. 83.) On October 5, 2016, the Court granted counsel for Defendants' motion to withdraw; in its Order, the Court specifically noted that upon their counsels' withdrawal, Defendants would be left unrepresented and therefore unable to proceed.[4] (Doc. 95.) To allow Defendants sufficient time to secure new counsel and respond to Plaintiffs' motion for summary judgment, the Court granted Defendants until November 4, 2016 to respond to Plaintiffs' motion for summary judgment.[5] (Id. at 2.) To date, Defendants have failed to: (a) have new counsel enter a notice of appearance in this case; or (b) respond to or otherwise defend against Plaintiffs' motion for summary judgment.

---

[4] See Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985) (a corporation may not proceed *pro se* or by a representative or agent of the corporation).

[5] In its Order, a copy of which was served upon NC's Vice President of Claims and Risk Management, Mr. Spyros Theodoropoulos, the Court explicitly stated that Defendants' "[f]ailure to timely respond to Plaintiffs' motion for summary judgment may result in Plaintiffs' motion for summary judgment being deemed unopposed." (Doc. 95, at 2.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259, 1260 (11th Cir. 2004); FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal citation omitted).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record before the court] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating that there is indeed a genuine issue as to the material facts of its case. <u>Clark v. Coats &</u>

Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Matsushita, 475 U.S. at 587. The Court must also avoid weighing conflicting evidence. Anderson, 477 U.S. at 255; McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); Pepper v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989). Where the non-moving party does not respond to a motion for summary judgment, the Court "may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); see also United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004) ("[S]ummary judgment,

9

even when unopposed, can only be entered when appropriate. . . . Thus, the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." (internal quotations and citations omitted)).

## III. DISCUSSION

### A. The Ray Note & Related Guaranty & Mortgage

The Ray Note is governed by New York law. (Doc. 18-1, at 8.) Under New York law, "[t]o establish *prima facie* entitlement to judgment as a matter of law on the issue of liability with respect to a promissory note, a plaintiff must show the existence of a promissory note executed by the defendant and the failure of the defendant to pay in accordance with the note's terms." Griffon V, LLC v. 11 E. 36th, LLC, 934 N.Y.S.2d 472, 474 (N.Y. App. Div. 2011) (citations omitted). Similarly, "[t]o establish *prima facie* entitlement to judgment as a matter of law on the issue of liability with respect to a guaranty, a plaintiff must submit proof of the underlying note, a guaranty, and the failure of the defendant to make payment in accordance with the terms of those instruments."[6] Id. (citations omitted).

---

[6] While Ray's Guaranty states that it is to "be governed and interpreted in accordance with English law" (doc. 18-5, at 20), the Court has no reason to believe that English law differs materially from that of the State of New York with regards to the enforcement of guaranty agreements. Moreover, because a default upon the Ray Note itself constitutes a default upon the

10

"Once the plaintiff submits evidence establishing its *prima facie* case, the burden then shifts to the defendants to submit evidence establishing the existence of a triable issue of fact with respect to a bona fide defense." Id. (citations omitted). Here, Ray has established its *prima facie* entitlement to judgment as a matter of law on the Ray Note and related Guaranty by submitting proof of: (a) NH's execution of the Ray Note and default in payment thereunder; and (b) NC's execution of the related Guaranty securing the Ray Note and default in payment thereunder. (PSMF ¶¶ 1, 6, 9, 11, 24; Doc. 18-1; Doc. 18-5, at 59-80; Livanos Decl. ¶ 25; Tsouvelekakis 05/25/2016 Decl. ¶ 32; Tsouvelekakis 07/08/2016 Decl. ¶ 8 & Ex. 1.) Defendants have put forth no evidence to rebut the aforementioned showings or otherwise demonstrate a genuine issue of material fact.

A default on any term of a preferred mortgage entitles the mortgagee to "enforce the preferred mortgage lien in a civil action *in rem* for a documented vessel, a vessel to be documented under chapter 121 of this title, a vessel titled in a State, or a foreign vessel."[7] 46 U.S.C. § 31325(b)(1); see also 46 U.S.C.

---

related Mortgage and entitles Ray to foreclose on the Vessel (see Doc. 18-6, at 2-30, ¶¶ 1, 4, 7), it is immaterial for the purposes of the Court's instant review as to whether NC in fact defaulted upon Ray's Guaranty.

[7] A "preferred mortgage" includes - for the purposes of 46 U.S.C. §§ 31325 & 31326 - "a mortgage, hypothecation, or similar charge that is established as a security on a foreign vessel if the mortgage, hypothecation, or similar charge was executed under the laws of the foreign country under whose laws the ownership of the vessel is documented and has been registered under those laws in a public register at the port of registry of the vessel or at a central office." 46 U.S.C. § 31301(6)(B).

§ 31325(a) ("A preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel."). Here, Plaintiff Ray has produced sufficient evidence that the ownership of the Vessel was documented in the Vessel's flag state, Liberia, and that Ray's Mortgage was registered in Liberia and governed by Liberian law.[8] (Doc. 18-6, at 2-30, ¶ 19; Doc. 18-7.) Ray has therefore adequately evidenced that their Mortgage entitles them to a preferred mortgage lien. Ray has further demonstrated – and the Court hereby concludes – that, under the terms of the Mortgage securing the Note and Guaranty, NH and NC's aforementioned respective defaults on the Ray Note and Guaranty entitles Ray to foreclose on the Vessel (and therefore, the Proceeds) up to the maximum of the amount secured thereby.[9] (See Doc. 18-6, at 2-30.) As of July 8, 2016, the principal and interest due and payable under the Ray Note and Guaranty – and therefore secured by the Vessel (and therefore, the Proceeds) – is $1,696,815.00 USD, exclusive of costs, fees, and expenses. (PSMF ¶ 24; Tsouvelekakis 07/08/2016 Decl. ¶ 8 & Ex. 1.) Again, Defendants have put forth no evidence to rebut the aforementioned showings or otherwise demonstrate a genuine issue of material fact.

---

[8] Pursuant to the terms of Ray's Mortgage, Ray also retained its rights to bring suit in any court of competent jurisdiction and to arrest the Vessel wherever it may be found. (See Doc. 18-6, at 2-30, ¶ 19.)
[9] The amount secured by Ray's Mortgage is $1,861,412.00 USD plus interest, expenses and costs. (Doc. 18-6, at 2-30, ¶ 4.4.)

12

Therefore, Ray is entitled to summary judgment against Defendants for their default on the Ray Note & related Guaranty and Mortgage and is entitled to foreclose on the Vessel (and therefore, the Proceeds).[10]

## B. The Mortgages

Plaintiffs are each entitled to summary judgment against Defendants for their breaches of the Mortgages. As previously noted, default on any term of a preferred mortgage entitles the mortgagee to enforce their preferred mortgage lien in a civil action *in rem*. 46 U.S.C. § 31325(b)(1); see also 46 U.S.C. § 31325(a). Here, Plaintiffs have produced sufficient evidence that the ownership of the Vessel was documented in the Vessel's flag state of Liberia and that their respective Mortgages were registered in Liberia and governed by Liberian law, and therefore have adequately demonstrated that their Mortgages are preferred mortgage liens on the Vessel under 46 U.S.C. § 31301(6)(B).[11] (See Doc. 18-7; Doc. 18-6, at 2-30, ¶ 19; Id. at 64-93, ¶ 19; Id. at 122-53, ¶ 19; Id. at 157-85, ¶ 19.) Plaintiffs have further demonstrated Defendants' default on various terms of each and every Mortgage as well as Defendants'

---

[10] Ray is also entitled to judgment as a matter of law in regards to Defendants' independent breaches of the terms of Ray's Mortgage. See Section III.B, *infra*.
[11] Pursuant to the terms of Plaintiffs' respective Mortgages, Plaintiffs also retained their rights to bring suit in any court of competent jurisdiction and to arrest the Vessel wherever it may be found. (See Doc. 18-6, at 2-30, ¶ 19; Id. at 64-93, ¶ 19; Id. at 122-53, ¶ 19; Id. at 157-85, ¶ 19.)

failure to cure these defaults. (PSMF ¶¶ 13, 15-24; Swimmer 05/25/2016 Decl. ¶¶ 8-9, 18-27; see also Doc. 18-6, at 2-30, 64-93, 122-53, 157-85.) Moreover, Plaintiffs have shown - and the Court hereby concludes - that Defendants' default on the terms of the respective Mortgages entitles Plaintiffs to foreclose on the Vessel up to the maximum of the amount secured thereby pursuant to 46 U.S.C. § 31325.[12] (See Doc. 18-6, at 2-30, 64-93, 122-53, 157-85.) As of July 8, 2016, the principal and interest due and payable under the Mortgages (and the related Notes & Guaranties - and therefore secured by the Vessel (and now, the Proceeds) - are, exclusive of costs, fees, and expenses: (a) the Ray instruments, $1,696,815.00 USD; (b) Cheyenne instruments, $1,181,644.00 USD; (c) the Oppenheim instruments, $2,980,769.00 USD; and (d) the Labroy instruments, $1,448,679.00 USD. (PSMF ¶ 24; Tsouvelekakis 07/08/2016 Decl. ¶ 8 & Ex. 1.) Defendants have put forth no evidence to rebut the aforementioned showings or otherwise demonstrate a genuine issue of material fact. Therefore, Plaintiffs are each entitled to summary judgment against Defendants for their defaults on the respective

---

[12] The amount secured by Ray's Mortgage is $1,861,412.00 USD plus interest, expenses and costs. (Doc. 18-6, at 2-30, ¶ 4.) The amount secured by Cheyenne's Mortgage is $1,009,315.00 USD plus interest, expenses and costs. (Id. at 157-85, ¶ 4.) The amount secured by Oppenheim's Mortgage is $2,547,900.00 USD plus interest, expenses and costs. (Id. at 64-93, ¶ 4.) The amount secured by Labroy's Mortgage is $1,215,000.00 USD plus interest, expenses and costs. (Id. at 122-53, ¶ 4.)

Mortgages and are entitled to foreclose on the Vessel (and therefore, the Proceeds).[13]

### IV. CONCLUSION

Plaintiffs hold promissory notes that are personally guaranteed by Defendant Newlead Castellano Ltd., all of which are secured by preferred mortgages on the Defendant Vessel executed by Newlead Castellano Ltd. These preferred mortgages give Plaintiffs preferred mortgage liens on the Vessel, and upon Defendants' default on the preferred mortgages (and/or the notes and/or guaranties), Plaintiffs are entitled to enforce their preferred mortgage liens against the Vessel via an *in rem* action (as well as to enforce a claim for the outstanding indebtedness secured thereby against the guarantor/mortgagor via an *in personam* action). See 46 U.S.C. § 31325. Defendants having defaulted on the preferred mortgages (and/or the notes and/or guaranties), Plaintiffs have elected to pursue recourse against both the Vessel directly as well as Newlead Castellano Ltd. Plaintiffs have fully evidenced their entitlement to foreclose on the Vessel, and Defendants have failed to rebut the aforementioned showings or otherwise demonstrate a genuine issue

---

[13] Each Plaintiff is also entitled to interest on their respective award calculated from July 8, 2016, through the date of judgment at the rate of ten percent (10%) *per annum* (calculated on a *per diem* basis), plus each Plaintiffs' respective costs and fees. (See Doc. 18-6, at 2-30, ¶ 4; Id. at 64-93, ¶ 4; Id. at 122-53, ¶ 4; Id. at 157-85, ¶ 4; see also Doc. 18-1, at 14; Doc. 18-2, at 2; Doc. 18-3, at 2; Doc. 18-4, at 2.)

of material fact that would prevent the grant of summary judgment to Plaintiffs. Plaintiffs are therefore entitled to summary judgment against the Defendants. The Court having sold the Defendant Vessel at an interlocutory admiralty sale, Plaintiffs are entitled to enforce their preferred mortgage liens against the Proceeds with priority over all other claims against the Proceeds except as otherwise provided in 46 U.S.C. § 31326. As no other claims have been asserted against the Proceeds which would prime Plaintiffs' preferred mortgage liens thereon,[14] Plaintiffs are entitled to satisfy any judgment entered hereon from the Proceeds and thereafter seek a deficiency judgment from Newlead Castellano Ltd. for any deficiency in full payment of their indebtedness hereunder.

Upon the foregoing and due consideration, Plaintiffs' motion for summary judgment (doc. 43) is **GRANTED**. Typically,

---

[14] There have been claims for *in custodia legis* expenses associated with the arrest and attachment of the Vessel which have already been ruled upon and ordered to be reimbursed from the Proceeds. (See Docs. 28, 69, 81, 86, 108; *DHL Project & Chartering Limited v. Newlead Holdings Ltd., et al*, Case No. 4:16-CV-123 (S.D. Ga.) ("DHL Action"), Doc. 38.) These *in custodia legis* reimbursements should be made prior to any disbursements to the Plaintiffs in connection with any judgment entered in connection with the instant grant of summary judgment. While the Court is cognizant of the pending interlocutory appeal of attempted intervenor DHL Project & Chartering Limited ("DHL") – as well as DHL's motion for reconsideration of the vacatur of its Rule B attachment of the Vessel and "Unopposed Motion for Entry of Final Judgment" in the DHL Action, (DHL Action, Docs. 27 & 33) – the Court concludes that DHL's interest, if any, in the Proceeds is subordinate to those held by the instant Plaintiffs because DHL does not have a maritime lien on the Vessel. See 46 U.S.C. § 31326(b) ("Each of the claims terminated under subsection (a) of this section attaches, in the same amount and in accordance with their priorities to the proceeds of the sale, except that . . . the preferred mortgage lien . . . has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens . . . [or] a maritime lien for necessaries provided in the United States."); see also DHL Action, Doc. 38.

the Court would direct the Clerk to enter judgment in favor of Plaintiffs and against Defendants at this time. The Court, however, will first require Plaintiffs to perfect the record with admissible evidence with regards to the balance of their claims against Defendants through the date of this Order, including an itemization of the principal, interest, and costs and expenses each Plaintiff claims under its respective instruments. Plaintiffs **SHALL** file the aforementioned evidence with the Clerk **within ten (10) days of the entry of this Order**. Upon review of the Plaintiffs' forthcoming submission(s), the Court will direct the Clerk to enter judgment in favor of Plaintiffs and direct the disbursement of funds remaining in the registry to counsel for Plaintiffs' escrow account.[15] It is the Court's intention, however, to temporarily stay the execution of this forthcoming judgment for forty-five (45) days from the date of its entry so as to allow the attempted intervenor, DHL Project & Chartering Limited ("DHL"), who has appealed this Court's denial of DHL's motion to intervene in this action to the Court of Appeals for the Eleventh Circuit, to seek an order from the Eleventh Circuit directing this Court to further stay

---

[15] Notably, because Labroy's preferred mortgage lien on the Vessel was lowest in priority relative to the other Plaintiffs' preferred mortgage liens (see Doc. 18-7, at 2; see also Doc. 18-6), any deficiency in funds to be collected from the funds held in the Court's registry in relation to this matter must be borne first by Labroy (followed, if necessary, by Oppenheim, then Cheyenne, and finally Ray). See 46 U.S.C. § 31326(b).

the execution of the aforementioned forthcoming judgment in favor of Plaintiffs should it deem necessary.

Finally, given the Court's entry of summary judgment in favor of Plaintiffs on each of their claims – as well as the Court's rulings denying damages for Plaintiffs' alleged wrongful arrest of the Vessel in its Order dated July 14, 2016 (doc. 47, at 7-8) and subsequent reinstatement of the initial arrest of the Vessel in its Order dated August 4, 2016 (doc. 64) – the Court has serious concerns regarding the viability of Defendants' counterclaim for wrongful arrest. Accordingly, the Court **ORDERS** Defendants to **SHOW CAUSE**, in writing, as to why the Court should not: (a) dismiss with prejudice Defendants' counterclaim against Plaintiffs; and (b) close this case. Defendants **SHALL FILE** this show cause memorandum, through counsel, with the Clerk by no later than **ten (10) days from the date of this Order**. Defendants' failure to file their forthcoming show cause memorandum within this timeframe may result in the dismissal with prejudice of Defendants' counterclaim and the closure of this action without further notice.

The Clerk shall send a service copy of this Order to the following address:

> Newlead Castellano Ltd.
> C/O Spyros Theodoropoulos

Vice President, Claims and Risk Management

83 Akti Miaouli & Flessa Street

185 38 Piraeus, GREECE

**ORDER ENTERED** at Augusta, Georgia, this 20th day of March, 2017.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA