IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

RAY CAPITAL INC.; OPPENHEIM    *
CAPITAL LTD.; CHEYENNE HOLDINGS *
LTD.; and LABROY SHIPTRADE    *
LIMITED,    *
   *
     Plaintiffs,    *
   *
       v.    *       CV 416-093
   *
M/V NEWLEAD CASTELLANO, IMO NO. *
9686338, her engines, tackle,    *
equipment, furniture,    *
appurtenances, etc., *in rem*,    *
and NEWLEAD CASTELLANO LTD.,    *
   *
     Defendants.    *

---

**O R D E R**

---

"Unless sharks come," he said aloud. "If sharks come, God pity him and me."[1]

On March 20, 2017, the Court entered summary judgment in favor of Plaintiffs against Defendants (the "Summary Judgment Order"). (See Doc. 116.) Before entering final judgment in Plaintiffs' favor, however, the Court ordered Plaintiffs to "perfect the record with admissible evidence with regards to the balance of their claims against Defendants through [March 20,

---

[1] Ernest Hemingway, The Old Man and the Sea 68 (1952).

2017], including an itemization of the principal, interest, and costs and expenses each Plaintiff claims under its respective instruments" by no later than March 30, 2017.  (Id. at 17.)  The Court also ordered Defendants to show cause, by no later than March 30, 2017, as to why their counterclaim for wrongful arrest against Plaintiffs should not be dismissed with prejudice and this case closed.  (Id. at 18.)  On March 21, 2017, Plaintiffs filed a supplemental brief outlining the balance of their claims against Defendants and evidence in support thereof.  (Doc. 117.) On March 30, 2017, non-party DHL Project & Chartering Limited ("DHL") filed a motion wherein it: (i) renews its prior attempts to intervene in the present action; (ii) seeks reconsideration of the grant of summary judgment in favor of Plaintiffs; and (iii) purports to respond to the Court's order to show cause directed towards Defendants.[2]  (Doc. 118.)


## I. BACKGROUND

### A. Plaintiffs' Underlying Claims

Plaintiffs each hold a promissory note executed by non-party Newlead Holdings Ltd. in favor of the respective Plaintiffs (each, a "Note").  (PSMF, Doc. 44, ¶ 1; Tsouvelekakis 05/25/2016 Decl., Doc. 28-2, ¶ 11; see also Docs. 18-1 through 18-4.)  Each Note is secured by a guarantee and indemnity

---

[2] To date, Defendants themselves have failed to respond to the order to show cause set forth in the Summary Judgment Order.

agreement executed by Newlead Holdings Ltd.'s wholly-owned
subsidiary, Defendant Newlead Castellano Ltd. ("NCL"), in favor
of the respective Plaintiff creditor (each, a "Guaranty").
(PSMF ¶ 6; Doc. 18-5.) Each Guaranty, in turn, was secured by a
mortgage over Defendant M/V Newlead Castellano, IMO No. 9686338
(the "Vessel") executed by NCL in favor of the respective
Plaintiff creditor (each, a "Mortgage").[3] (PSMF ¶ 7; Doc. 18-6;
see also Doc. 18-7.)

Newlead Holdings Ltd. subsequently defaulted on Plaintiff
Ray Capital's Note by failing to tender payments due thereunder
by the maturity date, which entitled Ray Capital to call on
NCL's Guaranty. (PSMF ¶¶ 9-10; Livanos Decl., Doc. 15-1, ¶ 23;
Doc. 18-5, at 59-80, ¶ 3.) Despite Ray Capital having sent
notices of default to Newlead Holdings Ltd. and NCL, these
entities failed to cure their respective defaults within the
requisite cure period. (PSMF ¶ 11; Tsouvelekakis 05/25/2016
Decl. ¶ 32; Livanos Decl. ¶ 25; compare Am. Compl. ¶¶ 53, 56,
with Answer, Doc. 31, ¶¶ 53, 56.) NCL also breached the terms
of the Mortgages by, inter alia: (a) allowing significant debt
to accumulate against the Vessel; (b) failing to pay the
Vessel's crew in a timely manner; (c) failing to maintain
insurance coverage on the Vessel; (d) failing to provide audited
financial statements to Plaintiffs where required; and (e)

---

[3] Each Mortgage is registered with the Vessel's flag state, the Republic of
Liberia. (PSMF ¶ 8; Doc. 18-7, at 2.)

failing to maintain the Vessel in a complete state of repair. (PSMF ¶ 13; Swimmer 05/25/2016 Decl., Doc. 28-1, ¶¶ 8-9, 18-27; Tsouvelekakis 05/25/2016 Decl. ¶¶ 37-38; Tsouvelekakis 07/08/2016 Decl., Doc. 43-2, ¶¶ 6-7, 10-12 & Ex. 1; see also Doc. 18-6, at 2-30, 64-93, 122-53, 157-85.)   NCL failed to cure these additional breaches.   (PSMF ¶¶ 15-24.)   Based upon Newlead Holdings Ltd. and NCL's failure to cure their respective defaults and/or breaches under the Notes, Guaranties, and/or Mortgages, Plaintiffs initiated the instant action on April 19, 2016.[4]   (Doc. 1.)

### B. DHL's Underlying Claims

On or about October 27, 2011, DHL and non-party Newlead Shipping S.A. entered into a charter party contract for DHL's use of the non-party shipping vessel M/V Newlead Venetico (the "Venetico").   (*DHL Project & Chartering Limited v. Newlead Holdings Ltd., et al.*, Case No. 4:16-CV-123 (S.D. Ga.) (the "DHL Action"), Doc. 1, ¶ 13.)   On December 8, 2011, DHL sub-chartered the Venetico to non-party Zheijiang Materials Industry Fuel Group Co., Ltd. (the "Sub-Charterer") for a shipment of cargo

---

[4] Plaintiffs subsequently amended their complaint such that they now assert the following claims against Defendants: (1) a foreclosure claim pursuant to Ray Capital's promissory note and the Maritime Lien Act and the Ship Mortgage Act, 46 U.S.C. § 31301, *et seq.* ("Act"); (2) a foreclosure claim pursuant to Plaintiffs' preferred mortgages and the Act; (3) a foreclosure claim pursuant to Plaintiff Ray Capital's payment of seamen's wages; and (4) a breach of contract claim pursuant to Plaintiffs' preferred mortgages. (See Doc. 18.)

from Australia to China.  (Id. ¶ 15.)   Shortly after loading of
the Sub-Charter's cargo onto the Venetico on January 4, 2012,
the Venetico was detained by the Australian Maritime Safety
Authority due to various alleged deficiencies.  (Id. ¶ 16.)
Loading eventually resumed on or about March 3, 2012, and the
Venetico commenced her voyage to the discharge port in China on
or about March 5, 2012.   (Id.)   DHL and the Sub-Charterer
subsequently initiated arbitration in Hong Kong, wherein the
Sub-Charterer alleged that it incurred significant losses from
the delayed delivery of its cargo.  (Id. ¶¶ 18-19; see also DHL
Action, Doc. 1-3.)   On May 25, 2016, DHL instituted the DHL
Action against NCL and non-parties Newlead Holdings Ltd.,
Newlead Shipping S.A., Newlead Bulkers S.A., Grand Venetico
Inc., and Newlead Venetico Ltd.[5]  (DHL Action, Doc. 1.)

### C. Plaintiffs' Arrest and Attachment & Interlocutory Sale of Vessel

Upon the filing of Plaintiffs' verified complaint on April
19, 2016 in this case, the Court entered orders directing the

---

[5] DHL's complaint in the DHL Action alleges: (1) a contingent breach of
contract claim against Newlead Shipping S.A., Newlead Bulkers S.A., and Grand
Venetico Inc.; and (2) an alter ego claim against Newlead Holdings Ltd. for
its alleged control of Newlead Shipping S.A., Newlead Bulkers S.A., Grand
Venetico Inc., Newlead Venetico Ltd., and NCL.  (DHL Action, Doc. 1, ¶¶ 21-
69.)  DHL states that its breach of contract claim "is based on an indemnity
claim for an arbitration award which may be issued against DHL in Hong Kong
arbitration.  Thereafter, DHL will pursue recovery against Newlead Shipping
and/or Grand Venetico Inc. in London.  [DHL] brings [the DHL Action] solely
to obtain quasi in rem jurisdiction over [the defendants in the DHL Action]
and security for its claims."  (Id. ¶ 71.)

issuance of a warrant for the maritime arrest – and process for maritime attachment and garnishment – of the Vessel pursuant to Rules B & C of the Supplemental Rules for Admiralty or Maritime Claims.  (Docs. 1, 8, and 10.)  On May 3, 2016, NCL filed a Motion to Vacate Plaintiff's arrest and attachment of the Vessel in which NCL also sought damages resulting from this allegedly wrongful arrest.   (Doc. 15.)   On July 14, 2016, the Court entered an order vacating Plaintiffs' Rule C arrest of the Vessel, but denied vacatur of Plaintiffs' Rule B attachment of the Vessel; the Court also denied NCL's request for damages related to Plaintiffs' arrest of the Vessel.[6]   (Doc. 47.)   On July 15, 2016, Plaintiffs filed an Emergency Motion for Reconsideration seeking to reinstate their arrest of the Vessel, while Defendants subsequently filed a Cross-Motion for Reconsideration seeking the grant of its original Motion to Vacate in its entirety.  (Docs. 49, 59.)  On August 4, 2016, the Court vacated that part of its Order dated July 14, 2016 addressing the arrest of the Vessel and reinstated Plaintiffs'

---

[6] In vacating Plaintiff's arrest of the Vessel, the Court concluded that – despite having demonstrated a valid *prima facie* admiralty claim with regard to its action to foreclose on the Mortgages and therefore their entitlement to attach the Vessel pursuant to Rule B – Plaintiffs had not demonstrated that they held a maritime lien that would entitle them to arrest the Vessel pursuant to Rule C(1)(a).  (Doc. 47, at 3-7.)  In denying NCL's request for damages related to the arrest of the Vessel, the Court held that, *inter alia*, NCL had "not shown that Plaintiffs acted in bad faith, with malice, or with wanton disregard for Defendants' rights" in seeking arrest under Rule C. (Id. at 7-8.)

initial arrest of the Vessel.[7]    (Doc. 64.)    The Vessel was subsequently sold to non-party Strategic Shipping, Inc. ("Strategic") via interlocutory admiralty sale, with that sale being confirmed by this Court on August 16, 2016 and the sales proceeds (*i.e.*, the Vessel's substitute *res*) (the "Proceeds") being deposited in the registry of this Court.[8,9]    (Docs. 73, 75; see also Docs. 48, 65, 66, 68, 70, 79.)

---

[7] In reinstating Plaintiffs' arrest of the Vessel, the Court noted that while Plaintiffs still had not demonstrated that they held a maritime lien on the Vessel, they had shown that they held preferred mortgages on the Vessel and a breach of at least one of those mortgages and thus were entitled to arrest the Vessel pursuant to Rule C(1)(b) in connection with 46 U.S.C. § 31325(b)(1).   (Doc. 64, at 2-5.)   Based on the foregoing and the admiralty claim created by 46 U.S.C. § 31325(b)(2)(A), the Court also denied Defendants' Cross-Motion for Reconsideration. (Id. at 6-7.)

[8] More specifically, on May 26, 2016, Plaintiffs filed a motion seeking, *inter alia*, the interlocutory sale of the Vessel, which the Court granted on August 8, 2016.   (Doc. 28; Doc. 48, as subsequently amended in part by the Court's Order dated August 4, 2016, Doc. 65 (as amended, the "Order for Sale").)   As set forth in the Order for Sale, the interlocutory sale of the Vessel was warranted because of: (1) the great expense being incurred to keep the Vessel seaworthy (thereby deteriorating its value as collateral for Plaintiffs and other creditors); and (2) the limited tools available to the Vessel's crew to prevent corrosion and other physical deterioration.   (Doc. 48.)   See FED. R. CIV. P., SUPP. ADM. R. E(9)(a).   Notice of the sale of the Vessel was duly published by the United States Marshal for the Southern District of Georgia, Savannah Division (the "Marshal") pursuant to Local Admiralty Rule 4.   (Doc. 70-1.)   On August 8, 2016, the sale of the Vessel was duly conducted in accordance with the Order for Sale by the Marshal at the premises of the entrance to the United States District Court, Savannah, Georgia.   (Doc. 66.)   At the sale, Strategic presented a bid of $7,400.000.00 (plus the current market price of any fuel or gas oil remaining on board the Vessel at the time of its delivery to the successful bidder) (collectively, the "Sale Price") and was the highest bidder capable of performing at the auction.   (Id.)   On August 8, 2016, Strategic presented $1,000,000.00 to the Marshal as security for payment of the remainder of its bid.   On August 11, 2016, Strategic made a wire transfer to the Clerk of Court in the amount of $6,400,000.00 to be applied towards its bid upon the successful confirmation of the sale held on August 8, 2016.   The Court confirmed the sale of the Vessel to Strategic on August 16, 2016 (the "Confirmation Order").   (Doc. 75.)   As set forth in the Confirmation Order, any claims in the Vessel existing on the date of the Confirmation Order - including those claims held by Plaintiffs and other lienors - were terminated and the Vessel was sold to Strategic "free and clear of all liens and encumbrances," but any claims terminated thereby "would attach in the same amount and in accordance with their priorities to the proceeds of the sale as provided in 46 U.S.C. § 31326(b) . . . ."   (Id.

D. DHL's Attachment, Vacatur, and Settlement in the DHL Action

Upon the filing of DHL's verified complaint in the DHL Action on May 25, 2016, the Court entered orders directing the issuance of process for maritime attachment and garnishment of the Vessel pursuant to Rule B.   (DHL Action, Doc. 2.)   On October 14, 2016, however, Plaintiffs moved to vacate DHL's attachment of the Vessel in the DHL Action.   (DHL Action, Doc. 16.)  Upon concluding that DHL had failed to demonstrate a *prima facie* admiralty claim as required under Rule B, the Court granted Plaintiffs' motion and vacated DHL's attachment and garnishment of the Vessel and its substitute *res* (*i.e.*, the Proceeds) on November 18, 2016.   (DHL Action, Doc. 24.)   On December 5, 2016, DHL moved for reconsideration of the Order vacating its attachment in the DHL Action, which this Court recently denied.[10]  (DHL Action, Docs. 27, 42.)

---

at 7-8.)  On August 19, 2016, the Marshal executed and delivered to Strategic a Bill of Sale for the Vessel.  (Doc. 79.)   The Vessel was delivered to Strategic on August 21, 2016.  (Swimmer 09/27/2016 Decl., Doc. 86-1, ¶ 8.)

[9] During the pendency of this action, Plaintiffs have filed several motions seeking the authorization of certain *in custodia legis* expenses incurred by Plaintiffs during the Vessel's arrest from April 19, 2016 through August 21, 2016, in the total amount of $704,690.91.  (Docs. 28, 69, 86.)  The Court has granted each of these motions, for a total amount of authorized *in custodia legis* expenses incurred by Plaintiffs to date of $704,690.91.  (Docs. 48, 81, 97.)   Plaintiffs have also filed several motions requesting the disbursement of funds from the Proceeds to satisfy these *in custodia legis* expenses, which the Court has granted.  (Docs. 77, 81, 101, 108.)   Notably, while the Court did not authorize DHL to incur any *in custodia legis* expenses in connection with the arrest/attachment of the Vessel, the Court exercised its discretion and ordered that DHL be reimbursed from the Proceeds for the funds DHL advanced for the post-arrest care of the Vessel, namely $84,462.20.  (See DHL Action, Doc. 38.)

[10] In its motion for reconsideration of the Order vacating its attachment of the Vessel, DHL states that it and the Sub-Charterer entered into a "confidential settlement agreement" on December 1, 2016 whereby, *inter alia*,

On February 22, 2017, DHL filed a "Motion for Entry of Final Judgment" in the DHL Action, wherein it states that it has entered into a settlement agreement dated February 17, 2017 (the "Settlement Agreement") with NCL with regards to the claims made by DHL in the DHL Action, whereby, *inter alia*, NCL: (a) is obligated to DHL in the amount of $2,371,491.15; (b) has assigned to DHL all of NCL's rights, defenses, and counterclaims with respect to the claims against it by Plaintiffs; and (c) has assigned its ownership interest in the Proceeds to DHL (up to the amount of $2,371,491.15 plus any costs and fees incurred by DHL in the present action and the DHL Action).[11]   (DHL Action, Doc. 33; see also Settlement Agreement, Doc. 118-1 at 4-14, ¶¶ 2 & 2(C); Power Decl., Doc. 118-1 at 1-2, ¶ 2.)   DHL also stated in its Motion for Entry of Final Judgment that it and NCL executed a "Consent for Entry of Judgment" which "has not been styled as a Stipulation due to the fact that [NCL] is not represented by U.S. counsel who is admitted to this Court." (DHL Action, Doc. 33, at 2; see also Consent for Entry of Judgment, DHL Action, Doc. 33 at 3-5.)   Finally, DHL requested

---

DHL is obligated to the Sub-Charterer in the amount of $250,000.00. (DHL Action, Doc. 27, at 3-4; DHL Action, Doc. 27-1, ¶¶ 14(c) & 24.) Nonetheless, the Court upheld the vacatur of DHL's attachment because – as originally set forth in the Court's Order vacating DHL's attachment – DHL's claims in the DHL Action were unripe at the time it sought attachment of the Vessel. (See Doc. 42, at 4-10.)

[11] Notably, DHL failed to file a copy of the Settlement Agreement in connection with its Motion for Entry of Final Judgment. Approximately one month later, however, DHL filed a copy of the Settlement Agreement in connection with its present motion for reconsideration of the Summary Judgment Order. (See DHL Action, Doc. 33; see also Settlement Agreement.)

that "Final Judgment be entered against [NCL] . . . in the amount of $2,371,491.15 in the form of the proposed Final Judgment" which DHL attached as an exhibit to its motion (the "Proposed Final Judgment"). (DHL Action, Doc. 33, at 2; see also Proposed Final Judgment, DHL Action, Doc. 33-1.) The Court recently denied DHL's request to enter the Proposed Final Judgment or otherwise enshrine the Settlement Agreement and Consent for Entry of Judgment in a judicial decree. (See DHL Action, Doc. 43.)

### E. DHL's Attempts to Consolidate & Intervene

On July 28, 2016, shortly before the interlocutory sale of the Vessel, DHL filed a motion to consolidate the DHL Action with the instant action. (DHL Action, Doc. 11.) On August 25, 2016, the Court denied DHL's motion to consolidate on the grounds that the two actions did not present common questions of law or fact. (DHL Action, Doc. 13, at 3-4.) On September 8, 2016, DHL filed a motion to intervene in this case pursuant to Federal Rule of Civil Procedure 24(a). (Doc. 80.) On October 4, 2016, the Court denied DHL's motion to intervene on the grounds that DHL had failed to demonstrate a sufficient interest relating to the property or transaction which is the subject of this action. (Doc. 94.) On October 11, 2016, DHL filed its Notice of Interlocutory Appeal and a motion to stay this action

10

pending the resolution of that appeal.   (Docs. 98, 99.)   On November 2, 2016, the United States Court of Appeals for the Eleventh Circuit entered an Order denying DHL's "Emergency Motion to Stay Pending Appeal and for an Interim Order Pending the Decision on the Stay Application."[12]   (Doc. 107.)   On November 18, 2016, this Court also denied DHL's motion to stay pending appeal.   (Doc. 109.)   On July 6, 2017, the Eleventh Circuit issued its mandate vacating this Court's Order dated October 5, 2016 denying DHL's intervention and "remand[ed] the case to [this Court] to proceed as it sees fit in light of the current status of the case."[13]   (Doc. 126, at 3; Doc. 127.)

## F. Plaintiffs' Motion for Summary Judgment

On July 8, 2016, Plaintiffs filed their motion for summary judgment.[14]   (Doc. 43.)   On July 21, 2016, so as to allow Defendants to conduct factual discovery, Defendants were granted

---

[12]   The Eleventh Circuit also denied DHL's subsequent motion for reconsideration of the Eleventh Circuit's Order denying the motion for stay pending appeal.   (See Doc. 110.)

[13]   (See Doc. 126, at 3 ("In short, a lot has happened since the district court entered the order that is now before us.   We think the best course is for the district court to take another look at its denial of DHL's motion to intervene in view of all that has happened since it ruled on that motion. Because the same district court judge is hearing both cases, he is in a good position to determine which of the motions pending before him — in both the [DHL Action] and the current case — should be decided in which order and how they should be decided.   So we vacate the order denying DHL's motion to intervene and remand the case to the district court to proceed as it sees fit in light of the current status of the case.   In doing so, we imply no view on how the motion to intervene should be decided.").)

[14]   On July 11, 2016, the Clerk of this Court sent a notice to Defendants advising them of the summary judgment motion and the summary judgment rules, their right to file affidavits or other materials in opposition, and the consequences of default.   (Doc. 45.)

until October 14, 2016 to respond to Plaintiffs' motion for summary judgment. (Doc. 55, at 2.) On September 16, 2016, Defendants' counsel filed their motion to withdraw as counsel of record after having provided Defendants with their intent to withdraw on August 30, 2016. (Doc. 83.) On October 5, 2016, the Court granted counsel for Defendants' motion to withdraw; in its Order, the Court specifically noted that upon their counsels' withdrawal, they would be left unrepresented and therefore unable to proceed.[15] (Doc. 95.) To allow Defendants sufficient time to secure new counsel and respond to Plaintiffs' motion for summary judgment, the Court granted Defendants until November 4, 2016 to respond to Plaintiffs' motion for summary judgment.[16] (Id. at 2.) Nonetheless, Defendants failed to: (a) have new counsel enter a notice of appearance in this case; or (b) respond to or otherwise defend against Plaintiffs' motion for summary judgment.

On March 20, 2017, after a thorough consideration of the merits of Plaintiffs' motion for summary judgment and the evidence submitted in support thereof, the Court entered the Summary Judgment Order granting summary judgment in favor of

---

[15] See Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985) (a corporation may not proceed pro se or by a representative or agent of the corporation).

[16] In its Order – a copy of which was mailed to NCL's Vice President of Claims and Risk Management, Mr. Spyros Theodoropoulos – the Court explicitly noted that Defendants' "[f]ailure to timely respond to Plaintiffs' motion for summary judgment may result in Plaintiffs' motion for summary judgment being deemed unopposed." (Doc. 95, at 2.)

Plaintiffs on all of their claims. (Doc. 116.) In the conclusion of the Summary Judgment Order, the Court ordered Plaintiffs to "perfect the record . . . with regards to the balance of their claims against Defendants" through March 20, 2017. (Id. at 17.) The Court also noted that – in light of the entry of summary judgment in favor of Plaintiffs and the Orders denying damages for Plaintiffs' alleged wrongful arrest of the Vessel and reinstating Plaintiffs' arrest of the Vessel – it had "serious concerns regarding the viability of Defendants' counterclaim for wrongful arrest" and therefore ordered them to show cause as to why: (a) such claim should not be dismissed with prejudice; and (b) this case closed. (Id. at 18.)

On March 21, 2017, Plaintiffs filed their supplemental briefing and evidence demonstrating the balance of their claims against Defendants as directed by the Court. (Doc. 117.) Defendants, however, failed to respond to the Court's order to show cause. Rather, on March 30, 2017, DHL, purporting to be the "assignee of the defenses and counterclaims of [NCL] in this action" filed a motion wherein it: (i) renews its prior attempts to intervene in this action; (ii) seeks reconsideration of the grant of summary judgment in favor of Plaintiffs against Defendants; and (iii) purports to respond to the Court's order to show cause directed towards Defendants. (Doc. 118.)

## II. DISCUSSION

### A. DHL's (Renewed) Motion to Intervene

As more fully explained in the Court's now-vacated Order dated October 4, 2016, DHL originally sought to intervene as a matter of right pursuant to Rule 24(a)(2) by arguing that, "should Plaintiffs be successful on their claims against Defendants, Plaintiffs' liens on the Proceeds will have priority over those of DHL, and therefore there will be less (or no) money available from which DHL can recover on its unrelated claims against [NCL]." (Doc. 94, at 6-7; see also Doc. 80, ¶¶ 6-7.) Notably, this argument relied on DHL's attachment of the Vessel and its substitute *res* (*i.e.*, the Proceeds). (See Doc. 80, ¶¶ 6-7; see also DHL Action, Doc. 38, at 11 n.5 (concluding that DHL does not hold a maritime lien on the Vessel because English law – which governs the charter party agreement upon which the DHL Action relies – does not grant a maritime lien for breach of charter party); Doc. 116, at 16 n.14 (same)). DHL's attachment, however, was subsequently vacated and its motion for reconsideration of that vacatur has been denied. (DHL Action, Docs. 24, 42.)

Here, DHL's original and renewed motions for intervention pursuant to Rule 24(a) are due to be denied for reasoning similar to that originally expressed by the Court in its now-vacated Order dated October 4, 2016 (see doc. 94, at 4-9; see

also doc. 126, at 3); because DHL – at least for its *own* claims – is not a party to the Notes, Guaranties, or Mortgages and does not have a legally-protectable independent interest in those instruments and/or the Vessel, DHL has failed to demonstrate that it has a sufficient interest relating to the property or transaction which is the subject of the present action. See Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989) ("A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." (citations omitted)); Worlds v. Dep't of Health & Rehab. Servs., State of Fla., 929 F.2d 591, 594 (11th Cir. 1991) ("In determining sufficiency of interest, this circuit requires that the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding.  This interest has also been described as a direct, substantial, legally protectable interest in the proceedings." (internal quotations, citations, and footnotes omitted)); Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc., 425 F.3d 1308, 1311 (11th Cir. 2005) ("[A] legally protectable interest is something more

15

than an economic interest." (internal quotations and citations
omitted)). Moreover, as noted by the Court in its Order dated
November 18, 2016, any independent right or interest that DHL
may have had in the Vessel and/or the Proceeds resulting from
its attachment is no longer in existence based on the vacatur of
that attachment. (See Doc. 109, at 4.)

In its renewed motion to intervene, however, DHL now argues
that it must be allowed to intervene "[o]n the basis of DHL's
position as the assignee of [NCL's] defenses and counterclaims .
. . [and] ownership interest in the [Proceeds]." (See Doc. 118,
at 6-7; see also Settlement Agreement ¶ 2(B).) Because DHL's
renewed motion to intervene is based on a transfer of one or
more of the Defendants' interests in the present lawsuit,
however, it is more properly considered a motion to substitute
pursuant to Rule 25(c) rather than a motion to intervene
pursuant to Rule 24(a).[17] See FED. R. CIV. P. 25(c) ("If an
interest is transferred, the action may be continued by or
against the original party unless the court, on motion, orders
the transferee to be substituted in the action or joined with
the original party."); see also Virgo v. Riviera Beach Assocs.,

---

[17] Plaintiffs argue that DHL's renewed attempt to intervene is improper
because, *inter alia*, NCL's alleged assignment of its "rights, defenses, and
counterclaims" in the present action to DHL is void because the Notes,
Guaranties, and Mortgages allegedly prohibit assignment without the
respective instrument-holder's consent. (Doc. 122, at 17-21.) In response,
DHL argues that the defenses and counterclaim allegedly assigned to it by NCL
"are not contractual claims, but are claims which arise out of tort." (Doc.
125, at 8.) For the purposes of this Order, the Court has assumed — without
deciding — that the aforementioned assignments are effective.

Ltd., 30 F.3d 1350, 1358 (11th Cir. 1994) ("Rule 25(c) authorizes a substitution of parties after a transfer of interest has occurred.").

"Rule 25 is a procedural rule of convenience only and does not substantively alter a party's rights or liabilities." Telecomm Tech. Servs. Inc. v. Siemens Rolm Commc'ns Inc., No. 1, 1999 WL 696011, at *3 (N.D. Ga. July 6, 1999) (citing In re Covington Grain Co., 638 F.2d 1357, 1361 (5th Cir. 1981)). Rather, "[a] substituted party steps into the same position of the original party" and the substitution is considered a continuance of the original action as opposed to a new proceeding against the substitute party. Ransom v. Brennan, 437 F.2d 513, 516 (5th Cir. 1971). "The disposition of a motion under Rule 25(c) is committed to the sound discretion of the trial court." FDIC v. Bristol Home Mortg. Lending, LLC, 2009 WL 2488302, at *7 (S.D. Fla. Aug. 13, 2009) (citing Virgo, 30 F.3d at 1357). "The Court may in its discretion order that the original party continue the action alone, that the transferee be substituted for the original party, or that the transferee be joined as an additional party." Id.

Here, the Court concludes that DHL's renewed motion to intervene, when considered as a motion to substitute pursuant to Rule 25(c), should be granted. In doing so, however, the Court notes that DHL does not allege that it has received a full

assignment of NCL's interest in the Proceeds.   (<u>See</u> Settlement Agreement ¶ 2(C) (" . . . [NCL] irrevocably assigns its interest in and ownership of the [Proceeds] *up to* the amount of the Settlement Amount [*i.e.,* $2,371,491.15] plus DHL['s c]osts." (emphasis added)).)   Accordingly, the Court orders that DHL be added as an additional defendant, with the express understanding that DHL's rights and obligations upon being added to this case are derived from those assigned to it by NCL and nothing more; indeed, as noted by DHL itself, "DHL as assignee 'steps into the shoes' of the assignor."  (Doc. 125, at 6.)

## B. DHL's Motion for Reconsideration

In its motion, DHL seeks reconsideration of the Court's grant of summary judgment to Plaintiffs against Defendants pursuant to Rule 59(e) based on newly-discovered evidence and manifest injustice.  (<u>See</u> Doc. 118 at 7-8.)  In the alternative, DHL seeks reconsideration pursuant to Rule 60(b)(1) "based on the 'excusable neglect' of [NCL] for failure to timely oppose the summary judgment motion."  (<u>Id.</u> at 8 n.4.)

A party may seek to alter or amend a judgment in a civil case within twenty-eight days after the entry of the judgment. FED. R. CIV. P. 59(e).  Because reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly, a movant must set forth facts or law of a strongly

convincing nature to induce the court to reverse its prior decision. Bostic v. Astrue, 2012 WL 3113942, at *1 (S.D. Ga. July 31, 2012). A Rule 59(e) motion may not be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment," as "the only grounds for granting a Rule 59(e) motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (quotations omitted). Nor is Rule 59(e) "a vehicle for rehashing arguments already rejected by the court or for refuting the court's prior decision." Bostic, 2012 WL 3113942, at *1 (citations omitted); see also Gold Cross EMS, Inc. v. Children's Hosp. of Alabama, 108 F. Supp. 3d 1376, 1379 (S.D. Ga. 2015) ("[A] motion for reconsideration is not an appeal, and thus it is improper on a motion for reconsideration to ask the Court to rethink what it has already thought through — rightly or wrongly." (internal quotations, citations, and alterations omitted)), aff'd, 648 F. App'x 976 (11th Cir. 2016).

Here, DHL has failed to demonstrate newly-discovered evidence or manifest errors of law or fact that would justify a finding that the Court should amend or alter its Summary Judgment Order. DHL asserts that "new facts . . . obtained by DHL as assignee of [NCL's] defenses and counterclaims" support its motion for reconsideration. (Doc. 118, at 8-22.) Yet none

of the facts proffered by DHL are newly-discovered; rather, they have been available to Defendants since the time they filed their responsive pleadings or were otherwise available to Defendants and/or DHL through civil discovery mechanisms and could have been timely presented in opposition to Plaintiffs' motion for summary judgment.  (See Docs. 118-1 through 118-7.) As such, these facts are not a proper basis for reconsideration of the Summary Judgment Order. See Arthur, 500 F.3d at 1343 ("A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." (citations and alterations omitted)); see also Osaigbovo v. Bank of Am. Corp., 671 F. App'x 772, 774 (11th Cir. 2016) ("Osaigbovo attached to his postjudgment motion copies of bank statements, several pieces of correspondence, and his affidavit, but those documents did not constitute newly-discovered evidence because they were available to him when he filed his complaint."); ICEE Distributors, Inc. v. J&J Snack Foods Corp., 445 F.3d 841, 848 (5th Cir. 2006) ("Distributors relies on facts that were plainly available or easily discovered before summary judgment. . . . The events in question did not occur after summary judgment; and no reason is offered that knowledge of these events was beyond Distributors' reach before then.  The District Court therefore did not abuse

20

its discretion by refusing to consider Distributors' newly proffered evidence.").

Similarly, DHL's argument that "reconsideration is required to prevent manifest injustice caused by th[e] effective 'default' of [NCL]" is unavailing because DHL has failed to demonstrate a "clear and obvious error where the interests of justice demand correction." See Gold Cross EMS, Inc., 108 F. Supp. 3d at 1380. Rather, DHL simply raises arguments that were available to – but not raised by – Defendants in opposition to summary judgment, which is not a proper basis for reconsideration. See Lockard v. Equifax, Inc., 163 F.3d 1259, 1267 (11th Cir. 1998) ("Motions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment was issued." (citations omitted)); Stone v. Wall, 135 F.3d 1438, 1442 (11th Cir. 1998) ("The purpose of a Rule 59(e) motion is not to raise an argument that was previously available, but not pressed."); Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985) ("There is a significant difference between pointing out errors in a court's decision on grounds that have already been urged before the court and raising altogether new arguments on a motion to amend; if accepted, the latter essentially affords a litigant 'two bites at the apple.'" (citations omitted)). Importantly, contrary to DHL's insinuations that

21

this Court simply entered summary judgment by default against Defendants as a penalty for their failure to respond, the Court reached the merits of Plaintiffs' motion and entered judgment in favor thereof based on the evidence introduced in support of the motion and the facts admitted by Defendants' failure to respond thereto.[18]   (See Doc. 116.)   That DHL is bound by the operation of law is not a manifest injustice.[19]   Nor is it a manifest

---

[18] See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101–02 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion. The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." (citations omitted)); cf. Trustees of Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers v. Wolf Crane Serv., Inc., 374 F.3d 1035, 1040 (11th Cir. 2004) ("It is apparent that the district court did not examine the merits of this case, but instead granted summary judgment by default merely because it believed [the defendant] had filed no response. Because summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment, we vacate the judgment of the district court with respect to Count II." (footnote omitted)).

[19] See LR 7.5, SDGa. ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion."); LR 56.1, SDGa. ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party."); FED. R. CIV. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."); FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it . . . ."); see also Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632–33 (11th Cir. 1988) (upholding district court's grant of summary judgment and denial of motion for reconsideration where non-moving party failed to file opposition to motion for summary judgment and failed to "specifically direct the district court's attention to any

22

injustice that it is bound by the missteps of its predecessor-in-interest; DHL steps into NCL's shoes where they have been left, not where DHL wishes they had been. Accordingly, DHL's motion for reconsideration pursuant to Rule 59(e) is due to be denied.

DHL also argues that, in the alternative, "reconsideration should be granted pursuant to [Rule] 60(b)(1) based on the 'excusable neglect' of [NCL] for failure to timely oppose the summary judgment motion." (Doc. 118, at 8 n.4.) In an attempt to explain Defendants' failure to respond to Plaintiffs' motion for summary judgment, DHL has submitted the declaration of non-party Newlead Holdings Ltd.'s Chief Financial Officer, Eleni Despotopoulou, who alleges that NCL's failure to respond to

---

[rebuttal] evidentiary material" that allegedly existed in the record at the time of grant of summary judgment); Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995) ("[A] party contesting summary judgment has a responsibility . . . to highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute. . . . [J]ust as a district court is not required to scour the record looking for factual disputes, it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case." (internal quotations and citations omitted)); Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920-22 (7th Cir. 1994) ("[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. The parties, in turn, bear a concomitant burden to identify the evidence that will facilitate this assessment. . . . [D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions. We have . . . repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." (citations omitted)); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

23

Plaintiffs' motion was caused by changes in Newlead Holding's leadership and lack of cash flow. (See Despotopoulou Decl., Doc. 118-2, ¶ 60 ("Despite Defendants' active participation in this action up to the improper withdrawal of its counsel, due to change in leadership at Newlead Holdings during that time (Mr. Zolotas resigned as CEO of Newlead Holdings in October 2016, and was not reinstated as CEO until the end of December 2016), and issues with cash flow resulting from the seizure of Newlead Castellano's income earning asset – the Vessel, Newlead Castellano was unable to immediately retain new counsel or respond to the Plaintiffs' motion for summary judgment.").)

Rule 60(b) provides in relevant part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ." FED. R. CIV. P. 60(b)(1). "[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394 (1993)). "[W]hether a party's neglect of a deadline may be excused is an equitable decision turning on all relevant circumstances surrounding the party's omission . .

. includ[ing] the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. (internal quotations and alterations omitted) (citing Pioneer Inv. Servs. Co., 507 U.S. at 395).

Here, the Court concludes that DHL has failed to demonstrate Defendants' excusable neglect in failing to timely respond to Plaintiffs' motion for summary judgment. Plaintiffs filed their motion for summary judgment on July 8, 2016. (See Doc. 43.) On July 11, 2016, Defendants were provided explicit notice of the motion for summary judgment, the deadlines associated therewith, and the consequences of failing to respond thereto. (Doc. 45.) On July 21, 2016, the Court extended the window to respond to Plaintiffs' motion for summary judgment from August 1 to October 14, 2016. (Doc. 55, at 2.) The Court further extended the window to respond to November 4, 2016 and again reminded Defendants that "[f]ailure to timely respond to Plaintiffs' motion for summary judgment may result in Plaintiffs' motion . . . being deemed unopposed."[20] (Doc. 95, at

---

[20] This extension was granted *sua sponte* in connection with allowing Defendants' counsel to withdraw. See J.D. Pharm. Distributors, Inc. v. Save-On Drugs & Cosmetics Corp., 893 F.2d 1201, 1209 (11th Cir. 1990) ("It is generally recognized that a trial court has wide discretion to control its docket, and that decisions of the trial court as to matters such as the

2.)   Nonetheless, the Court delayed ruling on Plaintiffs' motion
for summary judgment for another four months past this twice-
extended deadline.  (See Doc. 116.)  Indeed, despite having over
two-hundred and fifty days to do so, Defendants failed to file
anything in opposition to Plaintiffs' summary judgment motion
prior to its adjudication; accordingly, the circumstances and
length of delay do not weigh in Defendants' and/or DHL's favor.

As to the reason for the delay, there has been no argument
- let alone evidence in support thereof - that Defendants did
not timely receive notice of Plaintiffs' motion for summary
judgment, the deadlines associated therewith (or the extensions
thereof), or the consequences of failing to respond thereto.
The alleged changes in leadership at Newlead Holdings Ltd. are
irrelevant because it was NCL - and not non-party Newlead
Holdings Ltd. - that was obligated to respond to Plaintiffs'
motion.[21]  Further, as to the bald assertion of "issues with cash

---

amount of time a litigant should be given to obtain counsel are reviewable
only under an abuse of discretion standard.").
[21] Notably, in support of its Motion for Entry of Final Judgment in the DHL
Action, DHL asserted that Mr. Zolotas never resigned from his position as
president and director of NCL.  (See DHL Action, Doc. 39, at 6-7 ("Indeed,
despite Mr. Zolotas' resignation from Newlead Holdings [Ltd.] in October
[2016], he remains the President and Director of [NCL].  Attached hereto as
Exhibit 1 is [a] true and correct copy of Apostilled corporate minutes from
the Republic of Liberia confirming that Michail Zolotas acts as the President
and Director of [NCL] since 2013.  Attached as Exhibit 2 is a true and
correct copy of a Certificate of Good Standing for [NCL] dated March 16,
2017.  The Non-Party movants have not filed any documentation which evidences
a resignation or other change of authority in [NCL].").)  Indeed, DHL has
submitted the declaration of Mr. Michail Zolotas himself, who states that:
(1) he has "been and remain[s] the President and Director of [NCL] since its
formation in July 2014;" and (2) that "Mrs. Anna Zolota was appointed as the
CEO, President, Chairman of the Board and Class I Director" of Newlead

flow resulting from the seizure of [the Vessel]," this is not a situation of mistake, inadvertence, surprise, indifference, carelessness, or faultless omission, but rather a choice as to where to prioritize the expenditure of allegedly limited funds. See FED. R. CIV. P. 60(b)(1); Pioneer Inv. Servs. Co., 507 U.S. at 388 ("The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to especially through carelessness.'  The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." (quoting Webster's Ninth New Collegiate Dictionary 791 (1983)) (alterations omitted)); see also Ackermann v. United States, 340 U.S. 193, 198 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.").

As to Defendants' culpability for its inaction, Defendants' alleged lack of cash flow and failure to retain new counsel are circumstances of their own making as opposed to a circumstance outside of their control; again, this was not a situation of inadvertence, indifference, or carelessness, but a choice as to where to prioritize the expenditure of funds.  Indeed, it is

---

Holdings Ltd. during his absence from that company from October 19 through December 23, 2016.  (Zolotas Decl., Doc. 118-6, ¶¶ 1-4.)  Mr. Zolotas provides no insight as to why NCL took no action to retain counsel or otherwise defend against Plaintiffs' motion for summary judgment.  (See id., generally.)

Defendants' failure to timely pay their financial obligations that landed them into the instant lawsuit and was the grounds for their prior counsels' withdrawal. (See Docs. 1, 40, 41, 83.) Finally, as to whether Defendants' failure to respond was in good faith, there has been no showing that Defendants made any attempts to retain new counsel or otherwise comply with the deadline to respond to Plaintiffs' summary judgment motion; rather, the Court can again only note that Defendants have not had new counsel enter an appearance in this case despite having ample time to do so. In sum, taking all relevant factors into consideration, it is clear that responding to Plaintiffs' motion for summary judgment was simply not a high priority for the Defendants and was a deliberate choice as opposed to excusable neglect; indeed, upon an examination of the record as a whole, the Court is left with the firm conviction that Defendants – and therefore, DHL as their purported assignee – have unnecessarily delayed their participation in this action and exhibited a significant history of nonappearance and unresponsiveness. Accordingly, the Court exercises its calm discretion and denies DHL's alternative Rule 60(b)(1) motion.[22]

---

[22] While not argued by DHL, DHL would not be entitled to relief pursuant to Rule 60(b)(6) because it has failed to demonstrate circumstances so extraordinary or compelling as to require relief. See Aldana v. Del Monte Fresh Produce N.A., Inc., 741 F.3d 1349, 1355 (11th Cir. 2014) ("Rule 60(b)(6) provides a catch-all, authorizing a court to grant relief from a judgment for 'any other reason that justifies relief' . . . . [but motions under that Rule] must demonstrate that the circumstances are sufficiently extraordinary to warrant relief . . . [a] justification so compelling that

## C. Defendants' Counterclaim for Wrongful Arrest
### & DHL's Response to the Order to Show Cause

In the Summary Judgment Order, the Court ordered Defendants to show cause as to why their counterclaim for wrongful arrest against Plaintiffs should not be dismissed with prejudice and this case closed given that: (i) summary judgment had been entered in favor of Plaintiffs on each of their claims against Defendants; (ii) the Court had previously denied damages for Plaintiffs' alleged wrongful arrest of the Vessel in its Order dated July 14, 2016 (doc. 47, at 7-8); and (iii) the Court had reinstated Plaintiffs' initial arrest of the Vessel in its Order dated August 4, 2016 (doc. 64, at 2-5).   (Doc. 116, at 18.) DHL, as purported assignee of NCL's relevant interests, has taken this directive as an invitation to attack the basis of the Court's grant of summary judgment in favor of Plaintiffs and then assert that, once the Court vacates its decision on the grant of summary judgment and relieves DHL of the facts admitted by Defendants' failure to respond to Plaintiffs' motion for

---

the district court was required to vacate its order." (internal quotations, citations, and alterations omitted); see also Doe v. Drummond Co., 782 F.3d 576, 612 (11th Cir. 2015) ("To warrant relief under Rule 60(b)(6), not only must Plaintiffs show 'sufficiently extraordinary' circumstances, but also 'that absent such relief, an extreme and unexpected hardship will result.'" (quoting Galbert v. W. Caribbean Airways, 715 F.3d 1290, 1294-95 (11th Cir. 2013))); United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993) ("Although the timeliness of a Rule 60(b)(6) motion depends on the facts of each case, relief may not be had where the party seeking reconsideration has ignored normal legal recourses. . . . Rule 60(b)(6) relief normally will not be granted unless the moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests.").

summary judgment, there would exist a genuine issue of material fact as to Defendants' counterclaim. (See Doc. 118, at 22-25; Doc. 125, 9-10.) This, however, was not the purpose or intent of the Court's directive; rather, the Court's command – as made clear in the Summary Judgment Order – was for Defendants to show, in light of the aforementioned rulings and the facts admitted by their failure to oppose Plaintiffs' summary judgment motion, how their counterclaim for wrongful arrest could survive dismissal. Defendants and DHL have failed to do so. Accordingly, because Plaintiffs' claims upon which Plaintiffs' arrest of the Vessel were premised have been sustained and Defendants/DHL have failed to establish that the arrest of the Vessel was done in bad faith or otherwise demonstrate any other basis for liability, Defendants' counterclaim for wrongful arrest is untenable and due to be dismissed. See Furness Withy (Chartering), Inc., Panama v. World Energy Sys. Assocs., Inc., 854 F.2d 410, 411 (11th Cir. 1988) ("It is an established principle of maritime law that one who suffers a wrongful attachment may recover damages from the party who obtained the attachment, provided he prove that such party acted in bad faith." (citations omitted)); Frontera Fruit Co. v. Dowling, 91 F.2d 293, 297 (5th Cir. 1937) ("The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending

party. . . . [T]he advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense to an action for malicious prosecution."); see also Comar Marine, Corp. v. Raider Marine Logistics, L.L.C., 792 F.3d 564, 574-75 (5th Cir. 2015) ("To recover for wrongful arrest of a vessel, there must be (1) no bona fide claim of a maritime lien on the vessel and 2) [sic] a showing of bad faith, malice, or gross negligence on the part of the offending party." (internal quotations, citations, footnotes, and alterations omitted)); FED. R. CIV. P. SUPP. ADM. R. C(1)(b); 46 U.S.C. § 31325(b)(1).

### D. Plaintiffs' Supplemental Briefing & Amounts Due

In its Summary Judgment Order, after entering summary judgment in favor of Plaintiffs, the Court directed them to perfect the record with admissible evidence with regards to the balance of their claims against Defendants through the date of that Order (i.e., March 20, 2017).[23]  Plaintiffs have done so.[24]

---

[23] In the Summary Judgment Order, the Court concluded that "Defendants' default on the terms of the respective Mortgages entitles Plaintiffs to foreclose on the Vessel up to the maximum of the amount secured thereby pursuant to 46 U.S.C. § 31325." (Doc. 116, at 14.)  The amount secured by Ray's Mortgage is $1,861,412.00 plus interest, expenses and costs.  (Doc. 18-6, at 2-30, ¶ 4.)  The amount secured by Cheyenne's Mortgage is $1,009,315.00 plus interest, expenses and costs. (Id. at 157-85, ¶ 4.)  The amount secured by Oppenheim's Mortgage is $2,547,900.00 plus interest, expenses and costs. (Id. at 64-93, ¶ 4.)  The amount secured by Labroy's Mortgage is $1,215,000.00 plus interest, expenses and costs. (Id. at 122-53, ¶ 4.).

[24] In their supplemental briefing and evidence submitted in support thereof, Plaintiffs demonstrate that they are respectively owed, through March 20, 2017: (a) as to Ray Capital, $1,086,658.00 in unpaid principal and $721,523.00 in accrued interest; (b) as to Cheyenne Holdings, $1,000,000.00 in unpaid principal and $252,055.00 in accrued interest; (c) as to Oppenheim

(See Docs. 117 & 117-1.)   To date, neither Defendants nor DHL have challenged Plaintiffs' calculations or the evidence submitted in support thereof.   Accordingly, for the reasons set forth in the Summary Judgment Order and based on the evidence properly before it, Plaintiffs Ray Capital, Cheyenne Holdings, Oppenheim Capital, and Labroy Shiptrade are entitled to final judgment against Defendants – and are therefore entitled to foreclose on the Proceeds – in the amounts of $1,808,181.00, $1,252,055.00, $3,156,794.00, and $1,534,229.00, respectively.

### III. CONCLUSION

Upon the foregoing and due consideration, **IT IS HEREBY ORDERED** that DHL's original motion for intervention (doc. 80) is **DENIED**.   **IT IS FURTHER ORDERED** that DHL's renewed motion for intervention (doc. 118) is **GRANTED IN PART, DENIED IN PART**; it is **DENIED** to the extent that it is a motion for intervention pursuant to Rule 24(a), but is **GRANTED** to the extent it is a motion for substitution pursuant to Rule 25(c).[25]   **IT IS FURTHER ORDERED** that DHL's motion for reconsideration (doc. 118) is

---

Capital, $2,499,956.00 in unpaid principal and $656,838.00 in accrued interest; and (d) as to Labroy Shiptrade, $1,215,000.00 in unpaid principal and $319,229.00 in accrued interest. (See Doc. 117-1.)

[25] The Clerk is **DIRECTED** to add DHL as an additional defendant.   This substitution is made with the express understanding that DHL's rights and obligations upon being added to this case are derived from those rights and obligations purportedly assigned to it by NCL and nothing more.

**DENIED**.[26]   **IT IS FURTHER ORDERED** that Defendants' Counterclaim for Wrongful Arrest (see doc. 31, at 12-15) is **DISMISSED WITH PREJUDICE.**   The Clerk is **DIRECTED** to enter final judgment in favor of Plaintiffs on their claims against Defendants as follows:   (1) in favor of Plaintiff Ray Capital Inc., $1,808,181.00; (2) in favor of Plaintiff Cheyenne Holdings Ltd., $1,252,055.00; (3) in favor of Plaintiff Oppenheim Capital Ltd., $3,156,794.00; and (4) in favor of Plaintiff Labroy Shiptrade Limited, $1,534,229.00.[27]   The Clerk is **ORDERED** to disburse the funds remaining in registry of the Court in connection with this case in the manner and amounts described above to counsel for Plaintiffs' escrow account, the details of which shall be provided directly to the Clerk by Plaintiffs' counsel under separate cover.[28]   The Clerk is further **DIRECTED** to **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

---

[26] DHL has also filed a "Motion for Hearing and to Extend 45 Day Stay Pending Determination on Pending Motions." (Doc. 121.) Because the Court concludes that there is no need for oral argument in this matter and has resolved all pending motions before it with relation to the present action and the DHL Action, DHL's motion (doc. 121) is **DENIED AS MOOT**.   See LR 7.2, SDGa. ("Motions shall generally be determined upon the motion and supporting documents filed as prescribed herein.")

[27] Any deficiency in funds to be collected from the funds held in the Court's registry in relation to this matter must be borne first by Labroy (followed, if necessary, by Oppenheim, then Cheyenne, and finally Ray). (See Doc. 116, at 17 n. 15.)

[28] While the Court indicated in its Summary Judgment Order that it intended to temporarily stay the execution of judgment in this matter for forty-five days from the date of its entry so as to allow DHL to seek an order from the Eleventh Circuit further staying execution in connection with DHL's then-pending appeal (see doc. 116, at 17-18), that appeal has concluded and all other motions, filings, and other issues in this action have been resolved. Accordingly, the Court no longer intends to – and therefore will not order the Clerk – to stay execution of the forthcoming final judgment other than as

**ORDER ENTERED** at Augusta, Georgia, this _13th_ day of September, 2017.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

required by the automatic fourteen (14) day stay of execution of judgment imposed by Rule 62(a).